UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>        Defendants. | |

## OPPOSITION OF THE PLAINTIFFS TO THE MOTION TO DISMISS FILED BY DEFENDANT UNITED STATES OF AMERICA

Now come Plaintiffs, Ian J. Brown, James Brown, and Barbara Brown, in Opposition to the Motion to Dismiss that has been filed by Defendant United States of America (hereinafter referred to as "the United States"). The United States Motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(1), on the theory that this Court lacks subject matter jurisdiction because Plaintiff Ian J. Brown was an Air Force officer at the time of the accident that forms the basis for Plaintiffs' Complaint. More specifically, the United States argues that Plaintiffs' claims are barred by *Feres v. United States*, 340 U.S. 135 (1950), which precludes military personnel from suing the federal government under certain circumstances. As set forth in more detail below, however, the *Feres* doctrine does not apply to this litigation because, without limitation, (1) Ian Brown's accident and resultant injuries were not incident to military service and (2) the

1

Plaintiffs' claim against the United States does not involve military discipline or military decision making. Accordingly, the Plaintiffs respectfully request this Court to deny, in its entirety, the Motion to Dismiss that has been filed by Defendant United States of America.

## STATEMENT OF FACTS

On January 4, 2002, while he was stationed at Hanscom Air Force Base as a twenty-five year old Air Force lieutenant, Ian Brown was rendered a paraplegic as the result of an off-base motorcycle accident that occurred on a public, civilian roadway in Bedford, Massachusetts. See Affidavit of Ian J. Brown ("Brown Aff."), attached hereto as Exhibit A, at ¶¶ 1 and 2. More specifically, the motorcycle accident occurred while Mr. Brown was traveling, on his privately-owned motorcycle, along a civilian roadway located in Bedford that ran adjacent to property owned by the United States. Id., at ¶3. The responding police officer who arrived at the accident scene and subsequently completed a motor vehicle crash report was a member of the Bedford Police Department, rather than a member of any military organization. See Report of Bedford Police Officer Tracey Cook, attached hereto as Exhibit B. Moreover, immediately following the accident, a civilian entity known as New England Life Flight, Inc. d/b/a Boston MedFlight evacuated Mr. Brown, by helicopter, to Beth Israel Deaconess Hospital in Boston. See Medical Records of Boston MedFlight, attached hereto as Exhibit C.

At the time of the accident, Mr. Brown was returning to Hanscom AFB from lunch, which he had eaten at his government-owned, but off-base, living quarters. See Exhibit A, at ¶6. Mr. Brown apparently struck a depression in the road, which caused him to lose control of his motorcycle and become separated from the motorcycle. Id., at

2

¶4. After becoming separated from the motorcycle, Mr. Brown hit a guardrail along the roadway, and he put himself into a tucked position as his momentum carried him along the guardrail. Id., at ¶5. Despite his efforts to protect himself, Mr. Brown suffered devastating injuries when the guardrail propelled him, headfirst, into a telephone pole that was located on the "road side" of the guardrail. Id.

Ian Brown was under no military orders, duty or compulsion to eat lunch at his home on the day of the accident. Id., at ¶7. He could have avoided eating lunch altogether, or eaten on base, or traveled to a local restaurant for lunch. Id., at ¶8. Ian Brown also was under no military orders, duty or compulsion to be riding his motorcycle along the public roadway when his accident occurred. Id., at ¶9

In their Complaint, the Plaintiffs maintain that the United States government and the Defendant utility companies are liable for the injuries suffered by Ian Brown, because the Unites Stated installed the guardrail and the utility pole was improperly situated on the "road-side" of the guardrail rather than on the "far side" of the guardrail.

## ARGUMENT

I. **The *Feres* decision does not bar the Plaintiffs' claims in this matter, because Ian Brown's motorcycle accident and resultant injuries were not "incident to military service."**

As set forth above, Ian Brown's motorcycle accident occurred on a public, civilian roadway that routinely is used by civilian motorists, and Brown was operating his privately-owned motorcycle at the time. The police officer who responded to the accident scene was a member of the local Bedford Police Department, and Mr. Brown was evacuated by a civilian company, Boston MedFlight, that transported him to Beth Israel Deaconess Hospital. In sum, there was nothing characteristically "military" about

3

either Mr. Brown's motorcycle accident or the emergency procedures undertaken as a result of the accident. A civilian motorcyclist could have had the same accident along the same area of roadway.

Nevertheless, the United States argues that the Plaintiffs' Complaint should be dismissed pursuant to the *Feres* doctrine, allegedly because the accident was incident to military service. The United States characterizes the *Feres* doctrine, in its memorandum in support of its Motion to Dismiss, as barring "suits against the Government brought by members of the military for injuries that arose out of activities incident to military service." See Defendant's Memorandum, at pp. 4-5. Significantly, the United States' own memorandum further concedes that "[c]onversely, if a service member's injury is not incident to service, his claim is not *Feres* barred." Id. at p. 5, citing *Brooks v. United States*, 337 U.S. 49 (1949). The circumstances at issue in this matter, which involve an off-base accident of a privately-owned motorcycle along a civilian roadway routinely used by civilian motorists and patrolled by civilian law enforcement authorities, establish that Ian Brown's accident and resultant injuries were not incident to military service and, therefore, the Plaintiffs' claims are not barred by the *Feres* doctrine.

**A.    *The governing precedent for this matter is Brooks v. United States, 337 U.S. 49 (1949), which establishes that the Plaintiffs' claims against the Defendant are not barred.***

The *Feres* opinion, which was reached in 1950, does not abrogate, in any manner, the Court's 1949 decision in *Brooks*, supra, in which the Court held that two soldiers who were home on furlough could recover for injuries they suffered when a truck owned by the U.S. Army and driven by a civilian Army employee collided with their vehicle. The road upon which the accident occurred was a public highway in North Carolina, and one

of the soldiers died as a result of the injuries he suffered in the accident. The United States claimed immunity from a lawsuit brought by the surviving soldier and the deceased soldier's estate, but the Supreme Court rejected the United States' position by stating:

> The Government envisages dire consequences should we [allow the soldiers to recover.] A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States. *But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired.* Were the accident incident to the Brooks' [military] service, a wholly different case would be presented.

*Brooks*, 337 U.S. at 52 (emphasis added).

One year after *Brooks*, in the *Feres* decision, the Court reiterated its holding in *Brooks* (and distinguished it from *Feres*) by noting that "the injury to Brooks did not arise out of or in the course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission. … This Court rejected [the government's claim of immunity], primarily because Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders." *Feres*, 340 U.S. at 142.

The instant litigation is governed by *Brooks* rather than *Feres*, because Ian Brown's status in January 2002 as an Air Force lieutenant had no bearing whatsoever on the motorcycle accident, "except in the sense that all human events depend upon what has already transpired." *Brooks*, 337 U.S. at 52. Stated differently, any motorist – civilian or military – could have hit the guardrail and utility pole, which were astride a publicly-traveled civilian roadway, in exactly the same manner as Ian Brown. Moreover, while

5

Ian Brown was returning to work from a lunch break at the time of the accident, his activity in this regard in not unique from any civilian motorist using that same roadway to return to work following lunch. Ian Brown was not under any military orders to take a lunch break, to go home for lunch, or to use the pertinent civilian roadway during his lunch break. In sum, Ian Brown's employment status as an Air Force officer at the time of his accident simply is not pertinent, "except in the sense that all human events depend upon what has already transpired." Id.

The United States relies upon *Day v. Mass. Air Nat'l. Guard*, 994 F.Supp. 72, 77 (D.Mass. 1998), aff'd 167 F.3d 678 (1st Cir. 1999) in support of its argument that Ian Brown's accident and injuries were "incident to military service," but the factual background and legal rationale expressed in the *Day* opinion actually establishes that this matter is more analogous to *Brooks* than *Feres*. More specifically, *Day* involved claims brought by a U.S. Air Force airman who was hazed by fellow airmen during a training mission, and the court held that the plaintiff's claims against the United States government were barred by the *Feres* doctrine.

*Day* is factually inapposite to this litigation for several pertinent reasons, however, including the facts that (1) the hazing incident occurred on-base, while the plaintiff was sleeping in barracks, (2) the plaintiff would not have been on the base except for his military status, and (3) the individuals who hazed the plaintiff were subject to military control and hazing. *Day*, 994 F.Supp. at 78-79; 167 F.3d at 682-683. In sum, the claims brought against the United States in *Day* involved "core concerns about [judicial] interference in military discipline" that simply do not exist in the instant litigation. *Day*, 167 F.3d at 683.

6

Indeed, this instant litigation is more analogous to a Second Circuit opinion discussed by the District Court in *Day*, in which the Second Circuit held that a plaintiff's service member's claims were not incident to military service and, therefore, were not barred by the *Feres* doctrine. This Second Circuit opinion, which is captioned *Taber v. Maine*, 67 F.3d 1029 (2nd Cir. 1995), involved a claim brought by the plaintiff service member against the United States government under a theory of *respondeat superior*. More specifically, the plaintiff in *Taber* was a U.S. Navy sailor stationed on Guam who was severely injured when the car in which he was traveling was struck, off base, by an automobile driven by another U.S. Navy sailor. *Taber*, 67 F.3d at 1032. Both sailors were on weekend liberty at the time, but they could not travel more than 50 miles from the Navy base and were subject to immediate recall at any time. Id. At the time of the accident, plaintiff Taber was in a car with his civilian girlfriend, and defendant Maine had left the base, after consuming alcohol throughout the day and evening, to find a late-night meal. Id. The Second Circuit held that the plaintiff's claims against the United States were not barred by the *Feres* doctrine, because "there was nothing characteristically military" about Taber's activities immediately prior to the accident, the accident "had 'nothing to do with' Taber's military career and was 'not caused by service except in the sense that all human events depend upon what has already transpired.'" *Taber*, 67 F.3d at 1051, quoting *Brooks*, 337 U.S. at 52. Finally, this Court, in its *Day* opinion, further noted that the *Feres* doctrine did not bar the *Taber* litigation because, in *Taber*, "the accident happened on a public road and had nothing to do with Taber's military service...." *Day*, 994. F.Supp. at 78.

Similarly, in the instant matter, there was nothing "characteristically military" about Ian Brown's decision to go home for lunch during a workday, and his resultant motorcycle accident "had 'nothing to do with' [Brown's] military career and was 'not caused by service except in the sense that all human events depend upon what has already transpired.'" *Taber*, 67 F.3d at 1051, quoting *Brooks*, 337 U.S. at 52.

II. **Any analysis as to whether a claim is barred by the *Feres* doctrine requires a fact-specific query and an examination of prior case law, and the cases that are most factually analogous to the instant litigation establish that the claims brought by Ian Brown and his parents are not barred by the *Feres* doctrine.**

The Supreme Court, in *United States v. Shearer*, 473 U.S. 52, 57 (1985), declared that "[t]he *Feres* doctrine cannot be reduced to a few bright line rules; each case must be examined in light of the [Federal Tort Claim Act] as it has been construed in *Feres* and subsequent cases." Meanwhile, the First Circuit, in *Lauer v. United States*, 968 F.2d 1428 (1992), cited, with approval, two opinions from other federal circuits that are highly analogous to the instant matter and establish that the claims of Ian Brown and his parents should not be barred by the *Feres* doctrine. One of these decisions is *Pierce v. United States*, 813 F.2d 349 (11th Cir. 1987), and the other decision is *Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974).

A. ***The Pierce Decision***

*Pierce* involved an Army staff sergeant who first reported to duty at Fort Stewart, Georgia, on August 24, 1982. On that same day, he received permission from his master sergeant to leave the military post in order to attend to personal affairs, and was told that he did not need to return to the base until late afternoon. Consequently, Pierce left the base, on his motorcycle, and traveled to the nearby city of Hinesville, Georgia. He ate lunch, went to a pawn shop, and then began the trip back to the post. As he was driving

through a busy intersection in Hinesville, his motorcycle was struck by an automobile that was owned by the United States and was driven by an on-duty Navy recruiter. As a result of the collision, Pierce sustained injuries that required them to be discharged from the Army after 12 years of service. Pierce filed suit against the United States, on the theory that the Navy recruiter was driving negligently when he struck Pierce's motorcycle. The district court dismissed the claim on the grounds that it was barred under the *Feres* doctrine, but the Eleventh Circuit reversed the dismissal.

In the course of reversing the district court, the Eleventh Circuit noted that "in order to determine whether the *Feres* doctrine is applicable, a court must pay 'particular attention to whether or not the claims asserted ... will implicate civilian courts in conflicts involving the military structure or military decisions.'" *Pierce*, 813 F.2d at 352, quoting *Johnson v. United States*, 779 F.2d 1492, 1494 (11th Cir. 1986) (en banc). The court then explained that "[d]espite the fact that the *Feres* doctrine cannot be reduced to a few bright line rules and that each case must be examined in light of the [Federal Tort Claims Act] as it has been as construed, ... this circuit has adopted a three-part test for determining whether the activity of a serviceman is incident to service. ... The factors to be considered include (1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of the injury. ... After evaluating the relative weight of these factors, a court should determine whether an activity is incident to service based on the totality of the circumstances." *Pierce*, 813 F.2d at 352-353 (internal quotations omitted) (internal citations omitted).

With regard to the first factor (i.e., the duty status of Pierce at the time of the accident), the court, citing *Brooks* (supra), initially noted that a soldier on furlough may

9

commence suit under the Federal Tort Claims Act, further opined that a military pass to leave the base for a short period of time is "much akin to being on furlough," and ultimately concluded that "[b]ecause Pierce received a discretionary time off privilege granted by his supervising officer, he arguably left the base on a 'pass'." *Pierce*, 813 F.2d at 353 (internal quotations omitted) (internal citations omitted). Consequently, Pierce's duty status at the time of the accident did not bar recovery under the *Feres* doctrine.

With regard to the second factor (i.e., the place where the injury occurred), the court initially explained that "the situs of the injury is an important factor in determining whether the activity is 'incident to service.'" Id. The court then noted that "the motor vehicle collision occurred on a public highway within the city limits of Hinesville," and concluded by stating "when soldiers are returning to the base, but have not yet reached the premises line when the collision occurs, [Federal Tort Claims Act] actions are permitted." *Pierce*, 813 F.2d at 353 (internal quotations omitted) (internal citations omitted).

The court's analysis of the third factor (i.e., the activity of the serviceman at the time of the accident) is highly analogous to the instant matter with Ian Brown, and is quoted as follows:

> In this case, Pierce was driving a civilian vehicle off the base in a highly congested area. He had eaten lunch at a fast food restaurant, visited a pawn shop, and was returning to the base to unpack his personal belongings. The government alleges that these activities are proximately related to military duties because they are part of the life of a soldier. We disagree.
>
> Pierce ... was not directly subject to military control; he was not under the compulsion of military orders, he was

> not performing any military mission. ... We do not view pawning a camera, eating lunch, operating a motor vehicle, or unpacking personal property when relieved of assigned tasks as activity materially related to military service.
> ...
>
> *Servicemen have to live somewhere. The mere fact that he was stationed at Fort Stewart does not mean that everything Pierce did in connection with his personal life can legitimately be considered activity proximately related to military service. To accept the government's contention would be to construe any conceivable personal activity as 'incident to service,' because that activity happened to be performed by a member of the armed forces. We refuse to accept such a construction, for to do so would preclude the class of servicemen from bringing an action under the Federal Tort Claims Act merely by virtue of the fact that the claimants are wearing a United States uniform.*

*Pierce*, 813 F.2d at 353-354 (emphasis added) (internal quotations omitted) (internal citations omitted).

Based upon the totality of the circumstances as they applied to the three factors identified above, the Eleventh Circuit concluded that Pierce's claims were not barred by the *Feres* doctrine. Moreover, the court also held that Pierce's claim should be allowed to go forward on the independent ground that the "claim poses no threat to the military disciplinary structure." *Pierce*, 813 F.2d at 354.

### B.   *The Mills Decision*

The First Circuit, in *Lauer* (supra), also referred to the Ninth Circuit opinion captioned *Mills v. Tucker*, 499 F.2d. 866 (9th Cir. 1974) and stated "we would have reached the *Mills* result." This endorsement of the *Mills* decision is significant, because *Mills* also constitutes a factually analogous case in which the *Feres* doctrine was deemed to be not applicable.

11

In *Mills*, a Navy petty officer named Griffith Mills, who was stationed at Hickham Air Force Base in Hawaii, was killed when the motorcycle he was driving was struck by an automobile operated by a civilian. At the time of the accident, Mills was traveling on a roadway that was maintained by the United States Navy and was adjacent to the West Loch Naval Ammunition Depot. Mills' family brought suit against the civilian driver of the automobile, the manufacturer of the motorcycle helmet Mills was wearing, and the United States government. The claim against the government was that the government negligently failed to maintain the roadway upon which Mills was killed.

The government claimed that it was immune from liability under the *Feres* doctrine. The Ninth Circuit rejected the government's position, noting that "in the words of the *Feres* court, there is no immunity where the injury does not arise out of a course of activity incident to service." *Mills*, 499F.2d at 867. The Ninth Circuit also relied upon *Brooks* (supra) for the proposition that, under the circumstances at issue, the government could not escape liability via the *Feres* doctrine because Mills' "injuries [were] not caused by [his] service except in the sense that all human events depend upon what has already transpired." Id.

Although the Ninth Circuit referred to cases in which a serviceman who was injured while off duty or on leave was barred from suing the government as a result of the *Feres* doctrine, the court noted that these "cases involve on base accidents where the serviceman is at least subject to ultimate military control. ... *Here, the roadway was not part of the Naval Depot. Bounded on one side by privately owned farmland and fenced off from the base on its other side, the road is publicly used. Drivers need not pass to a*

*gate to reach it, and it connects different civilian areas. ...* The *Feres* doctrine does not apply." Mills, 499 F.2d at 868 (emphasis added) ( internal citations omitted).

The *Pierce* and *Mills* decisions are highly analogous to the instant litigation, and the First Circuit, in *Lauer*, has indicated approval of the ultimate decisions reached in *Pierce* and *Mills*. Consequently, the United States' argument that the instant litigation is barred by the *Feres* doctrine is without legal or factual merit.

IV. **Although the Supreme Court has stated that a *Feres* analysis requires factual examination and reliance upon earlier, analogous case law, every case cited by the United States in support of its motion to dismiss is factually inapposite to this matter.**

As noted above, the Supreme Court has stated that "[t]he *Feres* doctrine cannot be reduced to a few bright line rules; each case must be examined in light of the [Federal Tort Claim Act] as it has been construed in *Feres* and subsequent cases." *Shearer*, 473 U.S. at 57. The United States has failed to adequately undertake this examination in the instant matter, however, because the cases cited by the United States in support of its Motion to Dismiss are so factually inapposite to the instant matter that they cannot reasonably be relied upon to conclude that the *Feres* doctrine bars the claims of Ian Brown and his parents.

The United States' reliance upon *Rodrigue v. United States*, 788 F.Supp. 49 (D.Mass. 1991), aff'd 968 F.2d 1430 (1st Cir. 1992) is misplaced, for example, because that case involved claims brought by a deceased airman's parents for alleged negligence by the Air Force in its attempt to rescue their son after he was swept out to sea while swimming at a beach twenty-five miles from his airbase in Japan. *Id.* at 1432. In ruling that the Air Force was not negligent in its rescue attempt, the First Circuit noted that it was "not impressed by the Air Force's exculpatory finding that recreational swimming,

13

25 miles from the base, was an incident of service; we know of no case supporting such a conclusion." *Id.* at 1434. In sum, the *Rodrigue* opinion did not rely upon the *Feres* doctrine, and the dicta quoted above indicates that the First Circuit actually rejected the United States' assertion of *Feres*.

The United States' reliance upon *Morey v. United States*, 903 F.2d 880 (1st Cir. 1990) is similarly misplaced, because *Morey* involved claims brought by a deceased sailor's mother after the sailor, upon returning to his ship after a night of heavy drinking, fell off of the pier and drowned. *Id.* at 881. The deceased sailor's mother sued on the grounds that the Navy negligently and recklessly failed to enroll her son in an alcohol rehabilitation program, and negligently failed to provide adequate patrols and security around the pier from which her son fell. Id. The First Circuit found that these claims were barred by the *Feres* doctrine, because:

> [A]ll of the acts or omissions complained of involved activity incident to military service. The claim that the Navy failed to place [decedent] in a rehabilitation program plainly arises out of activity incident to military service, because [decedent] was only eligible for this program by virtue of his military status. ... Similarly, the claim that the Navy provided inadequate security for the pier concerns acts or omissions by navy officials in their handling of military resources and personnel. ... Adjudicating Morey's claims would ... require the court to delve into questions of military decision making. The claim that the Navy negligently or recklessly failed to place [decedent] in the alcohol rehabilitation program implicates such questions of military decision-making as the circumstances under which a serviceman should have been given alcohol rehabilitation; which servicemen's problems are so serious as to require priority over others; and how the rehabilitation program should be managed and supervised. Morey's other contention, that the Navy was negligent or reckless and failing to provide sufficient security around the pier, likewise implicates questions of military decision-making, such as the proper allocation of security forces and the proper supervision of such forces.

Id. at 882 (internal citations omitted).

As established by the Complaint filed in this matter and the Statement of Facts set forth above, the claims asserted against the United States by Ian Brown and his parents do not implicate any issues of military planning and/or decision-making.

The remaining cases cited by the United States in support of its argument that the Plaintiffs' claims are barred because Ian Brown was on active duty and not on leave at the time of his accident are similarly inapposite. *Shaw v. United States*, 854 F.2d 360 (10th Cir. 1988), for example, involved a plaintiff soldier whose car was struck, on an Army post, by a 2.5 ton Army truck, while *Kohn v. United States*, 680 F.2d 922 (2nd Cir. 1982) involved a soldier who was shot to death by another soldier, on an Army post, as the result of an argument between the two soldiers regarding the proper use of informants while performing their duties as members of their Army post's drug suppression team. *Mason v. United States*, 568 F.2d 1135 (5th Cir. 1974), meanwhile, involved a sailor whose motorcycle was struck on base by a car being driven by another sailor who was on active duty and acting within the scope of his duties, and *Beaucoudray v. United States*, 490 F.2d 86 (5th Cir. 1974) stemmed from the death of a U.S. Coast Guardsman who fell overboard from a U.S. Coast Guard vessel and drowned while at sea on a U.S. Coast Guard mission. Finally, *Chambers v. United States of America*, 357 F.2d 224 (8th Cir. 1966) involved a deceased airman who drowned in a swimming pool on an Air Force base; in the course of holding that claims brought by the decedent's parents were barred by the *Feres* doctrine, the court noted that the decedent's "use of the pool, which was a part of the base, was related to and dependent upon his military service; otherwise, he would not have been privileged to use it." *Id.*, at 229.

Undaunted by the factual irrelevancy of the cases cited above, the United States also cites, in its memorandum, several additional cases in support of its argument that Ian Brown's motorcycle accident was incident to military service. The United States relies upon *Millang v. United States*, 817 F.2d 533 (9th Cir. 1987), for example, despite the fact that *Millang* involved an off-duty military policeman in the Marine Corps who was injured when he was struck, at a picnic being conducted on a Marine Corps base, by a military vehicle being driven by another Marine Corps military policeman who was on duty at the time of the accident. Another case relied upon by the United States, *Lauer v. United States*, 968 F.2d 1428 (1992), involved a U.S. Navy sailor stationed in Puerto Rico who was struck by a car while walking at night along an unlighted road that was "*owned, maintained, and patrolled*" by the Navy. Id. at 1429 (emphasis added). The First Circuit held that the *Feres* doctrine barred the sailor from recovering against the United States for his injuries, because "the question of whether to light a [Navy owned, maintained, and operated] highway is a military decision." Id. at 1430. As discussed above, the *Lauer* decision also addresses with approval two decisions, *Pierce* and *Mills*, that are factually analogous to the instant litigation and establish that the Plaintiff's claims should not be barred by the *Feres* doctrine. The United States' memorandum utterly ignores this aspect of the *Lauer* decision.

The United States also cites several cases in support of its position that the Plaintiffs' claims are barred despite the fact that Ian Brown's motorcycle accident occurred off-base, but, again, each case cited by the United States is fundamentally inapposite. As an initial example, the United States cites *United States v. Johnson*, 481 U.S. 681 (1987), which involved the death of a U.S. Coast Guard helicopter pilot who

was killed when his helicopter crashed into a mountain during a rescue operation. The United States also relies upon *United States v. Shearer*, 473 U.S. 52 (1985), in which the Supreme Court held that a deceased soldier's mother could not recover for the Army's alleged negligence in failing to prevent another soldier, who was previously convicted of manslaughter, from murdering her son at an off-base location. The mother claimed that the Army "negligently and carelessly failed to exert a reasonably sufficient control over" the soldier who eventually murdered her son, and she further claimed that the Army "failed to warn other persons that he was at large." *Shearer*, 473 U.S. at 54. The Court held that the United States was immune from liability under the *Feres* doctrine, because "[t]o permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct." Id. at 58. The *Shearer* Court further noted that the *Feres* doctrine is designed to avoid civil litigation over "a decision of [military] command," and that the *Feres* doctrine is intended to bar "the type of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." Id. at 59. Similarly, the United States has cited *Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir. 1981) for the proposition that off-base injuries may be barred by the *Feres* doctrine, but *Stanley* involved a U.S. Army soldier who voluntarily participated in a chemical warfare testing program conducted by the Army at Edgewood Arsenal, Aberdeen, Maryland and, in turn, was released from his normal military duties.

Finally, *Stewart v. United States*, 90 F.3d 102 (4th Cir. 1996), the sole case cited by the United States in support of the proposition that the Plaintiffs' claims are barred because Ian Brown was subject to military discipline and control at the time of his motorcycle accident, is inapposite because *Stewart* involved an automobile collision that occurred on the grounds of Fort Bragg, North Carolina between two soldiers who were in the course of performing their military duties.

In sum, none of the cases cited by the United States in support of its Motion to Dismiss support the proposition that Ian Brown's accident, which occurred on a public roadway routinely traversed by civilian motorists while Ian was returning to work on his privately-owned motorcycle following lunch, was "incident to military service."

## CONCLUSION

For the reasons set forth above, Plaintiffs Ian Brown, James Brown, and Barbara Brown respectfully assert that this Court should reject, in its entirety, the Motion to Dismiss that has been filed by Defendant United States of America.

Respectfully submitted,

The Plaintiffs,
IAN J. BROWN, JAMES
BROWN, and BARBARA BROWN,
By their attorney,

/s/ Scott E. Charnas
Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700 (telephone)

Date:   January 18, 2005

## CERTIFICATE OF SERVICE

    I, Scott E. Charnas, hereby certify that on the 18th day of January, 2005, I caused a copy of the foregoing to be served, by electronic filing and by first class mail, postage prepaid, upon Damian W. Wilmot, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210.

                                            /s/ Scott E. Charnas
                                            Scott E. Charnas