UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11924-RGS

)
IAN J. BROWN, JAMES BROWN and )
BARBARA BROWN )
      Plaintiffs, )
)
v. )
)
UNITED STATES OF AMERICA, )
VERIZON NEW ENGLAND, INC. and )
BOSTON EDISON COMPANY d/b/a )
NSTAR ELECTRIC )
      Defendants. )
)

## VERIZON NEW ENGLAND, INC.'S OPPOSITION TO UNITED STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### Introduction

The plaintiffs filed this action against Verizon New England, Inc. ("Verizon"), Boston Edison Company, and the United States of America (the "Government") for personal injuries Ian Brown ("Brown") suffered when his motorcycle crashed and he was propelled along a guardrail into a utility pole on a public road adjacent to Hanscomb Air Force Base ("Hanscomb AFB") in Bedford, Massachusetts. Verizon filed a cross-claim against the Government for contribution in the event Verizon is held liable for the Brown's injuries.

The Government now moves under Fed. R. Civ. P. 12(b)(1) to dismiss the plaintiffs' claims against it. The Government seeks dismissal on the ground that the plaintiffs' suit is not authorized by the Federal Tort Claims Act (the "FTCA") because

Ian Brown's (Brown) injuries were sustained "incident to military service." See Feres v. United States, 340 U.S. 135 (1950). The Government contends that the injuries were sustained "incident to military service" because Brown was on active duty and wearing his uniform, even though the accident occurred off-base while Brown was on a lunch break, on a public roadway patrolled by civilian authorities, and involved Brown's personal vehicle. According to the rule set forth in Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666 (1977), if the Government's 'Feres motion' is allowed as to the plaintiffs' claims, Verizon's cross-claims against the Government might also be dismissed. Thus, Verizon could be held financially responsible for the Government's negligence, if any, merely because Brown fortuitously happened to be a member of the military at the time of his accident as opposed to an ordinary civilian.

Despite the consequences of the motion to Verizon, however, the parties have not conducted *any* discovery to the jurisdictional issues raised by the Government. Verizon would be prejudiced by the Court prematurely deciding this motion without being afforded a reasonable opportunity to discover the pertinent facts and circumstances so that its interests can be fairly represented. Thus, the Court should stay its decision pending discovery to the jurisdictional issues. In the event the Court decides the motion on the current limited factual record, however, the motion should be denied because Brown's injuries were primarily the result of his activities as a member of the general public, and only tangentially related to his military service.

## Background[1]

On January 4, 2002, the plaintiff, Ian Brown ("Brown"), a First Lieutenant in the United States Air Force, was riding his motorcycle on civilian roadway in the town of Bedford, Massachusetts. Affidavit of Ian J. Brown, ¶¶ 1-3 ("Brown aff"). Wearing his military uniform, he was returning to work at Hanscom Air Force Base ("Hanscomb AFB") from his home where he had just eaten lunch. Id. ¶6; Affidavit of Brian Carl Peters, ¶10 ("Peters aff"). Brown often went home for lunch during his workdays. Peters Aff., ¶7.

While en route to Hanscomb AFB, Brown lost control of his motorcycle, and was propelled into a guardrail and utility pole located on the side of the road. Brown aff., ¶5. The Complaint alleges that the utility pole and/or guardrail were located on property owned by the Government. The Bedford Massachusetts police responded to the scene and Brown was taken to a civilian hospital in Boston via a civilian medical transport helicopter. Brown suffered serious debilitating injuries as a result of the accident. See Report of Police Officer Tracey Cook and Medical Records of Boston MedFlight (attached to the plaintiffs' opposition as exhibits B and C respectively). The U.S. Air Force has since provided Brown with Medical treatment and disability retirement benefits. Peters aff., ¶13.

The Government filed this Motion to Dismiss the plaintiffs' claims against it, arguing that the Feres doctrine, which bars claims by servicemen against the government for injuries sustained "incident to military service", precludes those claims. The Government contends that Brown's injuries were incident to military service because the

---

[1] The following facts are derived from the affidavits and reports submitted by the Government and the plaintiff in connection with the Government's Motion to Dismiss.

accident occurred during his "duty day" while he was wearing his uniform, and because he was on "active-duty" subject to military discipline. The plaintiffs oppose the motion, arguing that the injuries were not sustained "incident to military service", because there "was nothing characteristically military about" Brown's activities which "involved an off-base accident of a privately-owned motorcycle along a civilian roadway routinely used by civilian motorists and patrolled by civilian law enforcement…" Plaintiff's Opposition, at pp. 3-4.

In support of their respective positions, the Government filed a two-page affidavit of Brown's superior officer and Brown filed a two-page affidavit as well as unattested copies of a police report and medical records from a medical transport company. The parties have not conducted *any* formal discovery to the jurisdictional issues raised by the Government.

### Argument

### *1.   The Government Applies the Wrong Standard.*

The standard the Court must apply in deciding a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is different from that under a 12(b)(6) motion.[2] The plaintiff bears the burden to show by a preponderance of the

---

[2] The Government has overlooked the "crucial distinction" between a facial challenge to the sufficiency of the complaint and a factual challenge:
> [W]e must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer safeguards to the plaintiff [similar to those under Rule 12(b)(6)]: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - … the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

Mortensen v. First Federal Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981) (cert. denied, 454 U.S. 897 (1981)); Westlands v. NRDC, 276 F. Supp.

evidence that the district court has subject matter jurisdiction. See Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004) ("party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence"); Toxgon Corp. v. Bnfl, Inc., 312 F.3d 1379, 1383 (Fed. Cir. 2002) (citing Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir. 1994)). When, as here, a *factual* challenge has been made to the Court's jurisdiction, the Court may allow discovery, conduct evidentiary hearings, engage in jurisdictional fact-finding and rely on evidence beyond the four corners of the complaint in making its decision. See Skwira v. United States, 344 F.3d 64, 71-72 (1st Cir. 2003) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). If the preponderance of the evidence shows that Brown's accident did not occur incident to military service, then this Court must deny the Government's motion and exercise jurisdiction over the claims in question.

### 2.   *The Motion Should be Stayed Pending Further Discovery*

The issue of subject matter jurisdiction under the Feres doctrine is an inherently fact-intensive inquiry. United States v. Shearer, 473 U.S. 52, 57 (1985) ("The Feres doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in Feres and subsequent cases). As discussed above, the Court may consider a broad range of evidence beyond the pleadings. Here, the plaintiffs and the Government each rely on one short affidavit to support their respective positions. Verizon, however, is at a distinct disadvantage because it has no first-hand knowledge of any facts relevant to whether the accident occurred "incident to military

---

2d 1046, 1049 (D. Cal. 2003). Where, as here, the moving party relies on extraneous facts, the Court's role becomes that of legal *and* factual arbiter. Williamson, 645 F.2d at 413.

service." Verizon has not had an opportunity to conduct any discovery concerning the Feres issues, such as, among others, whether the guardrail and the accident were on Government property, the nature of Brown's job in the Air Force and, thus, how his traveling to his house for meals relates to that service, the degree and nature of the Air Force's control over Brown at the time of his accident, and whether the Government maintains or otherwise patrols the road on which the accident occurred.

Verizon, therefore, respectfully requests that this Court exercise its broad discretion to stay the motion and permit discovery in order to develop a complete factual record concerning the jurisdictional issues raised by the Government.  See Skwira, 344 F.3d at 71-72; Valentin, 254 F.3d at 363 ("the district court will often need to engage in some preliminary fact-finding. In that situation, the district court 'enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.'"); Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 (1st Cir. 1992).  See also English v. Cowell, 10 F.3d 434, 437 (7th Cir. 1993) ("Nor can a court, upon motion by a party, dismiss a complaint with prejudice without affording the plaintiff a reasonable opportunity to present … evidence relevant to the challenged defect in pleading") (citing Cooper v. United States Penitentiary, 433 F.2d 596 (10th Cir. 1970)). Verizon should not be forced to bear the responsibility for the Government's own negligence without, at minimum, being afforded a fair opportunity to discover and present the pertinent facts and circumstances to these jurisdictional issues.  See id.

    3.    *The Accident did not Occur "Incident to Military Service"*

        A.    *Brown's Activities Were not Related to His Military Service*

Based on the limited evidence in the record, Verizon agrees with the plaintiffs that Brown's activity at the time of the accident—riding his personal motorcycle on a civilian roadway from his off-base residence—was not incident to military service. While Brown's injuries may have been tangentially connected to the fact that he worked for the military, they arose out of a completely non service-related activity: traveling on his personal motorcycle from his house after a lunch break. His injuries were not incident to military service in the relevant sense, because they were not a direct or proximate result of his military duties. See, e.g., Brooks, 337 U.S. 49, 52 (1949); Parker v. United States, 611 F.2d 1007, 1010 (5th Cir. 1980) ("The test is not a purely causal one: one cannot merely state that but for the individual's military service, the injury would not have occurred . . . it is insufficient to aver that but for [the plaintiff's] military service, he would not have been at the scene of the collision. . . [m]ore is needed for the activity to be 'incident to military service'").

### B. This Case Does Not Implicate the *Feres* Doctrine

Consideration of the underlying justifications for the Feres rule demonstrates that the rule should not apply in this case. See Shearer, 473 U.S. at 57 (facts of each case must be examined in light of the rationales of the Feres doctrine). The United States Supreme Court has stated that the "best" rationale for the rule is that permitting tort claims by servicemen against the government concerning injuries arising out of activities incident to military service would require judicial intrusion into "sensitive military affairs at the expense of military discipline and effectiveness." Shearer, 473 U.S. at 59. In this regard, the Court's primary concern is with "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the

7

extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty...." Stencel, 431 U.S. at 671-72 (internal citations omitted). That rationale is inapposite to the facts of this case.

Most notably, the plaintiff's claims against the Government are premised on the alleged breach of a duty owed to the general public (of which Brown is a member)—not some special duty owed to Brown arising out of his membership in the military. See Lauer v. United States, 968 F.2d 1428, 1430 (1st Cir. 1992) (cert. denied 506 U.S. 1033) (discussing Mills v. Tucker, 499 F.2d 866 (9th Cir. 1974) and noting that it would have found the plaintiff's injury in Mills not incident to military service because the "road was independent of the serviceman's base, and he was using it as a member of the general public"). Specifically, the plaintiffs allege that the Government was negligent and created an "unreasonably dangerous condition for the motoring public on said Hartwell Road." Complaint ¶¶ 33-36. Like that in Mills, this alleged negligence concerns the military's duties, as a property-owner in the town of Bedford, to the greater civilian community and not to its servicemen. Contrast Lauer, 968 F.2d at 1430 (plaintiff alleged military failed to properly light and maintain road "owned, maintained and patrolled by the Navy" servicing a Navy base); Morey v. United States, 903 F.2d 880 (1st Cir. 1990) (plaintiff alleged that Navy failed to provide sufficient patrols around a Navy pier and as a result failed to rescue him when he fell off pier).

Therefore, resolving these claims will not require judicial meddling with any "sensitive military affairs" such as "the peculiar and special relationship of [Brown] to his superiors" or the effective execution of military duties. In short, the only connection

between the plaintiff's claims and the military is the purely fortuitous circumstance of Brown's status as an enlisted serviceman. Brown could easily have been an ordinary civilian when the accident occurred, and the Court would be called to perform precisely the same inquiry into the Government's conduct. This inquiry will not implicate "core concerns about [judicial] interference in military discipline", Day v. Mass. Air. Nat'l Guard, 994 F.Supp. 72, 77 (D. Mass. 1998) (aff'd 167 F.3d 678 (1st Cir. 1999)), or other internal "military decisions." Lauer, 968 F.2d at 1430. Therefore, application of the Feres doctrine in this case would not comport with its primary justification.

The Supreme Court has recognized two other justifications for the Feres rule which, while relevant, are "no longer controlling." Shearer, 473 U.S. at 58, n.4; United States v. Muniz, 374 U.S. 150, 159-62 (1963). The first such rationale is that because of the "distinctly federal character" of the relationship between the military and servicemen, the government's liability should not depend on "the fortuity of where the solider happened to be stationed at the time of the injury." Stencel, 431 U.S. at 672. Thus, the Feres doctrine ensures uniformity in the government's liability to servicemen regardless of the situs of injury. Id.; U.S. v. Johnson, 481 U.S. 681, 684 (1987). That rationale is inapplicable to the facts of this case because Brown's injury was not sustained in the course of his military service but rather in his capacity as a member of the general public. See Johnson, 481 U.S. at 684 ("federal relationship is implicated to the greatest degree when a service member is performing activities incident to his federal service . . . . and is injured incident to service -- that is, because of his military relationship with the Government"). Because Brown's injuries arose out of the Government's alleged breach of a duty owed to the general public—not out of a "distinctly federal" relationship—the

Government should not be permitted to employ the Feres doctrine to evade liability for its own negligence.

The second additional rationale is equally inapplicable to this case. The Supreme Court has suggested that where the injured serviceman has received benefits under the VBA for service-connected injuries, he should not be entitled to additional recovery under the FTCA. Stencel, 431 U.S. at 673. See also Hatzlachh Supply Co. v. United States, 444 U.S. 460, 464 (1980) (stating in dicta that the VBA is "the sole remedy for service-connected injuries"). This rule is predicated on Congress's apparent intent to provide an exclusive avenue for relief and "an upper limit" on the Government's liability for injuries *arising out of military service*. Id. However, the VBA provides an exclusive remedy *only* if the injury was "incident to military service." United States v. Brown, 348 U.S. 110, 111 (1954); Brooks, 337 U.S. at 53. See also Johnson, 481 U.S. at 697-98 (Scalia, J., dissenting) (discussing continuing vitality of Brooks and Brown).[3] Because Brown's injuries arose out of his driving a personal vehicle on a civilian road while returning from his lunch at home—not a military activity—the VBA should not act as a bar to his FTCA claims.

### 4.    *Verizon's Claims Against the Government Should Stand*[4]

The FTCA "permits impleading the Government as a third-party defendant, under a theory of indemnity or contribution, if the original defendant claims that the United States was wholly or partially responsible for the plaintiff's injury." Stencel, 431 U.S. at

---

[3] While there is some evidence that Brown received medical treatment and "disability retirement" benefits from the Government, the record is silent as to whether those benefits were rendered under the VBA.
[4] At the time the Government moved to dismiss the plaintiff's direct claims against it, Verizon's cross-claims for contribution had not yet been filed. However, the Government's grounds for dismissing the plaintiff's direct claims also apply to Verizon's claims, and thus Verizon asserts this opposition. See Stencel, 431 U.S. at 673-74.

669-70 (citing United States v. Yellow Cab Co., 340 U.S. 543 (1951)). However, those claims are limited by the same justifications for the Feres rule. Id. at 672 ("We must therefore consider the impact of these [Feres] factors where, as here, the suit against the Government is not brought by the serviceman himself, but by a third party seeking indemnity for any damages it may be required to pay the serviceman"). Specifically, the Court must examine (1) the nature of the relationship between Verizon and the Government; (2) whether Brown received VBA benefits for service-related injuries; and (3) whether Verizon's claims against the Government would require impermissible intrusion into military affairs. Id. at 671-73. The second and third factors have been discussed above.

Consideration of the first factor, however, clearly demonstrates that Verizon's cross-claims should stand regardless of the status of the plaintiff's direct claims against the Government. The outcome in Stencel, like that in Feres, reflected the Supreme Court's concern for maintaining uniform liability for Government negligence occuring in the context of "distinctly federal" relationships. Id. ("If ... it makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a serviceman who sustains service-connected injuries ..., it makes equally little sense to permit that situs to affect the Government's liability *to a Government contractor* for the identical injury") (emphasis added). Unlike the situation in Stencel, where the relationship between the third-party plaintiff (a military contractor) and the government was "certainly no less 'distinctively federal in character' than the relationship between the Government and its soldiers", id. at 672, the relationship between the Government and Verizon is in no way federal in character. Here, the only alleged relationship

between Verizon and the Government is that Verizon's utility pole was located on the Government's property. That relationship (if the plaintiffs' allegation is true) is no different from Verizon's relationship to any other property owner on whose land its utility poles are located.

Thus, because the relationship between Verizon and the Government is not "distinctly federal", the concern for uniformity is not implicated. Indeed, the FTCA *specifically* and *expressly* provides that the state law of the situs where the negligent act occurs controls the Government's liability to private individuals, even for third-party claims. 28 U.S.C § 1346(b); Yellow Cab Co., 340 U.S. at 552-53. Here, it would be grossly inequitable to force Verizon to shoulder the financial repercussions of the Government's negligence just because the plaintiff happened to be a military serviceman—a fortuitous circumstance wholly irrelevant to the relationship between Verizon and the Government. Where Verizon is not a party to the "distinctively federal" relationship between the military and its personnel and the Government's alleged negligence did not arise out of such a relationship, Verizon should not be held financially responsible therefore. Accordingly, Verizon's cross-claims against the Government for contribution should stand.

## Conclusion

For the reasons stated above, Verizon respectfully requests that this Court deny the Government's Motion to Dismiss. In the alternative, Verizon respectfully requests that this Court stay the motion pending discovery on the jurisdictional issues under Feres

<u>v. United States</u>, 340 U.S. 135 (1950) and <u>Stencel Aero Eng'g Corp. v. United States</u>, 431 U.S. 666 (1977).

                                  Respectfully submitted,

                                  VERIZON NEW ENGLAND, INC.

                                  By its attorneys,

                                  /s/ William A. Worth
                                  William A. Worth, BBO #544086
                                  Joshua A. Lewin, BBO# 658299
                                  PRINCE, LOBEL, GLOVSKY & TYE LLP
                                  585 Commercial Street
                                  Boston, MA 02109
                                  (617) 456-8000

Date: February 8, 2005