UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>　　　Defendants. | &#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124; |

### SURREPLY MEMORANDUM OF THE PLAINTIFFS IN OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANT UNITED STATES OF AMERICA

Now come Plaintiffs, Ian J. Brown, James Brown, and Barbara Brown, and file this Surreply Memorandum in Opposition to the Motion to Dismiss that has been filed by Defendant United States of America (hereinafter referred to as "the United States"). The United States has filed a Reply Brief, in support of its Motion, which alleges that the Plaintiffs' reliance upon *Pierce v. United States*, 813 F.2d 349 (11th Cir. 1987) and *Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974) is misplaced because the servicemember Plaintiffs in *Pierce* and *Mills* were on pass or furlough at the time of their off-base motor vehicle accidents, while, in the instant matter, Plaintiff Ian Brown was on a lunch break at the time of his debilitating off-base motorcycle accident along a civilian-traversed and civilian-patrolled public roadway. As explained in more detail below, the United States'

1

Motion and Reply Memorandum reveal a fundamental misconception regarding the typical autonomy enjoyed by a commissioned Air Force military officer stationed at Hanscom Air Force base regarding personal activities such as lunch. Moreover, the United States' Reply Memorandum fails to resolve the inconvenient (from the government's perspective) facts that (1) Ian Brown's motorcycle accident occurred while he was driving his privately-owned motorcycle along a public-traveled roadway routinely traversed by civilian motorists and patrolled by civilian authorities, (2) the accident scene was responded to by civilian, rather than military, emergency medical personnel, and (3) the accident occurred when Mr. Brown was returning from the virtually universal activity, within both the civilian and military community, of eating lunch. In fact, under the United States' logic, had Mr. Brown been transporting a civilian on his motorcycle at the time of the accident, that civilian would be entitled to pursue a claim against the United States, but Mr. Brown would not be so entitled. This very logic was rejected by the court in *Pierce*, which explained that "[t]o accept the government's contention would be to construe any conceivable personal activity as 'incident to service,' because that activity happened to be performed by a member of the armed forces. We refuse to accept such a construction, for to do so would preclude the class of servicemen from bringing an action under the Federal Tort Claims Act merely by virtue of the fact that the claimants are wearing a United States uniform." *Pierce*, 813 F.2d at 354. The same result should lie in this matter, or else Ian Brown will be deprived of his right to recover for the United States' negligent maintenance of an off-base, civilian-traveled and civilian-patrolled roadway simply because he was wearing a United States uniform at the time of his accident.

Further, the United States places too much emphasis upon the purported difference in duty status between Ian Brown and the servicemember-plaintiffs in *Pierce* and *Mills*. More specifically, the United States claims that *Pierce* and *Mills* are not applicable to this litigation, and therefore do not support Ian Brown's asserted right to pursue a claim against the United States, because Messrs. Pierce and Mills were on pass or furlough at the time of their off-base motor vehicle accidents. Again, the United States' position betrays a crucial misunderstanding of the meaning and significance of a military pass or furlough.

Although the United States' Reply Memorandum quotes *Pierce* for the proposition that Pierce received "more than a mere release from the day's duties," the Reply Memorandum fails to include the first clause of the quoted sentence, which reads "[i]t is conceded that [Pierce] was technically neither on furlough nor on leave." *Pierce*, 813 F.2d at 353. In fact, in *Pierce*, the plaintiff was an enlisted Army staff sergeant who obtained permission from his master sergeant to leave the military base for a short period of time in order to attend to some personal errands. *Id*, at 350. Pierce was told that he "did not have to return [to the base] until late afternoon." *Id*. Accordingly, and as explained in the *Pierce* decision:

> Shortly before noon, Pierce left the base on his motorcycle
> and traveled south to the nearby city of Hinesville, Georgia.
> After attending to his personal errands, he ate lunch and
> began his journey back to the base.

*Pierce*, 813 F.2d at 350. Pierce's accident occurred while he was on his way back to base, following lunch. *Id.*, at 350-351.

In this matter, the United States seeks to distinguish *Pierce*, which allowed Pierce to recover against the government, on the grounds that Pierce was affirmatively told he

3

could be off-base at the time of his accident (although he was required to return by late afternoon), while Ian Brown had not been given any such specific authorization to be off-base at the time of his accident. The United States' position represents a distinction without a difference.

More specifically, and as explained by Ian Brown in the affidavit he filed in support of the Plaintiffs' original Opposition to the United States' Motion to Dismiss, Ian Brown was a commissioned officer at the time of his accident and had a variety of choices regarding whether and where he would eat lunch on the day of his motorcycle accident, including the freedom to choose whether or not he would leave the base for lunch. See Affidavit of Ian Brown ("Brown Aff.", at ¶¶1, 7-9). In other words, First Lieutenant Ian Brown – unlike Staff Sergeant Pierce – did not have to obtain anyone's explicit permission before leaving the Hanscom Air Force base to eat lunch. Indeed, Ian Brown's lunchtime options were comparable to those of a typical salaried employee who may have been traveling along the relevant roadway at the time of Ian Brown's accident. Consequently, it strains the limits of the *Feres* doctrine, common sense, and any notion of equity to suggest that Ian Brown should be barred from seeking recovery against the United States in this action simply because (1) he was a servicemember and (2) as an officer, he did not need to seek and receive permission before leaving the base for lunch.

Similarly, in *Mills*, the court simply noted, without further explanation, that the plaintiff-servicemember was "on furlough on the day of the accident", and that he was returning "to his Navy-owned quarters where he was to attend his son's birthday party." *Mills*, 499 F.2d at 867. Nevertheless, despite this cryptic explanation of Mills' duty status at the time of his accident, the United States, in its reply memorandum, has seized

4

upon the somewhat-vague word "furlough" to unequivocally claim that *Mills* is inapposite to this litigation. Understandably, the United States has ignored the clear factual similarities between *Mills* and this litigation, including the fact that, in *Mills*, the accident occurred along a "roadway [that] was not part of the Naval Depot. Bounded on one side by privately owned farmland and fenced off from the base on its other side, the road is publicly used. Drivers need not pass to a gate to reach it, and it connects different civilian areas." *Mills*, 499 F.2d at 868.

## CONCLUSION

For the reasons set forth above, Plaintiffs Ian Brown, James Brown, and Barbara Brown respectfully assert that this Court should reject, in its entirety, the Motion to Dismiss that has been filed by Defendant United States of America.

Respectfully submitted,

The Plaintiffs,
IAN J. BROWN, JAMES
BROWN, and BARBARA BROWN,
By their attorney,

/s/ Scott E. Charnas
Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700

Date:   February 9, 2005

## CERTIFICATE OF SERVICE

I, Scott E. Charnas, hereby certify that on the 9th day of February, 2005, I caused a copy of the foregoing to be served, by electronic filing and by first class mail, postage prepaid, upon Damian W. Wilmot, Esquire, and Mark T. Quinlivan, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, William A. Worth, Esquire, Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, Massachusetts 02109, and Michael K. Callahan, Esquire, NSTAR Electric & Gas Corporation, Prudential Tower, 800 Boylston Street, 17th Floor, Boston, Massachusetts 02109.

/s/ Scott E. Charnas
Scott E. Charnas