UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 04-11924-RGS


| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN, <br>     Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC, <br>     Defendants. | \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| <br> \| |


**<u>PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANT UNITED STATES OF AMERICA</u>**


Now come Plaintiffs, Ian J. Brown, James Brown, and Barbara Brown, and file this supplemental memorandum in opposition to the Motion to Dismiss that has been filed by Defendant United States of America (hereinafter referred to as "the United States"). As set forth in more detail below, the facts revealed during the limited discovery authorized by this Court emphatically confirm the Plaintiffs' contention that their claims are not barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153 (1950), which precludes military personnel from suing the federal government for injuries that are incurred "while performing duties under orders" and "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159.

1

## SUPPLEMENTAL STATEMENT OF FACTS

At the time of his tragic January 4, 2002 motorcycle accident, Ian Brown was employed as an Air Force lieutenant who worked at a cubicle in an office setting, alongside approximately 4 to 6 other officers and "several" civilian contractors. See Deposition of Brian Peters ("Peters Dep."), attached hereto as Exhibit A, at pp. 10-11,21. The group with whom Mr. Brown worked did not have a specific unit name or designation, and it did not include any non-commissioned officers or enlisted personnel. See Peters Dep., at pp.11-12.

As his direct supervisor at the time has testified, Hanscom Air Force Base "doesn't even have an active runway anymore. It's basically an office park." See Peters Dep., at p. 10. Mr. Brown's work hours were Monday through Friday, from 8:00 a.m. until 4:00 p.m. See Peters Dep., at pp. 21-22. His direct supervisor does not recall any situation in which Mr. Brown was ever requested to come to the office after hours or on the weekend. See Peters Dep., at p. 22.

The office in which Mr. Brown worked had no specific lunch policy and no specified lunch period. See Peters Dep., at pp. 29-30. Some of Mr. Brown's military and civilian peers would often elect to combine lunch with exercise, which resulted in an absence of more than one hour from the office. See Peters Dep., at p. 29. Mr. Brown's supervisor did not keep track of when the civilians and military members in the office went to lunch, and Mr. Brown was not required to either obtain permission before leaving for lunch or even inform his supervisor that he was going to lunch. See Peters Dep., at p. 30. Mr. Brown was allowed, if he chose, to change out of his uniform while at lunch, he generally was allowed to use his lunch break for personal activities, and he was allowed

2

to use any mode of transportation during his lunch break.  See Peters Dep., at pp. 31-32.

See, also, Answer Nos. 7(3) and 7(5) of the United States to Verizon New England, Inc.'s

First Set of Interrogatories, attached hereto as Exhibit B.

Mr. Brown "would routinely go home for lunch", but he was free to either go

home, eat on the base, or go to an off-base restaurant, so long as he could get back to

work within a reasonable time period.  See Peters Dep., at pp. 19,31-32.  While Mr.

Brown was at home during his lunch break, he was not required to check in with his

supervisor.  See Peters Dep., at p. 32.

Mr. Brown's supervisor acknowledged, during his deposition, that the term

"liberty status", as used in paragraph 9 of the affidavit he signed in support of the United

States' motion to dismiss, is a Navy term with which he is not specifically familiar.  See

Peters Dep., at p. 34.  Also during his deposition, Mr. Brown's supervisor qualified the

assertion, originally set forth in paragraph 13 of the aforementioned affidavit, that Mr.

Brown received medical and retirement benefits because the accident occurred while Mr.

Brown was performing his military duties; as Mr. Brown's supervisor acknowledged at

his deposition, paragraph 13 of the affidavit simply means that Mr. Brown was entitled to

benefits following his accident because he was a full-time Air Force service-member at

the time of the accident, and that Mr. Brown "certainly was not injured because his duty

was to drive his motorcycle."  See Peters Dep., at p. 44-45.

Indeed, Mr. Brown's supervisor confirmed during his deposition that, at the time

of his accident, Mr. Brown "was just returning from lunch going – coming back to work.

He was not specifically executing a military duty.  I mean, he didn't have a duty to be on

Hartwell Road at that time."  See Peters Dep., at p. 45.

Finally, Mr. Brown's direct supervisor explained that all full-time military personnel are considered to be on "active duty," even when they are on leave or otherwise not at work. See Peters Dep., at p. 43. In fact, Mr. Brown's "active duty" status at the time of this accident included nights, weekends, and any other personal time – such as his lunch break – when Mr. Brown maintained full-time employment as an Air Force lieutenant but was not performing duties incident to his military service. See Peters Dep., at p. 42-43.

Mr. Brown's home, at the time of the accident, was in a Bedford, Massachusetts trailer park that was situated on land leased by the Air Force. See Peters Dep., at p. 14. See, also, Deposition of Dennis P. Cronin, Rule 30(b)(6) witness on behalf of the U.S. Air Force ("Cronin Dep."), attached hereto as Exhibit C, at pp. 15-18. The trailer park is accessed by a roadway designated as Hartwell Road. See Cronin Dep, at p. 17. See, also, Deposition of Adrienne St. John, Rule 30(b)(6) witness on behalf of the Town of Bedford, Massachusetts ("St. John Dep."), attached hereto as Exhibit D, at p. 77.

Hartwell Road serves as access to civilian residential homes and civilian industrial buildings. See St. John Dep., at p. 43. The portion of Hartwell Road that directly abuts the aforementioned trailer park, and includes the vicinity where Mr. Brown's accident occurred, traverses real property that was ceded to the United States of America in 1952, but neither the Navy, the Air Force, nor any other agency or department of the United States ever "installed, maintained, or patrolled any portion of Hartwell Road in Bedford, Massachusetts on or before January 4, 2002." See Answer No. 2 of the United States to Verizon New England, Inc.'s First Set of Interrogatories, attached hereto

4

as Exhibit B. <u>See</u>, <u>also</u>, Deposition of Arthur R. Hayes, Rule 30(b)(6) witness on behalf

of the U.S. Navy ("Hayes Dep."), attached hereto as Exhibit E, at pp. 33-35.

All of Hartwell Road, including that portion of Hartwell Road where Mr. Brown's

accident occurred, is open to unrestricted civilian traffic and is plowed, sanded, swept,

painted with traffic lines, and otherwise maintained by the Town of Bedford. <u>See</u> St.

John Dep., at pp. 34-35,58-59,69. <u>See</u>, <u>also</u>, Hayes Dep., at pp. 38-39. A motorist cannot

access Hanscom Air Force Base directly from Hartwell Road; rather, a motorist traveling

eastbound on Hartwell Road in Bedford, where Mr. Brown's accident occurred, would

need to turn onto four other roadways, and cross from Bedford into Lexington, before

reaching the gate to the base. <u>See</u> St. John Dep., at pp. 40-41.

Indeed, the Air Force considers Hartwell Road to be "off-base." <u>See</u> Cronin Dep.,

at p. 21. The Air Force also considers the trailer park in which Mr. Brown was living to

be "off base." <u>Id</u>.

## SUPPLEMENTAL LEGAL ARGUMENT

The supplemental facts set forth above confirm that Mr. Brown was injured while

performing an activity that is universal to both civilians and service personnel, and that

the claims raised by the Plaintiffs do not implicate the concerns identified by the Supreme

Court in *Feres*. More specifically, at the time of his accident, Mr. Brown was working in

an office environment alongside civilians and other military officers, and he generally

was free to take a lunch break whenever and wherever he chose to do so, so long as he

was not away from his desk for an excessive period of time. He could change out of his

uniform and attend to personal affairs during his lunch break, if he chose to do so. In

sum, Mr. Brown's lunch time options were no different from those of the civilians with

whom he worked, or, for that matter, from the typical civilian office employee. Stated

differently, Mr. Brown's lunch time activities, including his activities on the day of his

accident, did not implicate any military considerations or involve any military duties.

Moreover, as Mr. Brown's direct supervisor testified at his deposition, Mr. Brown

had no military duty to either be on Hartwell Road or driving a motorcycle at the time of

the accident, and he was "just returning from lunch going – coming back to work."

Consequently, the Plaintiffs' claims cannot be, as a matter of fact and of law, barred by

the *Feres* doctrine. See *Taber v. Maine*, 67 F.3d 1029, 1051 (2nd Cir. 1995), quoting

*Brooks v. United States*, 337 U.S. 49 (1949) (*Feres* doctrine held not applicable because

"there was nothing characteristically military" about the plaintiff's activities immediately

prior to the accident, the accident "had 'nothing to do with' the plaintiff's military career

and was 'not caused by service except in the sense that all human events depend upon

what has already transpired.'"). See, also, *Feres*, 340 U.S. at 146, 71 S.Ct. at 159

(distinguishing *Brooks* on grounds that *Brooks* did not involve claims of service

personnel for injuries suffered "while performing duties under orders", and limiting scope

of *Feres* doctrine to "injuries [that] arise out of or are in the course of activity incident to

[military] service").

Further, Mr. Brown's status as an "active duty" Air Force lieutenant at the time of

his accident does not bar the Plaintiffs' claims. As Mr. Brown's supervisor testified at

deposition, being on "active duty" simply means that a service-member is employed by

the military on a full-time basis, even during those times when the service-member is not

actively performing military activities and, indeed, is engaged in personal leisure or

business. Consequently, Mr. Brown's employment status as a full-time, or "active duty",

Air Force lieutenant at the time of his accident does not bar his claim, because the personal activity in which he was engaged at the time of his accident – namely, taking his lunch break – was not incident to military service. See, e.g., *Taber*, supra; *Mills*, supra; *Pierce v. United States*, 813 F.2d 349 (11th Cir. 1987), cited with approval by this Court in *Lauer v. United States*, 968 F.2d 1428 (1992) (in each of these three cases, injured active duty service-members held entitled to pursue claims against the United States, because their injuries were incurred while performing personal tasks that were not incident to their military service).

Finally, the location of Mr. Brown's accident also does not render *Feres* applicable. As an initial matter, the Air Force's own representative testified at deposition that the Air Force considers both Hartwell Road and the trailer park where Mr. Brown was living to be "off-base." Moreover, no department or agency of the United States has ever installed, maintained, or patrolled any portion of Hartwell Road. Finally, Hartwell Road is open to unrestricted civilian use, traverses civilian residential and industrial areas, and does not provide direct access to Hanscom Air Force Base. Consequently, the ownership status of that portion of Hartwell Road where the accident occurred does not bar the Plaintiffs' claims under the *Feres* doctrine. . See, e.g., *Mills v. Tucker*, 499 F.2d 866,868 (9th Cir. 1974), cited with approval by this Court in *Lauer v. United States*, 968 F.2d 1428 (1992) (court held that *Feres* doctrine did not bar suit for motorcycle accident that occurred on roadway maintained by the United States Navy and adjacent to naval facility, because "the road is publicly used .... [.] [d]rivers need not pass through a gate to reach it, and it connects different civilian areas.")

## CONCLUSION

For the reasons set forth above, Plaintiffs Ian Brown, James Brown, and Barbara Brown respectfully assert that this Court should reject, in its entirety, the motion to dismiss that has been filed by Defendant United States of America.

Respectfully submitted,

**The Plaintiffs,
IAN J. BROWN, JAMES
BROWN, and BARBARA BROWN,**
By their attorney,

/s/ Scott E. Charnas
Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700

Date:   May 17, 2005

## CERTIFICATE OF SERVICE

Scott E. Charnas, hereby certify that on the 17th day of May, 2005, I caused a copy of the foregoing to be served, by electronic filing and by first class mail, postage prepaid, upon Damian W. Wilmot, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, Joshua A. Lewin, Esq., Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, MA 02109, and Michael K. Callahan, Esq., NSTAR Electric & Gas Company, 800 Boylston Street, P1700, Boston, Massachusetts 02199.

/s/ Scott E. Charnas
Scott E. Charnas