UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IAN J. BROWN, JAMES BROWN and <br> BARBARA BROWN <br>         Plaintiffs, <br> <br> v. <br> <br> UNITED STATES OF AMERICA, <br> VERIZON NEW ENGLAND, INC. and <br> BOSTON EDISON COMPANY d/b/a <br> NSTAR ELECTRIC <br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION <br> NO. 04-11924 RGS |

**SUPPLEMENTAL MEMORANDUM OF VERIZON NEW ENGLAND, INC.
IN OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

The plaintiffs filed this action against Verizon New England, Inc. ("Verizon"), Boston Edison Company, and the United States of America (the "Government" or "Federal Government") for personal injuries Ian Brown ("Brown"), a First Lieutenant in the United States Air Force, suffered when his motorcycle crashed on a public road in Bedford, Massachusetts. Verizon filed a cross-claim against the Government for contribution in the event Verizon is held liable for the Brown's injuries. The Government moved to dismiss the plaintiffs' claims against it under the Feres doctrine, arguing that Brown's injuries were incurred "incident to military service." See Feres v. United States, 340 U.S. 135 (1950). Verizon, as well as Brown, opposed the motion.

In its opposition and at the hearing before this Court on February 23, 2005, Verizon argued that there were outstanding factual issues concerning the Court's

jurisdiction warranting further discovery. Following the hearing, the Court authorized limited discovery on <u>Feres</u>-related issues, to be completed by April 29, 2005, with twenty days thereafter to supplement the record. Pursuant to that Order, the parties conducted limited discovery. Verizon now submits this supplemental memorandum.

The factual record after discovery supports the arguments raised by Verizon in its initial opposition to the Government's Motion to Dismiss. Brown's injuries were not sustained "incident to military service" because Brown's activity at the time he was injured—riding his personal motorcycle on a civilian roadway from his off-base residence during his lunch-break—was completely non-service related. Accordingly, the facts of this case do not implicate the core justifications for the <u>Feres</u> doctrine; this lawsuit will not require judicial intrusion into "sensitive military affairs at the expense of military discipline and effectiveness." <u>United States v. Shearer</u>, 473 U.S. 52, 57 (1985). Rather, Brown's claim involves allegations that the Government breached a duty to Brown in his capacity as a member of the general public, while driving on a civilian road patrolled and maintained solely by the Town of Bedford and used only incidentally by members of the military.

<b><u>SUPPLEMENTAL FACTS</u></b>

**I.     Background Facts**

   1.   On January 4, 2002, Brown was riding his motorcycle on Hartwell Road. in Bedford, Massachusetts. <u>Affidavit of Ian J. Brown</u>, ¶¶ 1-3, 6 ("Brown Aff. ¶___") (Attached hereto as Exhibit A); <u>Affidavit of Brian Carl Peters</u>, ¶10 ("Peters Aff. ¶___") (Attached hereto as Exhibit B).

2. He was returning to his office at Hanscom Air Force Base ("Hanscom AFB") from his home on Independence Court, where he had just eaten lunch. Brown Aff. ¶6; Peters Aff. ¶10.

3. According to Brown, he lost control of his motorcycle on Hartwell Road, and was propelled into a guardrail and utility pole located on the side of the road. Brown Aff. ¶5.

II. **Hanscom Field/Hanscom Air Force Base**

4. Hanscom Field, located in the towns of Bedford, Concord, Lincoln, and Lexington, Massachusetts, is a state-owned civilian airport operated by the Massachusetts Port Authority ("Massport"). Massport Final Environmental Status and Planning Report for L.G. Hanscom Field, May 2003, pp. 1-1, 1-2 ("Massport ESPR, p._") (Attached hereto as Exhibit C).

5. In 2001, the military accounted for less than one percent of the use of Hanscom Field. Massport ESPR, p. 3-2, 3-3.

6. Hanscom AFB, which is located immediately adjacent and to the south of Hanscom Field, does not have an active runway and is "basically an office park." Deposition of Major Brian Carl Peters, p. 10 & Exh. 2 ("Peters Dep.") (Attached hereto as Exhibit D); Deposition of Adrienne M. St. John, p. 68 ("St. John Dep.") (Attached hereto as Exhibit E); Massport ESPR, p. 1-2 & Figure 10-4.

7. Independence Court, part of an off-base Air Force Trailer Park in Bedford, is located on land across Hanscom Field to the north and leased to the Air Force by Massport. Deposition of Dennis P. Cronin, pp. 15-16 ("Cronin

3

Dep.") (Attached hereto as Exhibit F); Deposition of Arthur R. Hayes, III, at Exh. 2 ("Hayes Dep.") (Attached hereto as Exhibit G); United States of America's Objections and Responses to Verizon New England, Inc.'s Request For Production of Documents, Documents # USA 0030-0034 (hereinafter, "USA##") (Attached hereto as Exhibit H); St. John Dep. Exh. 12A; Peters Dep. p. 14 & Exh. 2.

8. There is no direct vehicular access from Hanscom AFB or Hanscom Field to Independence Court. See St. John Dep. pp. 54, 68-69 & Exh. 12A; Massport ESPR, figures 6-2 & 10-4.

### III. Hartwell Road

9. Hartwell Road runs between Route 62 and South Road in Bedford. St. John Dep. pp. 34-35, 115-121 & Exh. 12A.

10. It is a two lane road which passes through a mixture of civilian residential and commercial areas, with a speed limit of 25 miles per hour. Id. at 43-51 & Exh. 12A & 13.

11. The eastern and western portions of Hartwell Road pass through residential neighborhoods and by a small farm. The middle portion provides access to two commercial facilities, a naval groundwater treatment plant, a hangar which was abandoned in approximately 2003, and the Air Force trailer park. Id. at pp. 43-51, 119-120 & Exh. 12A; Cronin Dep. at Exh. 2; Hayes Dep. at Exh. 4.

12. Civilians working and living along Hartwell Road all used the road as access to their places of employment and residences. St. John Dep. at pp. 53-54.

13. One portion of Hartwell Road, where the accident occurred, passes through land owned by the United States Navy. It is not clear whether the Navy actually owns the roadway.[1] <u>Contrast</u> Hayes Dep. p. 23 (stating that the Navy owns the roadway) <u>with</u> USA0012 (indicating that the Navy does not own the roadway) <u>and</u> Deed from Commonwealth of Massachusetts to United States of America dated April 28, 1952, Middlesex County Registry of Deeds, Book 7902 pages 29-32 (Attached hereto as Exhibit I) (excluded from original transfer to USA was "all public or private roads, ways, right of way and/or easements"). The property along this stretch of Hartwell Road is fenced off from the road. <u>See</u> St. John Dep. pp. 100-105 & Exh. 13.

14. To the extent that the Navy owns any portion of Hartwell Road, it does so with "the express condition that the Commonwealth of Massachusetts shall retain concurrent jurisdiction with the United States of America in and over said lands" Hayes Dep. pp.20-21, 26, 34, 37-38 & Exh. 2 & 3; USA 001-005, and "subject to the title and rights of the public and others of so much of the premises lying within Hartwell Road…" USA00209

---

[1] A navy representative testified that the Navy owns the land over which the road passes. Hayes Dep. p. 23. However, documents produced by the Government indicate that when the land was transferred from the Air Force, "all public or private roads, ways rights of ways and/or easements" were excluded from the property transfer. USA0012. The original deed to the USA specifically excluded "all public or private roads, ways rights of ways and/or easements". Exhibit I., p. 32

15. Hartwell Road has been maintained for at least the past eighteen years by the Town of Bedford, including paving, filling potholes, plowing, sweeping, and painting traffic lines on the road. St. John Dep. pp. 58-60, 69.

16. The Bedford Police Department patrols Hartwell Road and the residential neighborhoods located thereon. See St. John Dep. pp. 73-75; Motor Vehicle Crash Report (Attached hereto as Exhibit J).

17. The United States did not maintain or patrol any portion of Hartwell Road at any time relevant to this matter. Cronin Dep. pp. 24-27. United States of America's Objections and Responses to Verizon New England, Inc.'s First Set of Interrogatories, Response to Interrogatory #2 (hereinafter, "Response to Interrogatory #__") (Attached hereto as Exhibit K).

18. Hartwell Road does not provide direct access to Hanscom AFB. St. John Dep. pp. 68-69. Indeed, in order to get from Independence Court to Hanscom AFB, a driver such as Brown would have had to take several different roads traveling through two different towns, including Hartwell Road, South Road and Summer Street in Bedford, and McGuire Road and Hartwell *Avenue* in Lexington. Id. at pp. 40-41.

19. Contrary to the factual allegations of the Government's Memorandum in Support of it Motion to Dismiss, Brown's accident did not occur on the same road (Hartwell *Avenue*) that accesses Hanscom AFB.[2] Rather, the

---

[2] At the hearing on the Motion to Dismiss, the Government represented, in response to a question from the Court, that Hartwell Road runs through Hanscom Air Force Base. Additionally, the Government represented in its Memorandum that Independence Court and Hanscom AFB are both located on Hartwell Road. Apparently, the Government was not aware of the distinction between Hartwell Road in Bedford

Affidavit of Major Peters, submitted in support of the Government's motion, was in error in this respect.  Peters Dep. p. 24-25.

IV. **Brown's Employment & Lunch Break**

20. Lieutenant Brown's service duties entailed office work related to the United States Global Combat Support System Air Force Program. Specifically, he did budgetary work for the Global Combat Support System Program and computer hardware and software work for a web-based program called Air Force Portal.  Id. at pp. 10, 18-21.

21. Brown worked Monday through Friday from 8:00 a.m. to 4:00 p.m.  Id. at pp. 20-21

22. Although Brown worked in the same office area as his superiors, his work was not reviewed on a daily basis.  Id. at p. 23.

23. Brown's lunch "hour" was flexible, and there was no official policy governing the length of Brown's lunch break.  Response to Interrogatory #7.  A one hour lunch break was generally considered reasonable.  See Peters Dep. p. 29.

24. There was no set time for lunch and no specific rules governing where, when, or what Lieutenant Brown could eat for lunch.  Brown was not required to get permission to leave for lunch or to check or sign in and out for lunch.  Brown was permitted to leave the base for lunch, to work-out during his lunch break, to change clothing during his lunch break, and to

---

and Hartwell *Avenue* in Lexington which, in fact, is an access road for Hanscom AFB and does run through the base.  St. John Dep. p. 34; Peters Dep. pp. 24-25.  Hartwell Road in Bedford, where the accident occurred and where Brown's residence was located, is an entirely separate road and does not access, traverse or abut Hanscom AFB.  Id.

        do personal activities, as long as he could be back to work in approximately one hour.  <u>Id.</u> at pp. 29-32; Response to Interrogatory #7.

25.    There was no military control or supervision of Brown during his lunch break, except to the extent that, as an active duty member of the Air Force, he was subject to the Uniform Code of Military Justice (UCMJ).  However, the UCMJ applies to all active duty military members twenty-four hours per day, even when they are not performing military duties, when they are off duty (including nights and weekends), and even when they are on leave.[3]  Peters Dep. pp. 32-36, 42-46.

26.    Brown's accident was not related to his military work.  As his superior officer stated:

> "He certainly was not injured because his duty was to drive his motorcycle . . . Again, I believe he was just returning from lunch going -- coming back to work.  He was not specifically executing a military duty.  I mean, he didn't have a duty to be on Hartwell Road at that time."

<u>Id.</u> at pp. 45-46.[4]

---

[3] Major Peters explained that the phrases "subject to military control" and "subject to military discipline" as he used them in ¶¶ 11 & 12 of his affidavit meant subject to the Uniform Code of Military Justice.  Peters Dep. pp. 32-36.

[4] In addition, Major Peters testified that his statement in ¶13 of his affidavit that Brown received military benefits because his injuries occurred "while he was performing his military duties" could cause confusion.  He clarified this statement to mean that Brown received military benefits because he "was on active duty" at the time of the accident. Peters Dep. pp. 44-45.  Indeed, the Veterans' Benefit Act requirement for benefits that the injury occur "in line of duty," 38 U.S.C. § 101(16), is met if the injury occurs "on active duty or on authorized leave . . . ." 38 U.S.C. § 105(a).

# SUPPLEMENTAL ARGUMENT[5]

**I.    Brown's Injuries Were Not Related To His Military Service**

    A.    <u>Brown Activities Were Not Related To His Military Service</u>

The core of the government's argument in support of its motion to dismiss—that Brown's injuries were sustained incident to military service because "Brown was subject to military control at the time of his accident", "working his duty day", "subject to military discipline" and not "on leave or in a liberty status"[6]—was completely undermined by the deposition testimony of Brown's superior officer, Major Peters. Major Peters stated unequivocally that, whatever Brown's technical duty status may have been at the time of his accident, Brown was neither performing military duties nor under any direct orders or supervision at the time. To the contrary, Brown was away from the Air Force Base on a lunch break without having notified or sought permission from a superior officer. At all points relevant to his motor vehicle accident, he was under no supervision and was free to do whatever personal activities he wanted, wherever he wanted to do them, in whatever manner he wished to do them, as long as he could be back to his office within a reasonable time. While he was wearing his military uniform when his accident occurred, he was under no compulsion to do so—he could have been wearing civilian clothing.

The courts have uniformly held that this type of non-service related activity does not give rise to governmental immunity under <u>Feres</u>. <u>E.g.</u>, <u>Brooks</u>, 337 U.S. 49, 52

---

[5] Verizon refers the Court to its Opposition to United States of America's Motion to Dismiss Plaintiff's Complaint and incorporates by reference the arguments made therein.
[6] United States of America's Memorandum in Support of Motion to Dismiss, pp. 10-11.

(1949); Parker, 611 F.2d at 1010; Mills v. Tucker, 499 F. 2d 866 (9th Cir. 1974).[7]

Brown's presence on Hartwell Road was only in the remotest sense related to his military service. The most the Government can claim, now that discovery is complete, is that but for Brown's having to return to his work at Hanscom AFB, he would not have been involved in the accident. This type of tenuous causal relationship is insufficient to satisfy the Feres requirement that an injury be "incident to military service". As the Fifth Circuit stated in Parker:

> one point does emerge from these cases as a caution to those seeking to find meaning in the phrase "incident to military service." The test is not a purely causal one: one cannot merely state that but for the individual's military service, the injury would not have occurred . . . Therefore it is insufficient to aver that but for Parker's military service, he would not have been at the scene of the collision. In some cosmic sense "all human events depend upon what has already transpired." Brooks v. United States, 337 U.S. at 52, 69 S. Ct. at 920. More is needed for the activity to be "incident to military service."

611 F. 2d at 1011. In this case, the Government does not have "more". Brown's injuries were simply not a direct or proximate result of his military duties.

B.   Hartwell Road Is Independent of Hanscom Air Force Base.

The locus of Brown's accident, like his activities when the accident occurred, was completely independent of his military service. Hartwell Road is a public road maintained and patrolled by the town of Bedford. It traverses a primarily residential area and provides no direct access to Hanscom AFB or Hanscom Field. At no time has it been

---

[7] The fact that Brown was on "active duty" and subject to the Uniform Code of Military Justice is without effect in the Feres analysis. See Parker v. U.S., 611 F.2d 1007, 1014 n.10 (5th Cir.1980) ("We find the 'active duty' distinction unpersuasive"). Likewise, it is insignificant that Brown received health and disability benefits from the military. Major Peters testified that he was unaware of the basis upon which the military determined Brown was eligible for benefits and that his affidavit was misleading in this respect. Peters Dep. pp. 44-45. In any event, Brown was eligible for benefits merely because he was on active duty—regardless of whether he was injured while performing military duties. Parker, 611 F.2d at n.6 (citing 38 U.S.C. § 101(16) and 38 U.S.C. § 105(a)) ("Parker would have been eligible for veterans benefits even if he had been injured by a private car, on a private road, while on furlough").

maintained or patrolled by the Federal Government and it is neither part of, nor contiguous with Hanscom AFB. To the extent that Hartwell Road passes through military property, that property is owned by the *Navy*—a different branch of the military than Brown's employer, the Air Force and is "subject to the title and rights of the public and others of so much of the premises lying within Hartwell Road".

Accidents occurring on off-base roads which are not owned or maintained by the Government do not give rise to governmental immunity under the Feres doctrine. Specifically on point in this regard is Mills v. Tucker, 499 F. 2d 866 (9th Cir. 1974), as interpreted by The United States Court of Appeals for the First Circuit in Lauer v. U.S., 968 F. 2d 1428, 1430 (1992). In Mills, the plaintiff was killed in a motorcycle accident while returning to his Navy-owned living quarters. Like Hartwell Road, the road in Mills was open to the public and accessed civilian as well as military housing, but not the serviceman's base. Unlike Hartwell Road, however, the road in Mills was adjacent to the serviceman's naval base and maintained by the Federal Government. The First Circuit noted that it would have ruled that Mills' injuries were not sustained incident to military service because the "road was independent of the serviceman's base and he was using it as a member of the general public."

The connection between Brown's injuries and military service is even more tenuous than in Mills. Both Brown and Mills were traveling to or from their government owned residences as members of the general public under no military orders or supervision. However, Brown was injured on a road which was totally independent of Hanscom AFB and *not* maintained by the Government. To the extent that Hartwell Road may have somehow been related to "the military", it was in no way connected to *Brown's*

11

military service because it was owned by the *Navy* and physically separate from Hanscom AFB.

The only connection between Brown's claims and the military are two purely fortuitous circumstances: (1) Brown's status as an enlisted serviceman, and (2) the accident occurred on a small piece of land that may have been owned by the United States Navy. This type of happenstance is not a sufficient basis for the Government to claim immunity from Brown's lawsuit. Brooks, 337 U.S. at 52 (claim not barred where serviceman hit by US Army truck traveling on a public highway, because injuries not related to serviceman's army careers except in an attenuated sense); Parker, 611 F. 2d at 1011.

**II.     Brown's Lawsuit Does Not Involve Matters of Military Discipline.**

The Feres doctrine is predicated on "soldiers' relationships to their superiors, the effect of FTCA suits on discipline, and concern over the results if suits for negligent orders were allowed." United States v. Muniz, 374 U.S. 150, 159-62 (1963) (citing United States v. Brown, 348 U.S. 110 (1954)). In other words, the key inquiry is "'whether the suit might impair essential military discipline.'" Morey v. U.S., 903 F. 2d 880, 882 (1st Cir. 1990) (quoting United States v. Shearer, 473 U.S. 52, 57 (1985)); Lauer, 968 F. 2d at 1430 ("courts have observed the importance of having military discipline unreviewable by the Courts"); Day v. Mass. Air. Nat'l Guard, 994 F.Supp. 72, 77 (D. Mass. 1998) (aff'd 167 F.3d 678 (1st Cir. 1999)).

Military discipline is not implicated in this case because Brown's allegations against the Government involve the Government's breach of a duty owed to the general public rather than a special duty owed to Brown arising out of his membership in the

military.  Contrast Lauer, 968 F. 2d at 1429-1430 (serviceman's claim barred where he alleged that the Navy negligently failed to light a "road owned, maintained and patrolled by the Navy [which] was a main access to the base" because it would require the court second-guess the Navy's decisions with respect to roads used by servicemen to access the base); with Mills, 499 F. 2d 866 (as interpreted by the First Circuit in Lauer, 968 F. 2d at 143) (serviceman's claim not barred where case concerned the Government's duties to the general public).  The inquiry whether the *Navy* negligently maintained a dangerous condition for the general public on a public road in Bedford will not involve any second guessing of the Air Force's relationship to its personnel at Hanscom AFB.  See id.  Therefore, the Government is unjustified in relying on the Feres doctrine to escape liability in this case.  See id.

## CONCLUSION

For the reasons stated above and in Verizon's Opposition to United States of America's Motion to Dismiss Plaintiff's Complaint, Verizon respectfully requests that this Court deny the Government's Motion to Dismiss.

        Respectfully submitted,

        VERIZON NEW ENGLAND, INC.

        By its attorneys,

        __/s/  *Joshua A. Lewin*_____
        William A. Worth, BBO #544086
        Joshua A. Lewin, BBO# 658299
        PRINCE, LOBEL, GLOVSKY & TYE LLP
        585 Commercial Street
        Boston, MA 02109
        (617) 456-8000

Date:  May 19, 2005