# Exhibit H

United States of America's Objections and Responses to Verizon New England, Inc.'s Request for Production of Documents

    (Document Nos.:  USA0001-USA0005, USA00012, USA00030-USA00034 USA00030-USA00034)

    USA000209 – Oversized map, submitted under separate cover

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a/ NSTAR ELECTRIC,<br><br>Defendants. | C.A. No. 04cv11924-RGS |

**UNITED STATES OF AMERICA'S OBJECTIONS AND RESPONSES TO VERIZON NEW ENGLAND, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS**

The United States of America ("United States") hereby responds to co-defendant Verizon New England, Inc.'s Request for Production of Documents ("Document Requests"). As discovery is continuing, the United States reserves the right to amend or supplement its responses to the Document Requests if it discovers additional or corrective information.

Document Request No. 1:

All documents concerning the United States' ownership, installation, maintenance or patrol of any portion of Hartwell Road in Bedford, Massachusetts[,] on or before January 4, 2002.

Response No. 1:

The United States objects to this Document Request on the grounds that the terms "installation," "maintenance," and "patrol," as those terms appear to be used in the Document Request, are unreasonably general, vague, and nonspecific. The United States also objects to this Document Request on the grounds that it does not adequately define the time frame of the documents Verizon New England Inc. ("Verizon") is seeking to discover. Accordingly, this Document Request is unreasonably

general, vague, and nonspecific. Moreover, it calls for documents that are not relevant to the subject matter of this action and is not reasonably calculated to lead to the discover of admissible evidence. Without waiving these objections, the United States refers Verizon to the attached, non-privileged documents, which the United States has located that are within its possession, custody or control and are responsive to this request. The United States reserves the right to supplement this response in the event that it locates additional documents that are responsive to this request.

Document Request No. 2:

All documents describing or concerning the United States' right, title or interest, as of January 4, 2004, in the property depicted as parcel A in the diagram attached hereto as Exhibit 3, including the Electronic Systems Centers facility at which Lieutenant Brown worked.

Response No. 2:

The United States objects to this Document Request on the grounds that it calls for documents that are not relevant to the subject matter of this action and is not reasonably calculated to lead to the discover of admissible evidence. Without waiving these objections, the United States refers Verizon to the attached, non-privileged documents, which the United States has located that are within its possession, custody or control and are responsive to this request. The United States reserves the right to supplement this response in the event that it locates additional documents that are responsive to this request.

Document Request No. 3:

All documents concerning the United States' installation, ownership or maintenance of The [sic] Guardrail.

Response to No. 3:

The United States objects to this Document Request on the grounds that the terms "installation" and "maintenance," as those terms appear to be used in the Document Request, are unreasonably general, vague, and nonspecific. Further, the United States objects to this Document Request on the grounds that it requests a response based upon allegations contained in Plaintiff's Complaint, which have not been proven. Without waiving these objections, the United States states that it has no non-privileged documents that are responsive to this request.

Document Request No. 4:

All documents relied upon, identified or referenced in the United States of America's answers to Verizon New England, Inc.'s First Set of Interrogatories to Co-Defendant United States of America.

Response to No. 4:

The United States objects to this Document Request on the grounds that it calls for documents protected by the attorney-client privilege or work product doctrine. Without waiving these objections, the United States refers Verizon to the attached, non-privileged documents, which the United States has located that are within its possession, custody or control and are responsive to this request.

MICHAEL J. SULLIVAN,
United States Attorney

_____
DAMIAN W. WILMOT
Assistant U.S. Attorney
1 Courthouse, Suite 9200
Boston, MA  02210
(617) 748-3398

## CERTIFICATE OF SERVICE

Suffolk,  ss.                         Boston, Massachusetts
                                      April 29, 2005

I, Damian W. Wilmot, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing document upon all counsel on record.

_____
Damian W. Wilmot
Assistant U.S. Attorney

DEPARTMENT OF THE AIR FORCE
WASHINGTON 20330



OFFICE OF THE ASSISTANT SECRETARY

11 MAR 1977

MEMORANDUM FOR THE SECRETARY OF THE NAVY

SUBJECT:  Transfer of a 36.65±-Acre Portion of Hanscom Air Force Base, Massachusetts, to the Department of the Navy

    Pursuant to the request of the Commander, Naval Facilities Engineering Command (Attachment 1), and under authority contained in Title 10, United States Code, Section 2571(a), the Department of the Air Force hereby transfers to the Department of the Navy, without reimbursement, approximately 36.65 acres of land in fee, together with a 1,072 lineal foot water main thereon. The property transferred is more particularly described and delineated in the attached transfer assembly (Attachment 2).

    The requirements of Title 10, United States Code, Section 2662, as amended, were satisfied by Department of the Air Force Disposal Report No. 391, September 28, 1973 (Attachment 3).

                                                        JAMES F. BOATRIGHT
                                                        Deputy for Installations
                                                           Management
3 Attachments                           Deputy Assistant Secretary
1. Naval Facilities                     (Installations)
Engineering Command
Letter, June 18, 1973
2. Transfer Assembly
3. Department of the Air
Force Disposal Report No. 391,
September 28, 1973

USA00001

DEPARTMENT OF THE NAVY
NAVAL FACILITIES ENGINEERING COMMAND
200 STOVALL STREET
ALEXANDRIA, VA

071E

18 JUN 1973

From: Commander, Naval Facilities Engineering Command
To: Headquarters, Department of the Air Force, Office of the Chief (AF/PRERB)

Subj: U. S. Air Force excess real property at Hanscom Air Force Base; requirement by the Department of the Navy for approximately 32.85 acres of land thereof

1. Buildings comprising of the Naval Weapons Industrial Reserve Plant, Bedford, Massachusetts are located on land which includes approximately 32.85 acres at subject Air Force base. This land is utilized by the Navy under permit from the Air Force. The Raytheon Company operates the plant for research and development work on radar systems and missiles; continued performance of this work for the Government is required for the foreseeable future.

2. Inasmuch as Hanscom Air Force Base was included in the recent Department of Defense base closure announcement and is now the subject of Air Force disposal action, it is requested that the Navy requirement cited above be noted in the Air Force's forthcoming 10 U.S.C. 2662 Disposal Report and that, following Armed Services Committees clearance, the property be transferred to the Department of the Navy under the authority of 10 U.S.C. 2571(a).

Copy to:
ASD(I&L)
ASN(I&L)
CNO
CNM
NAVAIRSYSCOM
NORTHNAVFACENGCOM

USA00002

SUPPLEMENTAL DATA

In connection with this transfer the following other data is furnished:

a. The effective date of transfer of the property to the Department of the Navy will be the date of execution of the Transfer Instrument by the Secretary of the Air Force.

b. The 36.65 acres of fee owned land to be transferred to the Department of the Navy is described in the Perimeter Description, attached hereto as Exhibit "A" and is shown in red on the Final Project Map attached hereto as Exhibit "B". Plans for the Utility Systems being transferred to the Department of the Navy are attached hereto as Exhibit "C", Water and Sewer Systems, Exhibit "D", Sanitary Sewage System and Exhibit "E", Water Supply System.

c. The affected property to be transferred to the Department of the Navy is subject to the following:

(1) Any state of facts that an accurate and adquate survey of the premises may disclose.

(2) Any state of facts that a physical examination of the premises may disclose.

(3) Existing easements for public roads, highways, public utilities, railroads and pipelines.

(4) Subject to all terms, conditions and reservations included in Deed dated 25 February 1952 from the Commonwealth of Massachusetts to the United States of America. All the buildings mentioned in the Deed of Conveyance are reserved for the Commonwealth of Massachusetts use and are not transferred or to be used by the Department of the Navy.

(5) Subject to Permit DA19-016 ENG 5782 granted to the Department of the Navy for an indefinite term commencing 16 February 1953 to use and occupy a portion of the land area at the installation together with use of flying facilities in common with others. Amendment of the permit will be required after consummation of the transfer.

(6) Subject to License DACA51-3-74-245 granted to Boston Edison Company for a term of 5 years commencing 6 December 1972 to 5 December 1977 for the installation and maintenance of an electric transformer substation approximately 15 feet by 20 feet.

(7) That the Department of the Navy shall provide protection to the Air Force trailer court occupied by Air Force families in the area adjoining the land being transferred. In this connection, the Navy must consider the environmental impact that any new or expanded use of the area being transferred will have on the adjoining Air Force occupied area.

(8) That an environmental assessment will be required for any new or expanded use of the area being transferred to the Navy and the Air Force must be consulted on any or expanded use by the Navy. Air Force concurrence will be required for environmental assessments prepared by the Navy in this connection before any new or expanded use is implemented.

2

(9) After execution of the transfer document, the Department of the Navy shall grant the Department of the Air Force an easement for the purpose of access to and maintenance of the Air Force retained sewer main. The proposed easement document shall provide access to the Air Force retained 1,650 feet of VC sewer main together with 6 manholes in the area proposed for transfer to the Navy. The Air Force shall have the right to operate, maintain, repair and replace this facility. The document shall also contain a condition that the Navy shall not be permitted to connect any additional facilities to this existing Air Force owned utility from existing facilities or from facilities which may be constructed in this area by the Navy without prior approval from the Air Force and that such approval may not be granted where demand would be in excess of existing planned system capabilities as determined by the Air Force. The document shall also include a condition that the sewer service furnished by the Air Force owned sewer main to the Navy will be provided on a cost reimbursable basis under the terms and conditions of an agreement between the Navy and the Air Force to be prepared by the Commander, Hanscom Air Force Base.

d. The New York District, Corps of Engineers, upon receipt of a copy of the executed Transfer Instrument will request Headquarters, 3245th Air Base Group (AFSC) Hanscom Air Force Base, Massachusetts to transfer physical possession and accountability of the property being transferred to the Department of the Navy. DD Form 1354, Transfer and Acceptance of Military Real Property will be utilized to accomplish the transfer of the property.

e. The portion of 36.65 acres of fee owned land herein transferred to the Department of the Navy was originally acquired from the Commonwealth of Massachusetts by Deed dated 25 February 1952 by Donation and is a portion of Tract A-101.

f. The following improvements are transferred to the Department of the Navy:

| Facility No. | Description | Unit of Measurement | Cost |
|---|---|---|---|
| 12003 | Water Distribution Main 6" cast iron with 2 hydrants and service lines to facilities in area being transferred. These service lines are not shown in total area of 1,072 linear feet of main. | 1,072 Linear feet | $5,360 |

g. The land herein transferred is owned in fee by the United States of America.

3

USA00004

(h) The original title documents pertaining to the property herein transferred are located in the Office, Judge Advocate General, Washington, D.C., copies of which are required to be retained in the audit records of the District Engineer, New York District, Corps of Engineers, 26 Federal Plaza, New York, New York as part of the permanent historical records.

(i) The land included in this transfer was not reported as excess property to General Services Administration.

(j) Jurisdiction over the 36.65 acres of fee owned land was ceded to the United States of America but upon the express condition that the Commonwealth of Massachusetts shall retain concurrent jurisdiction with the United States of America in and over said lands.

USA00005

PARCEL B

A certain parcel of land with the buildings thereon, together with all appurtenances belonging thereto; situated in the Town of Bedford, County of Middlesex, and Commonwealth of Massachusetts, being more particularly bounded and described as follows:

Beginning at a point on the northerly line of land of the Commonwealth of Massachusetts, said point being on the northwesterly line of Hartwell Road at land now or formerly of McGovern;

thence crossing said Hartwell Road S 38° 19' E 28 feet, more or less, to a point on the southeasterly line of said road; thence S 9° W 240 feet, more or less, to a point, said point being northwesterly 750.00 feet from and at right angles to the center line of the NE-SW Runway;

thence southwesterly parallel to and 750.0 feet from center line of said NE-SW Runway 750 feet, more or less, to a point, said point being on the easterly face of apron extended northerly;

thence southerly by said easterly face of apron 125 feet, more or less, to a corner;

thence turning and running by said apron easterly 170 feet, more or less, Southerly 200 feet, more or less, westerly 825 feet, more or less, and Northerly 200 feet, more or less, to the northwesterly corner of said existing apron;

thence N 16° 00' W 1450 feet, more or less, to a point on the northerly boundary line of land of the Commonwealth of Massachusetts;

thence by the said northerly boundary line the following courses and distances, N 44° 50' W 450 feet, more or less, S 70° 25' E 1091.9 feet, more or less, S 25° 35' E 183.49 feet, more or less, and S 33° 19' E 100 feet, more or less, to the point of beginning.

Excluding from above description, all public or private roads, ways, right of way and/or easements now existing within the said boundaries inclusive but not limited to South Road, Wood Street, Lincoln Road, abandoned Old Bedford Road, and relocated Old Bedford Road. However, conveying herewith to the Government, any and all rights of the Commonwealth therein.

Containing 42.0 acres, more or less.

Lea. No. DACA51-5-78-84

Lease

between

Massachusetts Port Authority

and

The United States of America

1. This lease, made and entered into this 8th day of December 1977, by and between the Massachusetts Port Authority, a body politic and corporate, created by Chapter 465 of the Acts of 1956 and as authorized and empowered therein, hereinafter referred to as the Lessor and the United States of America, hereinafter referred to as the Government.

Witnesseth:

2. The Lessor leases to the Government subject to certain conditions and agreements contained herein, the following described premises:

    a. PARCEL A (Containing Base Trailer Court and Antenna Field).
A parcel of land in the Town of Bedford, Middlesex County, Commonwealth of Massachusetts described as follows: Beginning at a point which is the most Northerly point of this parcel, and is on the Northerly boundary line of Tract No. 102 described in Lease No. DA19-016-ENG-1515 dated 25 February 1952, thence South 16° East by Government land 1450 feet more or less crossing Hartwell Road to a point; thence Southerly 200 feet more or less to a point; thence Westerly 991 feet more or less to a point; thence North 410 feet more or less to a point; thence West 1050 feet more or less to a point; thence North 400 feet more or less to a point; thence East 650 feet more or less to a point; thence N-44°-50' E crossing Hartwell Road 1314.5 feet, more or less to the point of beginning containing 37.5 acres more or less.

    b. PARCEL B (Containing Guest Trailers, Antenna Field and Picnic Grounds).
A parcel of land in the Town of Bedford, Middlesex County, Commonwealth of Massachusetts, described as follows: Beginning at a point which is the most Northeasterly point of this parcel, and which point is on the Northerly boundary line of Tract No. 102 described in Lease No. DA19-016-ENG-1515 dated 25 February 1952, thence South 5°-00' E 880 feet more or less to a point; thence S-53°-30' W 197 feet more or less to a point on the Southwesterly side of Forest Road, thence Northwesterly along the Southwesterly side of Forest Road 800 feet more or less to a point; thence Southwesterly along the East edge of an unnamed road leading to Runway 11-29, 250 feet more or less to a point; thence Northeasterly crossing the forementioned unnamed road 300 feet more or less to a point; thence Northeasterly crossing Forest Road 1050 feet more or less to a point; thence Southeasterly 600 feet more or less to the point of beginning containing 18.7 acres more or less.

    c. PARCEL C (Contains SAMSO Facility).
A parcel of land located in the Town of Concord, Middlesex County, Commonwealth of Massachusetts, described as follows: Beginning at a point at the Southwesterly corner of this parcel said point being on the Northeasterly side of Virginia Road 1025 feet more or less Northerly of the Concord Lincoln Town Line, and on Westerly boundary line of Tract No. 102 described in Lease No. DA19-016-ENG-1515 dated 25 February 1952, thence Northerly along the Northeasterly edge of Virginia

1

USA00030

Road 265 feet more or less to a point; thence Northeasterly 438 feet more or less to a point; thence Southeasterly 263 feet more or less to a point on the boundary of land leased from the Commonwealth of Massachusetts, by the Massachusetts Institute of Technology (now believed to be Draper Laboratories Inc.); thence Southwesterly 436 feet more or less along the boundary of said leased land, to the point of beginning containing 2.65 acres of land more or less.

MESONET Site #1 - MESONET Site #3

MESONET Site #1 is located approximately 1560' East and 390' South from the center line extended from the East end of R/W 11-29.

MESONET Site #3 is located 580' South of the center line of R/W 11-29 approximately 830' East of the 11 end of R/W 11-29.

3. To have and to hold the said premises with their appurtenances for the term beginning 8 December 1977 through 30 September 1978, provided that, unless and until the Government shall give notice of termination in accordance with provision 13 hereof, this lease shall remain in force thereafter from year to year without further notice, until 30 September 2027.

4. The Government shall pay the lessor rent as follows:

ONE DOLLAR ($1.00) the receipt and sufficiency of which is hereby acknowledged.

5. During the existence of this lease or any extension thereof, the Government may make alterations, attach fixtures, and erect additions, structures or signs in or upon any of the property referred to in paragraph 2 hereof, which property is sometimes hereinafter referred to as "the premises". All fixtures, additions, structures, and signs so placed upon or attached to the premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government, provided, that upon termination of this lease, if the Secretary of Transportation, U.S. Department of Transportation, or his successor, (in supervision of Civil Aviation), hereinafter referred to as the Secretary of Transportation, determines that the removal of any fixtures, additions, structures, or signs is necessary to serve the needs of Civil aviation, the Government shall, as soon as possible following such determination, remove such fixtures, additions, structures, or sign and restore the property on which they were located to a condition equivalent to that existing immediately prior to Government use under this lease. The Government shall not otherwise be obligated to restore the premises upon termination of this lease, except that the Government shall repair that damage caused by the Government during

USA00031

the term of this lease, which the Secretary of Transportation (or his successor in supervision of Civil Aviation) may determine to be harmful or injurious to the operation of the Airport as a civil airport, provided, that the Government shall not be obligated to perform any restoration necessitated by ordinary wear and tear or by damage by the elements or by circumstances over which the Government has no control. In lieu of performance of any obligation hereunder to remove any fixtures, additions, structures, or signs or otherwise restore the premises, the Government shall have the right to make a cash settlement by supplemental agreement with the Lessor. Upon termination of this lease, the Government shall furnish to the Lessor copies of all record drawings of facilities and improvements constructed by the Government on the premises during the term of this lease, which have not been or are not to be removed by the Government.

6. This lease, or any renewal or extension thereof, may be terminated by the Government at any time by giving thirty (30) days notice in writing to the Massport, 99 High Street, Boston, Massachusetts 02110, and no rental shall accrue after the effective date of termination. However, the Government may, by mutual consent, discontinue its use of part or parts of the premises occupied under this lease or any supplement thereto, and no rental or maintenance or operation costs shall accrue or be paid covering the space vacated after the effective date of such discontinuance; provided, that if any physical restoration is required, the said restoration shall be performed by the Government within a reasonable time after the termination of said lease.

7. The Government shall not assign this lease in any event.

8. Any notice under the terms of this lease shall be in writing signed by a duly authorized representative of the party giving such notice, and if given by the Government shall be addressed to the Lessor at Massport, 99 High Street, Boston, Massachusetts 02110; and if given by the Lessor shall be addressed to District Engineer, New York District Corps of Engineers, 26 Federal Plaza, New York, N.Y. 10007.

9. The Lessor warrants that no person or selling agency has been employed or retained to solicit or secure this lease upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained

3

by the Lessor for the purpose of securing business. For breach or violation of this warranty the Government shall have the right to annul this lease without liability or in its discretion to deduct from the contract price or consideration the full amount of such commission, percentage, brokerage or contingent fee.

10. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this lease or any benefit that may arise therefrom, but this provision shall not be constructed to extend to this lease if made with a corporation for its general benefit.

11. This lease is not affected by Public Law 155, 82nd Congress, Chapter 434, 1st Session, Title VI, Section 604.

12. The Lessor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment of the agreed rental, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Lessor involving transactions related to this lease.

13. It is understood and agreed that the granting of the leasehold interest in the demised premises as described and defined in provision 2 of these presents is contingent upon delivery of a deed conveying to Massachusetts Port Authority fee title to parcels D, E, and F as shown on plan attached hereto and incorporated herein. In the event that title to the said parcels D, E, and F shall revert to the Government (as hereinabove defined) for reasons other than the declaration of a National Emergency by the President, this lease agreement will thereupon terminate and expire, and all rights and obligations of the parties thereunder shall cease; provided however Massachusetts Port Authority shall instead of the leasehold interest terminated grant to Government a right of entry for the use and occupation of the parcels A and B and C hereinabove described

4

USA00033

for a period of one year from the termination of said lease. Subsequent rights of entry upon these parcels are to be negotiated and agreed upon between Massachusetts Port Authority and the Government.

IN WITNESS WHEREOF, the Commonwealth of Massachusetts has caused these presents to be signed in its name and behalf by the State Airport Management Board and the Commissioner of Airport Management and the United States of America has caused these presents to be signed as of the day and year first above written.

IN THE PRESENCE OF:                          MASSACHUSETTS PORT AUTHORITY

_____                    BY: _____
WITNESS                                           Executive Director


                                             THE UNITED STATES OF AMERICA

                                             BY: _____
                                                 Chief Real Estate
                                                 New York District
                                                 Corps of Engineers

                                             Department of the Army
                                             New York District, Corps of Engineers
                                             26 Federal Plaza
                                             New York, N.Y. 10007

5

USA00034