UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

IAN J. BROWN, JAMES BROWN,
and BARBARA BROWN

v.

UNITED STATES OF AMERICA,
VERIZON NEW ENGLAND, INC., and
BOSTON EDISON COMPANY
d/b/a NSTAR ELECTRIC

MEMORANDUM AND ORDER ON
THE UNITED STATES' MOTION TO DISMISS

January 18, 2006

STEARNS, D.J.

First Lieutenant Ian Brown and his parents, James and Barbara Brown, brought this negligence action against the United States of America, Verizon New England, Inc., and the Boston Edison Company (d/b/a NSTAR Electric). The claims arise out of a single-vehicle motorcycle accident in Bedford, Massachusetts, on January 4, 2002. The accident left Lt. Brown a paraplegic. The United States moves to dismiss the claims against it invoking the Feres doctrine.[1] The doctrine bars claims by military personnel against the United States for injuries incurred incident to military service.

---

[1] See Feres v. United States, 340 U.S. 135 (1950).

BACKGROUND

Brown is a United States Air Force Officer. At the time of the accident, he was assigned to the Global Combat Support System at Hanscom Air Force Base (Hanscom) in Bedford. On the day of the accident, Brown was in uniform and on active duty. As was his custom, Brown left his office at Hanscom at mid-day to have lunch at his residence in a nearby trailer park. Brown began the return trip immediately after lunch.[2] While on Hartwell Road, a public way in Bedford, he lost control of his motorcycle. Brown collided with a guardrail and was propelled into an adjacent telephone pole. His injuries were life-threatening. Bedford police responded to the accident and arranged for Brown to be evacuated by Boston Medflight to Beth Israel Deaconess Hospital.

Brown presented a claim to the Department of the Navy and Department of the Air Force. The Department of the Navy (acting on behalf of all military departments) denied the claim on May 17, 2004. The plaintiffs filed this action on September 2, 2004. The Complaint alleges that the United States and the defendant utility companies are liable for Brown's injuries. The United States is alleged to have improperly sited the guardrail. The utility companies are alleged to have negligently installed the utility pole against which Brown was thrown outside rather than inside the guardrail.

On February 11, 2005, the court heard argument on the United States' motion to dismiss. Defendant Verizon requested an opportunity to conduct jurisdictional discovery,

---

[2] Brown's supervisor (Brian Peters) testified that military personnel under his command were permitted to take lunch either on or off-base at their discretion. Peters Dep., at 29-30.

focused on the Hartwell Road locus.[3]  The request was allowed.  On July 25, 2005, the court heard further argument on the motion to dismiss.

## DISCUSSION

The standard the court must apply in deciding a motion to dismiss is well-established.  The court must accept the allegations of the complaint as true, viewing the alleged facts in the light most favorable to the plaintiff.  Hughes v. Rowe, 449 U.S. 5, 10 (1980) (per curiam).  When deciding a Rule 12(b)(1) motion, the court may also consider extrinsic materials to determine its jurisdiction.  Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 37-38 (1st Cir. 2000).  The court may dismiss the complaint if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Harper v. Cserr, 544 F.2d 1121, 1122 (1st Cir. 1976).

The United States argues that the court lacks jurisdiction under Feres because Brown was on active duty at the time of the accident and therefore subject to military discipline and control.  Plaintiffs (and the co-defendants) argue that Brown's accident was not "incident to military service" because it occurred off-base on a public way while Brown was returning to work after conducting personal business.  The parties differ over the significance of the facts that civilian police responded to the accident and that Brown was treated at a civilian hospital.  Plaintiffs cite Brooks v. United States, 337 U.S. 49 (1949),

---

[3]Discovery revealed that the portion of Hartwell Road where Brown's accident occurred is open to unrestricted civilian traffic. The road is plowed, sanded, swept, and maintained by the Town of Bedford. St. Johns Dep., at 34-35, 58-59 and 69; Cronin Dep., at 24-26. The government considers the portion of Hartwell Road where the accident occurred to be "off-base," as it does the trailer park where Brown lives. Id.

3

a pre-Feres case, as authority permitting the litigation against the United States to proceed. In Brooks, the Supreme Court approved a suit brought by two servicemen brothers who were injured while on furlough in a collision with a government owned vehicle. In Feres, the Court distinguished Brooks because "Brooks's relationship [with the government] while on leave was not analogous to that of a soldier injured while performing duties under orders." Feres, 340 U.S. at 146.

"As sovereign, the United States may not be sued for damages without its consent." Day v. Massachusetts Air National Guard, 167 F.3d 678, 681 (1st Cir. 1999). In Feres, the Supreme Court identified the rationale for barring claims arising from injuries incurred incident to military service as the desirability of establishing a uniform compensation system for military death and disability claims. Feres, 340 U.S. at 146. A second concern identified by the Court was the fear that tort suits brought by servicemen against their superior officers "would interfere unduly in military affairs and specifically on the need for exclusivity in military discipline and grievance matters." Day, 167 F.3d at 682, citing Chappell v. Wallace, 462 U.S. 296, 301-302 (1983). While workers' compensation considerations "may no longer [be] persuasive," the "core concerns about interference in military discipline remain highly plausible." Day, 167 F.3d at 683.[4]

The Supreme Court has not fleshed out the meaning of the phrase "incident to military service," but lower courts have pointed to factors such as

---

[4]The contradictions and inconsistencies in the application of the facts and rationales of Feres that have accumulated in the case law are noted by Judge Calabresi in Taber v. Maine, 67 F.3d 1029 (2d Cir. 1995).

> whether an injury was incident to service by asking whether it occurred on a military facility, whether it arose out of military activities or at least military life, whether the alleged perpetrators were superiors or at least acting in cooperation with the military, and – often stressed as particularly important, whether the injured party was himself in some fashion on military service at the time of the incident. No single element in the equation, the Supreme Court has said, is decisive. . . . It is worth stressing that the claims thus preserved involve only a narrow class of cases, namely, ones where the plaintiff's injury is "incident to military service" but defendant's misconduct is so patently unconnected to his or her official duties as to fall outside the scope of employment.

Day, 167 F.3d at 682, 685, citing inter alia United States v. Shearer, 473 U.S. 52, 57 (1985).

When the accident occurred, Brown was returning from an off-base residence after an unrestricted lunch break. He was traveling on a personal vehicle on a public road. Claims for injuries incurred off-base by military personnel while commuting to and from their duty stations are often held outside the Feres bar, consistent with the rule that commuting generally falls outside the scope of civilian employment. See, e.g., Green v. Hall, 8 F.3d 695 (9th Cir. 1993) (estate of Army reservist killed in an automobile accident was not immune from military passenger's suit under Feres as officers were free to leave the base for breakfast); Pierce v. United States, 813 F.2d 349 (11th Cir. 1987) (allowing a suit by an Army staff sergeant to proceed against the United States for injuries the sergeant incurred while commuting to his base when his motorcycle was struck by a government vehicle driven by a Navy recruiter); Mills v. Tucker, 499 F.2d 866 (9th Cir. 1974) (permitting a suit by the family of a serviceman killed in an accident while returning to base on a roadway maintained by the government).

Insofar as Feres is motivated by concerns for maintaining military discipline (the most frequently cited of its rationales), it is difficult to perceive any adverse impact that Brown's suit might have on military order. Brown is not suing his superior officers or blaming them for his accident. His claim is that the government negligently sited the guardrail, a decision that was presumably made by civilian contractors working for the government. Brown's claim does not implicate any activity "incident to" his military service other than commuting to his duty station. Moreover, because of the severity of his injuries, he will never return to active duty. Thus, a concern for maintaining military discipline is simply inapplicable in Brown's case. See Taber, 67 F.3d at 1041.[5]

In its reply brief, the government invites the court to consider the "soundness of the military decision to place the pole or not to remove the pole from where it stands." Government's Reply Brief, at 9. The allusion is presumably to the discretionary function exception of the Federal Tort Claims Act. There is no subject matter jurisdiction by operation of 28 U.S.C. § 2680(a) over claims based upon the exercise (or failure to perform) a discretionary function. See Crete v. City of Lowell, 418 F.3d 54, 64 n.14 (1st Cir. 2005). An exercise of discretion depends on conduct involving an element of judgment or choice (as opposed to conduct directed by statute, regulation or policy); it must also entail a judgment based on considerations of public policy. Magee v. United States, 121 F.3d 1, 5 (1st Cir. 1997). The siting of utility poles and guardrails is no stranger to discretionary function litigation. See e.g., Patrazza v. Commonwealth, 398

---

[5]If the payment of military benefits to Brown is an issue, it can be addressed in the context of a off-set of any award of damages.

Mass. 464, 469-470 & n.3 (1986) (finding the siting of a highway guardrail to be a discretionary function under the Massachusetts Tort Claims Act, G.L. c. 258, § 10(b)). Compare Greenwood v. Town of Easton, 444 Mass. 467, 473 (2005).  As the argument was raised only in passing and without notice sufficient to prompt a response by plaintiff and the co-defendants, the issue of the possible application of the exception will not be further addressed.

ORDER

For the foregoing reasons, the United States' Motion to Dismiss is DENIED.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE