# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.
SUPERIOR COURT
CIVIL ACTION
NO. 99-1852-H

KATCHER AFARIAN and MARYANN AFARIAN,
Administrators of the Estate of
PETER AFARIAN

v.

MASSACHUSETTS ELECTRIC COMPANY,
NEW ENGLAND TELEPHONE & TELEGRAPH,
BELL ATLANTIC CORPORATION, and
MARKET BASKET, INC.[1]

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT, NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Katcher Afarian and Maryann Afarian, as administrator's of the estate of Peter Afarian ("Afarians"), filed the underlying wrongful death action against defendants Massachusetts Electric Company ("MEC"), New England Telephone & Telegraph, Bell Atlantic Corporation (collectively "Telephone Company"), and Market Basket, Inc.("Market Basket"), alleging negligence arising out of a drunk-driving accident. The Telephone Company now moves for summary judgment pursuant to Mass. R. Civ. P. 56 on the grounds that: 1) the accident was not reasonably foreseeable and the pole was not the proximate cause of the accident; 2) the statute of repose bars the Afarians' claims; and 3) Peter Afarian's negligence and/or criminal conduct bars Afarians' claims. For the following reasons, the Telephone

---

[1] Market Basket, Inc. has also brought a third party action against Peter Daniels and Scott Munroe.

Company's motion for summary judgment is <u>ALLOWED</u>.

## BACKGROUND

The following are the undisputed facts. On July 28, 1996, Peter Afarian, nineteen years old, was a passenger in a car driven by his friend Jason Veilleux ("Veilleux"), who was underage and intoxicated. Shortly after midnight, Veilleux fell asleep at the wheel while traveling east on Lowell Street, a/k/a Route 133 ("Route 133"), in Andover, Massachusetts and crashed into a utility pole. Veilleux and the two passengers seated in the back seat, Scott Munroe and Ryan Moynihan, survived. Peter Afarian, the front seat passenger, died from his injuries.

At the time of the accident, Veilleux awoke in time to see a utility pole five to ten feet in front of him. He swerved to the left but still hit the pole. It was a clear night and the roads were dry. Veilleux was traveling at a speed between 51-60 miles per hour when he hit the utility pole. The posted speed limit was 40 miles per hour. After failing a field sobriety test, Veilleux was arrested and brought to the Andover Police Station. At the police station he was given a blood alcohol test, which indicated that his blood alcohol level was .16, twice the legal drinking limit. Veilleux pled guilty to charges of driving while intoxicated and motor vehicle homicide. He served a year in the house of correction, three months suspended with one year of probation.

The utility pole ("Pole 608")[2] at issue is jointly owned by the Telephone Company and MEC according to a Joint Ownership Agreement ("Agreement"). Pursuant to this Agreement,

---

[2] The Telephone Company identifies the utility pole at issue as "Pole 146." MEC identifies the pole as "Pole 608." In order to maintain consistency, this Court will refer to the utility pole as "Pole 608."

MEC is responsible for the care and maintenance of the pole, and the Telephone Company is responsible for the poles attachments. In 1969, Andover granted the Telephone Company and MEC a license to install Pole 608. Pole 608 was placed on the south side of Route 133, on the outside of a curve in the vicinity of the entrance to Raytheon, just west of the Route 93 interchange with Route 133. Pole 608 was located between the sidewalk and the curb, approximately six to eight inches away from the roadway. The pole had a street light on it and was in a well-lit area. At the time of the installation of Pole 608, representatives from the Telephone Company and MEC made a site visit to determine the location where the pole was to be set and to provide the necessary engineering. Pole 608 was installed in accordance with New England Electric System ("NEES") Standard CS 2032 and has complied with all National Safety Electric Code standards involving design, installation, construction, inspection, and maintenance of Pole 608. Pole 608 was last inspected and approved in 1987 pursuant to NEES Standard 2015.

As of 1996, the average number of vehicles traveling Route 133 was between 14,000 to 22,000, per day. Between January 1, 1991 and November 27, 1996, there have been ninety-six separate motor vehicle accidents in the vicinity of Pole 608. None of these accidents have involved Pole 608. Prior to the accident on July 28, 1996, the Telephone Company and MEC has never had to relocate or change the position of Pole 608. After the accident the damaged pole was replaced with another pole in the same location.

## DISCUSSION

### I. Standard of Review

Summary judgment will be granted when there are no genuine issues as to any material facts and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of triable issue, and that the summary judgment record entitles it to judgment in its favor as a matter of law. Pederson v. Times, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motor Corp., 410 Mass. 706, 716 (1991).

### II. Negligence

The Afarians contend that the Telephone Company had a duty to exercise reasonable care in the placement of Pole 608. Further, they assert that the Telephone Company had a duty of care even to individuals not driving the vehicle in the ordinary course of travel. The Afarians assert that in determining the Telephone Company's duty, this Court must look to the totality of the circumstances regarding the placement of the pole, including: 1) the pole's location of six inches from the road; 2) the location of the pole on a heavily traveled road with a high incidence of motor vehicle accidents; and 3) the fact that the Telephone Company could have chosen a less

dangerous place for the pole and the failure to do so enhanced the risk of injury as to make that risk legally foreseeable. This Court in reviewing the totality of the circumstances, concludes that the Telephone Company did not have a duty to Peter Afarian because Veilleux was not using the road in the ordinary course of travel, nor was it foreseeable that Pole 608 would be hit. Ultimately, the Telephone Company was not negligent in the placement of Pole 608.

For the Afarians to succeed on their claim they must prove that: the Telephone Company owed Peter Afarian a duty of care, the Telephone Company breached that duty of care; the Telephone Company's breach was the causation of Peter Afarian's death; and damages resulted from his death. See Glidden v. Maglio, 430 Mass. 694, 696 (2000). The existence of a duty of care is a question of law and Massachusetts courts have concluded that when defining duty of care the court must also determine foreseeability. See Whitaker v. Saraceno, 418 Mass. 196, 199 (1994); Vaughn v. Eastern Edison Co., 48 Mass. App. Ct. 225, 226 (1999).

This Court will address the issue of the Telephone Company's duty and the foreseeability of one hitting Pole 608 by reference to The Restatement 2d of Torts, § 368 which provides:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who (a) are traveling on the highway, or (b) *foreseeably deviate from it in the ordinary course of travel.*"

(emphasis added). Massachusetts has not specifically applied § 368 of the Restatement in the context of a utility company's duty to an intoxicated individual who drives off the road and strikes a utility pole, but numerous other jurisdictions have applied § 368 of the Restatement to similar situations.

5

This Court first addresses whether a utility company has a duty to an intoxicated driver who drives off the road and strikes a pole. In applying § 368, many jurisdictions have held, "for a duty to third persons to be imposed upon those who erect and maintain such utility poles, there must be a reasonable anticipation of such deviation from the roadway as a normal incident of travel." Boylan v. Martindale, 103 Ill. App. 3d 335, 346 (1982). Courts have concluded that driving recklessly, or while intoxicated is not a "normal incident of travel." See Miller v. State of Louisiana, DOTD, 679 So.2d 134, 137 (La. App.Ct. 1996) (holding that an intoxicated driver does not use the roadway "in the ordinary course of travel."); City of McAllen v. De La Garza, 898 S.W.2d 809, 812 (Tex. 1995) (holding that an intoxicated driver who fell asleep at the wheel did not deviate from the road "in the ordinary course of travel . . . ."); Collier v. Redbones Tavern & Restaurant, Inc., 601 F.Supp. 927, 930-31 (D.N.H. 1985) (holding that erratic and uncontrolled deviation by drunken and speeding driver is not a normal incident of travel). The Telephone Company contends that based upon these holdings it did not have a duty to Peter Afarian since Veilleux was intoxicated and not using the road in the ordinary course of travel.

However, this is not the end of the analysis. Many courts have also concluded that in determining whether it is foreseeable that a motorist will run off the road and strike a specific utility pole, the better analysis is to consider the driver's conduct as a factor among many other factors. See Coates v. Southern Maryland Electric Cooperative, Inc., 354 Md. 499, 523 (1999). The court in Maryland, concluded that it is foreseeable that, for a variety of reasons, including, illness, speeding, intoxication, and drowsiness, a motorist will drive off of the road and "[t]hese may all be 'normal incidents of travel,' even if they do not all constitute a proper use of the highway or traveling 'with reasonable care.'" Id. However, even if these acts are foreseeable, it

6

"does not mean that a collision with any particular pole is foreseeable, and . . . [l]iability must be based on the negligent placement or maintenance of the pole that was struck, not in the placement or maintenance of other poles that were not struck." Id. The factors a court must consider include: condition and topography of the road; the proximity of the pole to the traveled portion of the road; and the experience and accident history involving the pole. See id. This Court will consider each of these factors in determining if it was foreseeable that Veilleux would strike Pole 608.

The first factor for this Court to consider is the condition and topography of the specific section of Route 133. Route 133 curves to the left and Pole 608 is located on the outside of the curve. When a driver, such as Veilleux, negotiates the curve incorrectly the vehicle could veer off the road. However, the fact that a pole is located on a curve, is not enough for the Telephone Company to incur liability. When determining negligence regarding the placement of a pole on a curve, jurisdictions have not ended their analysis with that factor alone, but also conclude that the curve coupled with other factors such as no reflectors on posts, numerous accidents on the specific curve, and a road that pushes vehicles to the left, allows for possible liability. See Kubala v. Dudlow, 17 Ill. App. 2d 463, 468 (1958) (concluding that there was possible liability when the posts had no reflectors or markers and many travelers had been injured on that specific curve); Marino v. NYNEX, 1995 WL 809985, at *1 (Mass. Super. 1995) (holding the design of the road pushes vehicles to the left). Therefore, the fact that Pole 608 is placed on a curve is not enough for the Telephone Company to foresee that Pole 608 would be struck.

The second factor for this Court to consider, along with the conditions of the road, is the proximity of the pole to the traveled portion of the road. Pole 608 is six-to-eight inches from the

7

roadway. Courts have also held that this factor alone is not enough for the utility company to be liable. See Boylan 103 Ill. App. 3d at 345 ("the mere placement of utility poles 6 to 12 inches from the roadway does not, in and of itself, create an unreasonable risk to others traveling with reasonable care."). The Afarians rely upon the holding of the Supreme Judicial Court when it concluded that "[p]lacing an obstacle in the path of one rightly on a public way may be found to be negligence." Riley v. New England Tel. & Tel. Co., 354 Mass. 8, 12 (1968). This reliance is misplaced because in Riley, the utility company had first been asked by Riley to relocate the pole, and then later ordered by the board of alderman to remove the pole, and yet, at the time of the accident, the utility company had failed to remove the pole. Id. at 9-10. The case before this Court is distinguishable. First, the Telephone Company has a license from Andover and there has been no evidence to suggest that Andover has ever ordered the Telephone Company to relocate Pole 608. Second, the Telephone Company has followed Andover's regulations and National Electric Safety Code regulations. While "violation of a regulation is some evidence of negligence," there is no evidence of any violation here.[3] Fox v. The Little People's School, Inc., 54 Mass. App. Ct. 578, 579 (2002). Thus, in contrast, see Riley, Pole 608 is legally placed.

Finally, and most importantly, this Court must consider the history of Pole 608 in its location on Route 133. This factor is the most important because, "[i]f a pole has existed at a relatively unchanged site for any significant length of time without serious problem, there may be little reason to anticipate a future collision, for it suggests that motorists are able to navigate

---

[3] This Court does recognize that even if the Telephone Company followed all of its regulations it does not alone immunize it against a claim of negligence regarding the placement of the pole. See Marino, 1995 WL 809985, at *2.

8

that part of the road without incident." Coates, 354 Md. at 523. The facts in the case before this Court provide that more than five million vehicles per year drive on Route 133 and, between 1991 and 1996, there have been ninety-six vehicle accidents, none of which have involved Pole 608. Those numbers are significant because for such a heavily traveled road, Pole 608 has never been hit, thus it was not foreseeable that on the night of July 28, 1996, Veilleux would hit Pole 608.

The Afarians rely upon a Superior Court decision where the court held that the utility company was negligent for the placement of a pole on Route 1 in Saugus. See Marino, 1995 WL 809985, at *3. However, the undisputed facts before this Court are clearly distinguishable. In Marino, the court concluded that the road was higher on the right side which pushed the vehicles off to the left. Id. at *1. Furthermore, the court concluded that NYNEX had notice of the dangerous location of the pole because there had been "a half-dozen or more accidents involving automobiles which had collided with Pole 156." Id.

Conversely, Pole 608 has been in place since 1969, and prior to the July 28, 1996, accident it had not been involved in one collision. The Afarians assert that there have been many accidents on Route 133 and it was therefore foreseeable that Pole 608 would be involved in a collision. This is not persuasive because this Court is only concerned with how many of those accidents involved Pole 608. Since Pole 608 had been in place prior to the accident for twenty-seven years without incident, it is not foreseeable that Veilleux would have veered off the road striking the pole. This Court concludes that the Telephone Company is not liable because "a collision which occurred between vehicle and pole was deemed not to be a legally foreseeable event . . .[and instead should be reviewed as] an occasional random accident, for which the utility

9

company should not be held accountable." Marino, 1995 WL 809985, at *3.

After reviewing the totality of the circumstances, this Court concludes that it was not foreseeable that Veilleux would strike pole 608. Thus, the Telephone Company is not liable for negligence.[4]

### III. Statute of Repose

The Telephone Company asserts that Afarians' claims against it should be dismissed because they are barred by G.L. c. 260, § 2B. This statute provides that:

> "[a]ctions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: 1) the opening of the improvement to use; or 2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

The Afarians contend that the Telephone Company is not entitled to protection by this statute because the Telephone Company is not the proper class of actors and the placement of Pole 608 was not an improvement to the property as proscribed by the statute. This Court disagrees.

Whether the Telephone Company's activities fall within G.L. c. 260, § 2B is a question of law. See McDonough v. Marr Scaffolding Co., 412 Mass. 636, 639 (1992). The appellate courts have categorized certain actors as protected under this statute including, architects, engineers, and contractors. See Dighton v. Federal Pacific Elec. Co., 399 Mass. 687, 693 (1987). However,

---

[4] Since this Court concludes that the Telephone Company and MEC are not negligent in the placement of Pole 608, this Court will not address the Telephone Company's separate argument that it was not responsible for the maintenance of Pole 608.

10

these same courts have also clearly stated that "the statute does not name a class of protected actors, but instead extends protection to 'those who commit any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property' . . . . Thus, application of the statute is necessarily dependent on the nature of the party's activities." Snow v. Harnischfeger, 12 F.3d 1154, 1159 (1st Cir. 1993), citing Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 693, 697 (1987). Furthermore, an actor may have a dual role whereby, some of his activities are covered by the statute and others not. See Cournoyer v. Massachusetts Bay Transportation Authority, 744 F.2d 208, 210-11 (1st Cir. 1984).[5]

In 1969, engineers from the Telephone Company and MEC visited the location site of Pole 608 and provided the necessary engineering for the installation of the pole. In installing Pole 608, both the Telephone Company and MEC followed the standards set forth by the National Safety Electric Code and NEES Standard CS 2032. The act of engineering and installation of Pole 608 is a protected act covered by G.L. c. 260, § 2B because engineers are a recognized protected class, and furthermore, the acts of engineering and installing Pole 608 qualify as acts of planning and construction which are protected by the statute.

The Afarians also claim that the placement of Pole 608 on Route 133 does not qualify as an improvement to real property. The term "improvements" as applied in G.L. c. 260, § 2B, has been defined as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Parent v. Stone & Webster

---

[5] In its capacity as a joint-owner of Pole 608, the Telephone Company is not protected by G.L. c. 260, § 2B.

11

Engineering Corp., 408 Mass. 108, 111 (1990); Finn v. McNeil, 23 Mass. App. Ct. 367, 373 (1987) (defining improvements as "betterments of a long lasting nature which add to the capital value of the property."). This Court concludes that the Telephone Company's installment of Pole 608 is an improvement as defined by the statute because it was a permanent fixture designed to enhance the value of the surrounding neighborhood by providing utility services.

The Telephone Company is protected by G.L. c. 260, § 2B because its acts are protected and the installment of Pole 608 was an improvement to real property. Pole 608 was installed in 1969, therefore, any claims subsequent to 1975 are untimely. Thus, the Afarians' wrongful death claim against the Telephone Company, filed in 1999, is time-barred.

## IV. Criminal Conduct and Contributory Negligence

Since this Court has concluded that the Telephone Company is not negligent in the location or maintenance of Pole 608, and that the Telephone Company's installment of Pole 608 is protected by G.L. c. 260, § 2B, it is not necessary to address the Telephone Company's final argument. Nonetheless, this Court will address the Telephone Company's final argument for the purposes of clarification. The Telephone Company contends that Afarians' claims should be barred pursuant to G.L. c. 231, § 85, because of Peter Afarian's own criminal conduct[6] and because Peter Afarian was contributorily negligent by agreeing to ride with an intoxicated driver. This Court will first address Peter Afarian's criminal conduct.

---

[6] The Telephone Company asserts that Peter Afarian violated G.L. c. 138, § 34A by being underage and contributing to the purchase of alcohol. The Telephone Company also asserts that Peter Afarian violated G.L. c. 138, § 34C by possessing and transporting alcohol while being underage.

12

General Laws chapter 231, section 85 provides that:

"[t]he violation of a criminal statute, ordinance or regulation by a plaintiff which contributed to said injury, shall be considered as evidence of negligence of that plaintiff, but the violation of said statute, ordinance or regulation shall not, as a matter of law and for that reason alone, serve to bar a plaintiff from recovery."

The Telephone Company asserts that the language "as a matter of law and for that reason alone" inserted in G.L. c. 231, § 85 has been interpreted to mean "where reasons in addition to the criminality of the conduct exist, such as public policy considerations." Flanagan v. Baker, 35 Mass. App. Ct. 444, 448 (1993). This Court concludes that there is no public policy consideration, because even though Peter Afarian violated underage drinking statutes, those statutes have been enacted to protect the general public, including Peter Afarian, by preventing dangerous situations. See id. at 449. Moreover, if this Court were to bar the claims based on this statute it would, "offend a countervailing public policy to the extent it could also protect from possible liability those persons from [whom the alcohol] was obtained." Id. Therefore, if the claims were still viable, G.L. c. 231, § 85, would not bar the Afarians' claims.

The Telephone Company also argues that Peter Afarian was contributorily negligent because he voluntarily accepted a ride with an intoxicated driver. This argument does not need to be addressed because this is not a determination that can be made at summary judgment. In any event the issue of Peter Afarian's comparative negligence, if any, is rendered moot vis-a-vis the Telephone Company because summary judgment shall be entered in the Telephone Company's favor.

13

**ORDER**

For the foregoing reasons, it is hereby **ORDERED** that defendant's motion for summary judgment is **ALLOWED**.

*S. Jane Haggerty*
S. Jane Haggerty
Justice of the Superior Court

Dated: January 3, 2003

14