UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN and BARBARA BROWN, <br>       Plaintiffs <br><br> v. <br><br> UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC. and BOSTON EDISON COMPANY d/b/a NSTAR Electric, <br><br>       Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**CONCISE STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF DEFENDANT BOSTON EDISON MOTION FOR SUMMARY JUDGMENT**

The Defendant Boston Edison Company ("Boston Edison") hereby submits the within Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1. Plaintiff Ian Brown ("Brown") has brought this action alleging that on January 4, 2002, he lost control of his motorcycle as he rode along Hartwell Road, Bedford, Massachusetts and then struck a guardrail and then a utility pole. (Complaint, ¶¶ 8,9, Ex. A) The utility pole was jointly owned by Boston Edison Company ("Boston Edison") and Verizon New

England, Inc. ("Verizon"). (Roche Affidavit ¶8, Ex. B; Defendant Boston Edison Company's Answers to Plaintiffs' First Set of Interrogatories, Response No. 2, Ex. C)[1]

2. Brown alleges that he suffered serious personal injuries as a result of the accident. (Complaint, ¶¶ 10, Ex. A)

3. In the summer of 2001, Brown ("Brown") transferred to Hanscom Air Force Base ("Hanscom"), Bedford, Massachusetts; (Brown Transcript, p. 19, Ex. D[2])

4. In January 2002, Brown was a Second Lieutenant stationed at Hanscom in Bedford, Massachusetts; (Brown Transcript, p. 19, Ex. D);

5. In January 2002, Brown resided at Independence Court, Bedford, Massachusetts; (Brown Transcript, p. 22, Ex. D)

6. Independence Court is located off Hartwell Road, Bedford, Massachusetts a short distance from Hanscom; (Brown Transcript, pp. 155-157, Ex. D)

7. The accident which is the subject matter of this lawsuit occurred on January 4, 2002; (Brown Transcript, p. 152, Ex. D)

8. On the morning of January 4, 2002, Brown drove his truck to work at Hanscom; (Brown Transcript, p. 156, Ex. D)

9. On January 4, 2002, Brown returned home for lunch and decided to ride his motorcycle back to work after lunch; (Brown Transcript, p. 159, Ex. D)

10. Brown was operating a new Kawasaki Ninja ZX-12R sport motorcycle at the time of the accident; (Brown Transcript, p. 188, Ex. D)

---

[1] For the purposes of this summary judgment only, Boston Edison will assume that the following facts are undisputed. If the motion is denied, Boston Edison reserves the right to contest any of the facts alleged by plaintiffs.

[2] In light of the fact that Ian Brown's deposition transcript is 585 pages in length, Boston Edison has only provided the Court with excerpts from his transcript. Boston Edison is willing to provide the Court with a complete copy of his transcript if so requested.

11. Brown testified that he lost control of his motorcycle when he drove over a sewer manhole located in the travel lane of Hartwell Road; (Brown Transcript, p. 167, Ex. D)

12. Brown testified that the sewer manhole was located toward the center line of Hartwell Road; (Brown Transcript, p. 323, Ex. D)

13. Brown testified that he observed the sewer manhole and attempted to slow down; (Brown Transcript, p. 167, Ex. D)

14. Brown testified that after hitting the sewer manhole, his motorcycle began to topple to the right; (Brown Transcript, p. 177, Ex. D)

15. Brown testified that as the motorcycle began to fall to the right, he jumped off the motorcycle toward the guardrail; (Brown Transcript, p. 179-180, Ex. D)

16. Brown testified that he recalled turning his back to the guardrail while in the air; (Brown Transcript, p. 179, Ex. D)

17. Brown testified that after losing control of the motorcycle, he chose the guardrail as an "aim point" to aim his body; (Brown Transcript, p. 334, Ex. D)

18. Brown testified that he made a choice not to go down with the motorcycle and slide along the roadway; (Brown Transcript, p. 334, Ex. D)

19. Brown testified that the first part of his body to hit the guardrail was his back; (Brown Transcript, p. 180, Ex. D)

20. The sewer manhole cover that Brown alleges caused him to lose control of his motorcycle is located approximately 102 feet from utility pole 16/37 and 13 inches from the end of the pavement of Hartwell Road. (Burnstine Transcript, pp. 165-166, 248, Ex. E)

21. Brown testified that his head hit the utility pole 16/37; (Brown Transcript, p. 185, Ex. D)

22. Brown had passed over this section of Hartwell Road on many occasions prior to January 4, 2002; (Brown Transcript, p. 193, Ex. D)

23. Brown testified that he usually attempted to avoid the sewer manhole cover when driving either his motorcycle or his truck along this section of Hartwell Road prior to January 4, 2002; (Brown Transcript, p. 194-195, Ex. D)

24. Brown testified that he had observed the area of the sewer manhole and had made a habit of avoiding it prior to January 4, 2002; (Brown Transcript, p. 319, Ex. D)

25. Brown testified that, prior to January 4, 2002, he was concerned that riding over the sewer manhole would cause an accident; (Brown Transcript, p. 320, Ex. D)

26. Brown testified that it was his understanding that the sewer manhole on Hartwell Road caused him to lose control of his motorcycle; (Brown Transcript, p. 390, Ex. D)

27. Brown testified that he would have hit the guardrail whether or not he jumped off his motorcycle; (Brown Transcript, p. 572, Ex. D)

28. Brown testified that he had observed utility pole 16/37 prior to January 4, 2002; (Brown Transcript, p. 320, Ex. D)

29. Brown testified that he did not see the utility pole 16/37 when he picked the guardrail as his "aim point"; (Brown Transcript, p. 336, Ex. D)

30. The utility pole at issue is jointly owned by Boston Edison and Verizon pursuant to a Joint Ownership Agreement between them. Pursuant to this Agreement, Boston Edison is responsible for the maintenance of the pole. Each of the attaching parties is responsible for the care and maintenance of their own attachments. (Roche Affidavit, ¶ 8, Ex. B)

31. Utility pole 16/37 is one of many poles located along Hartwell Road, Bedford, Massachusetts. (Certified Copy of Town of Bedford's records, Ex. J)

32. In 1916, the Town of Bedford, Massachusetts granted Boston Edison's predecessor and the telephone company's predecessor the right to install a pole line along Hartwell Road. (Certified Copy of Town of Bedford's records, Ex. J)

33. In accordance with the Grant of Location issued by the Town of Bedford, Boston Edison installed pole 16/37 in 1916 and replaced pole 16/37 in 1929, 1954 and 1964 in the ordinary course of its business. (Dion Transcript, p.33-35, Ex. F; Roche Affidavit, ¶¶ 3,4, Ex. B; Certified Copy of Town of Bedford's records, Ex. J)

34. Boston Edison has no information and no records of utility pole 16/37 ever having been involved in an accident or having been damaged. (Roche Affidavit, ¶ 6, Ex. B; Boston Edison' Answers to Plaintiff's Interrogatories, No. 20, Ex. C)

35. Utility pole 16/37 which is the subject matter of this lawsuit has been located at the spot where plaintiff's accident occurred since at least 1964. (Roche Affidavit, ¶ 4, Ex. B; Boston Edison' Responses to Plaintiff's Request for Admissions, No. 3, Ex. G)

36. Boston Edison does not know who installed the guardrail where plaintiff's accident occurred or when it was installed. (Boston Edison' Answers to Plaintiff's Interrogatories, No. 4, Ex. C)

37. There are over 409,000 overhead electric poles that are either jointly or solely owned in the electric service territory. (Roche Affidavit, ¶ 7, Ex. B)

38. At the time of his accident on January 4, 2002, Brown's parents lived in New Jersey and provided Brown with no financial support. (James Brown Transcript, p. 83, Ex. H; Barbara Brown Transcript, p. 53, Ex. I)

39. Almost all of Brown's medical care and medical supplies have been paid for by the United States of America because of his status as a military veteran. (Brown Transcript, p 251, Ex. D);

40. To the extent Brown has incurred expenses beyond that paid by the United States, Brown has met those expenses on his own. (Brown Transcript, p. 252-255, Ex. D)

41. Browns' parents have not paid for any of Brown's medical treatment since the accident and Brown is not financially dependent on them for his medical care. (James Brown Transcript, p.106-107, 109, Ex. H; Barbara Brown Transcript, p. 61-63, Ex. I; Brown Transcript, pp. 252-255, Ex. D).

42. Upon termination of inpatient treatment after the accident, Brown moved home with his parents. Brown receives a monthly tax-free stipend from the United States government of approximately $5,000. Brown's parents' monthly mortgage payment is $1,000 per month. While the Browns do not charge Mr. Brown rent, Mr. Brown pays the gas and electric bills and purchases the food for the household. (James Brown Transcript, p.105-106, Ex. H; Barbara Brown Transcript, p. 61-63, 114, Ex. I; Brown Transcript, p. 264, Ex. D).

43. With the exception of occasional gifts from his parents, Brown purchases all of his own clothing and supplies and pays for his continuing education courses. (Brown Transcript, p. 264, Ex. D).

        Respectfully submitted,
        BOSTON EDISON COMPANY,
        By its attorneys,


        ___/s/ Marissa A. Goldberg_____
        Michael K. Callahan
        BBO #546660
        Marissa A. Goldberg
        BBO #654506
        NSTAR Electric & Gas Corporation
        800 Boylston Street, 17th Floor
        Boston, MA 02199
        617-424-2102
        617-424-2114