# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11924-RGS

IAN J. BROWN, JAMES BROWN and )
BARBARA BROWN )
    Plaintiffs )
)
v. )
)
UNITED STATES OF AMERICA, )
VERIZON NEW ENGLAND, INC. and )
BOSTON EDISON COMPANY d/b/a )
NSTAR ELECTRIC )
    Defendants )

## DEFENDANT, VERIZON NEW ENGLAND, INC.'S RESPONSE TO PLAINTIFF IAN J. BROWN'S REQUESTS FOR ADMISSION

### Request No. 1

The pole, at the time of the occurrence, was located on property of the USA.

### Response No. 1

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

### Request No. 2

The guardrail, at the time of the occurrence, was located on property of the USA.

### Response No. 2

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 3**

The pole and/or predecessor pole(s) had been located where the pole was at the time of the occurrence, since at least 1964.

**Response No. 3**

Admit.

**Request No. 4**

The pole and/or predecessor pole(s) had been located where the pole was at the time of the occurrence, since at least 1997.

**Response No. 4**

Admit.

**Request No. 5**

The guardrail had been located where it was at the time of the occurrence since at least 1986.

**Response No. 5**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 6**

The guardrail had been located where it was at the time of the occurrence since at least 1997.

**Response No. 6**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 7**

At the time of the occurrence, the pole was located between the guardrail and Hartwell Road.

**Response No. 7**

Admit.

**Request No. 8**

At the time of the occurrence, the guardrail was located within six inches of the pole.

**Response No. 8**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 9**

An employee or employees of Verizon had inspected the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

**Response No. 9**

Deny.

**Request No. 10**

An employee or employees of NSTAR had inspected the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

**Response No. 10**

Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 11**

An employee or employees of Verizon had inspected Verizon's equipment or a portion of that equipment on the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

**Response No. 11**

Deny.

3

**Request No. 12**

Verizon was aware, prior to the occurrence, that the pole or predecessor pole(s) was located between the guardrail and Hartwell Road.

**Response No. 12**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement, because Verizon is unaware of the date on which the guardrail was installed.

**Request No. 13**

NSTAR was aware, prior to the occurrence, that the pole or predecessor pole(s) was located between the guardrail and Hartwell Road.

**Response No. 13**

Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 14**

Verizon was aware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

**Response No. 14**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement, because Verizon is unaware of the date on which the guardrail was installed.

**Request No. 15**

NSTAR was aware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

**Response No. 15**

Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 16**

Verizon was unaware, prior to the occurrence, that the pole or any predecessor pole(s) was located between the guardrail and Hartwell Road.

4

### Response No. 16

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement, because Verizon is unaware of the date on which the guardrail was installed.

### Request No. 17

NSTAR was unaware, prior to the occurrence, that the pole or any predecessor pole(s) was located between the guardrail and Hartwell Road.

### Response No. 17

Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

### Request No. 18

Verizon was unaware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

### Response No. 18

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement, because Verizon is unaware of the date on which the guardrail was installed.

### Request No. 19

NSTAR was unaware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

### Response No. 19

Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

### Request No. 20

The decision to place the guardrail at the location it was in at the time of the occurrence was made by the USA.

5

**Response No. 20**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 21**

The decision to place the pole where it was located at the time of the occurrence was made by Verizon.

**Response No. 21**

Admit that the decision to place the pole where it was located at the time of the occurrence was made in part by Verizon.

**Request No. 22**

The decision to place the pole where it was located at the time of the occurrence was made by Verizon and NSTAR jointly.

**Response No. 22**

Admit.

**Request No. 23**

The decision to place the pole where it was located at the time of the occurrence was made by NSTAR.

**Response No. 23**

Admit that the decision to place the pole where it was located at the time of the occurrence was made in part by NSTAR.

**Request No. 24**

Between at least 1997 and the time of the occurrence, Verizon had the right or authority to remove or cause to be removed, the pole or any predecessor pole from the location it was in at the time of the occurrence.

**Response No. 24**

Deny.

6

**Request No. 25**

Between at least 1997 and the time of the occurrence, Verizon and NSTAR, jointly, had the right or authority to remove or cause to be removed, the pole or any predecessor pole from the location it was in at the time of the occurrence.

**Response No. 25**

Admit.

**Request No. 26**

Between at least 1997 and the time of the occurrence, NSTAR had the right or authority to remove or cause to be removed, the pole or any predecessor pole(s) from the location it was in at the time of the occurrence.

**Response No. 26**

Deny.

**Request No. 27**

Between at least 1997 and the time of the occurrence, the USA had the right or authority to order or otherwise cause the owner(s) of the pole or any predecessor pole(s) to remove it from the USA's property.

**Response No. 27**

Deny.

**Request No. 28**

Between at least 1997 and the time of the occurrence, the USA had the right or authority to order or otherwise cause the pole or any predecessor pole(s) to be moved to a location on its property other than where it was located at the time of the occurrence.

**Response No. 28**

Verizon denies that the USA had the right or authority to order or otherwise cause the pole or any predecessor pole to be moved. After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the assumption in the Request that the predecessor pole was located on property of the USA.

7

**Request No. 29**

Verizon recognized the hazard prior to the occurrence.

**Response No. 29**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny that it was aware of the relative locations of the pole and guardrail, because Verizon is unaware of the date on which the guardrail was installed.

**Request No. 30**

NSTAR recognized the hazard prior to the occurrence.

**Response No. 30**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 31**

Verizon did not recognize the hazard prior to the occurrence

**Response No. 31**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny that it was aware of the relative locations of the pole and guardrail, because Verizon is unaware of the date on which the guardrail was installed.

**Request No. 32**

NSTAR did not recognize the hazard prior to the occurrence.

**Response No. 32**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 33**

Prior to the occurrence, NSTAR did not believe it had any legal obligation to the motoring public to fix or otherwise rectify the hazard by moving the pole.

**Response No. 33**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR.

**Request No. 34**

Prior to the occurrence, Verizon did not believe it had any legal obligation to the motoring public to fix or otherwise rectify the hazard by moving the pole.

**Response No. 34**

Verizon denies that the location of the pole relative to the guardrail was a "hazard." Verizon further denies the assumption in the Request that Verizon was aware of the existence of the guardrail and its relative location to the pole. Subject to those specific denials, Verizon admits that, based on the information known to the company, Verizon did not believe it had any obligation to the motoring public to move the pole.

**Request No. 35**

Prior to the occurrence, NSTAR took no action to fix or otherwise rectify the hazard.

**Response No. 35**

Verizon denies that the location of the pole in relation to the guardrail was a "hazard." Verizon objects to the Request because it seeks information within the exclusive possession of NSTAR. Verizon admits that it is unaware of any actions taken by NSTAR to move the pole or the guardrail.

**Request No. 36**

Prior to the occurrence, Verizon took no action to fix or otherwise rectify the hazard.

**Response No. 36**

Verizon denies that the location of the pole relative to the guardrail was a "hazard." Verizon further denies the assumption in the Request that Verizon was aware

9

of the existence of the guardrail and its relative location to the pole. Verizon admits that it took no action to change the location of the pole or the guardrail.

**Request No. 37**

NSTAR was not granted permission by the USA, prior to the occurrence, to place the pole or any predecessor pole(s) in the location the pole was in at the time of the occurrence.

**Response No. 37**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 38**

Verizon was not granted permission by the USA, prior to the occurrence, to place the pole or any predecessor pole(s) in the location the pole was in at the time of the occurrence.

**Response No. 38**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 39**

No owner of the section of land upon which the pole was located at the time of the occurrence, at any time prior to the occurrence, gave NSTAR permission to place the pole or any predecessor pole(s) at that location.

**Response No. 39**

After reasonable inquiry, the information known and readily obtainable by Verizon is insufficient to permit Verizon to admit or deny the statement.

**Request No. 40**

No owner of the section of land upon which the pole was located at the time of the occurrence, at any time prior to the occurrence, gave Verizon permission to place the pole or any predecessor pole(s) at that location.

**Response No. 40**

Deny.

Respectfully submitted,

VERIZON NEW ENGLAND, INC.

By its attorneys,

_____
William A. Worth, BBO #544086
Joshua A. Lewin, BBO# 658299
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge St.
Suite 2200
Boston, MA 02114
(617) 456-8000

Date: April 24, 2006

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by April 24, 2006.

_____
Joshua A. Lewin

11