# EXHIBIT L

# Joint Ownership Agreement

Boston Edison Company

and

New England Telephone

00026

JOINT OWNERSHIP AGREEMENT                9/20/78

THIS AGREEMENT, made this 28th day of October 1979, between Boston Edison Company, a Massachusetts Corporation, hereinafter called ELECTRIC COMPANY, and NEW ENGLAND TELEPHONE and TELEGRAPH COMPANY, a New York corporation, hereinafter called TELEPHONE COMPANY.

WITNESSETH:

WHEREAS, the Electric Company and Telephone Company desire to provide for the joint ownership of poles when and where joint ownership will be of mutual advantage and will be consistent in meeting their service requirements.

NOW, THEREFORE, in consideration of the mutual convenants herein contained the parties hereto do, for themselves, their successors and assigns, mutually convenant and agree as follows:

Scope of Agreement

Article 1: This Agreement shall be in effect in each city and town of the Commonwealth of Massachusetts, in which both the Telephone Company and the Electric Company now or may in the future have the right to operate.

Permission for Joint Use

Article 2: Each company permits the joint ownership of any of its poles now standing or hereafter erected by it within the said cities and towns under the terms and conditions hereinafter specified, except that each company reserves the right to exclude from joint ownership poles which, in the owner's judgment, are necessary for its own sole ownership.

Work Responsibility

Article 3: The placing of new jointly owned poles, guys, and anchors, and the replacing, relocating or removing of existing jointly owned poles, guys, and anchors shall be divided equitably between the companies. In Telephone Company custody areas, the Electric Company will place at Telephone Company request and agreement, jointly owned poles that are 50 feet or longer in length; Telephone Company shall continue to be the maintaining party for record and shall do all necessary petitioning and acquiring of rights. The work performed by each company shall be subject to mutual agreement, in writing, as set forth in attached Intercompany Operating Procedures (IOP's).

Codes

Article 4: All construction in connection with the joint ownership of poles, guys, and anchors covered by this Agreement shall conform to the latest edition of the National Electrical Safety Code and all applicable Massachusetts codes or to the requirements of either party, whichever may be the more stringent.

| | |
|---|---|
| Usual Joint Pole | Article 5: The usual joint pole under this Agreement is a 35 foot pole, as described by the American National Standards Institute Specification - 05.1. It is not the intent, however, to preclude the use of poles of greater or lesser length or strength than the usual pole to meet the minimum requirements of the parties hereto and the specifications mentioned in Article 4. |
| Municipal Space | Article 6: Upon each of the poles covered by this Agreement, space shall, if so desired by municipal authorities or deemed desirable by the parties hereto, be reserved for the municipal fire alarm and police signal wires or cables, owned by the municipality and used exclusively for municipal purposes. Such space is indicated in the attached I.O.P.'s. |
| Attachments | Article 7: Each company shall place and maintain its attachments in accordance with the requirements of Article 4. Where temporary construction by one company on joint ownership poles does not conform thereto, and is unsafe or restrictive to the other company in its operations, that company will cooperate with the other company in correcting the unsafe conditions or restrictions. Each company shall do the work of placing, maintaining, transferring and relocating its own attachments, even though the other company may be required by the terms of this Agreement to pay placing, transferring, and relocating costs. |
| Electrical Interference | Article 8: All supply and communication circuits and their connected apparatus shall be constructed, operated and maintained to avoid or minimize electrical interference by one company with the other. Where such interference is experienced, those measures shall be applied which will most conveniently and economically avoid or minimize the interference. |
| Details of Joint Ownership | Article 9: The administrative details of joint ownership covered by this Agreement shall be outlined in Intercompany Operating Procedures (IOP's) attached as Appendix A and made a part hereof. The companies hereto shall prepare and revise from time to time necessary IOP's as may be mutually agreed upon and approved in writing by the designated representatives of each company. |
| Payment of Taxes | Article 10: In case any tax, fee and governmental charge is levied or assessed upon the jointly owned property covered by this Agreement, the same shall be divided in accordance with each company's ownership interest; provided, however, that any tax, fee and governmental charge |

00028

| | |
|---|---|
| Provisions of Title Ownership | Article 24: Title to poles shall be determined as follows:<br><br>(a) In respect of poles now in place and purchased or sold the undivided interest as tenant in common of the seller shall pass to the purchaser as of the date of payment of the bill covering said poles.<br><br>(b) In respect of new joint ownership poles the undivided interest as tenant in common shall pass from the party hereto erecting the pole to the other party hereto upon the completion of the work of setting the pole in place.<br><br>(c) In respect of existing standing joint ownership poles (not covered under written agreement), poles title to which has previously been acquired from parties other than the parties hereto it is hereby agreed that each party hereto has had and now holds an undivided interest as tenant in common therein.<br><br>(d) In respect of poles heretofore jointly owned which one party hereto desires to abandon through relinquishment of interest in said poles title thereto shall pass to the other party as of the date of payment of the bill for said poles.<br><br>(e) In respect of poles heretofore jointly owned which both parties hereto at the same time desire to abandon, the party having custody is hereby authorized and directed by the other party hereto to sell or dispose of the same and in pursuance thereof to pass the title of both parties hereto to any purchaser or otherwise.<br><br>(f) In conformity with the preceding paragraph each party hereto grants to the other party, its successors and assigns, its undivided interest as tenant in common in any and every pole, title to which is to be transferred from one party hereto to the other pursuant to the terms hereof effective as of the time and upon the conditions herein set forth. |
| Sole Agreements | Article 25: This document and the Intercompany Operating Procedures constitute the entire Agreement between the parties respecting joint ownership of poles, guys, and anchors. |

IN WITNESS WHEREOF each company has caused this Agreement to be executed in its name and its corporate seal to be affixed thereto by its officers duly authorized thereunto the day and year first above written.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY    BOSTON EDISON COMPANY

BY _____    BY _____

GENERAL MANAGER-OUTSIDE PLANT

BOSTON EDISON COMPANY
APPROVED AS TO FORM

INTERCOMPANY OPERATING PROCEDURE

BOSTON EDISON COMPANY

AND

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

INTRODUCTION

A Joint Use Committee, composed of representatives of each company hereto, shall be established to prepare and revise from time to time necessary Intercompany Operating Procedures for the guidance of those responsible for the day-to-day operating requirements of the Joint Ownership Agreement dated October 28, 1979.

Intercompany Operating Procedures (I.O.P.'s) when approved and executed shall become part of this Agreement.

The Intercompany Operating Procedures listed below are herewith identified and approved for use by the Boston Edison Company, and the New England Telephone and Telegraph Company.

| I.O.P. | Committee Approval Date | Subject |
|---|---|---|
| A | 1-10-79 | Assigned Space |
| B | 11-29-78 | Establishing Joint Ownership and Use of Existing Poles and Anchors |
| C | 11-29-78 | Establishing Joint Ownership and Use of New Poles and Anchors |
| D | 9-20-78 | Guys and Anchors |
| E | 11-29-78 | Rights of Way |
| F | 11-29-78 | Jointly Owned Poles and Anchors |
| G | 11-29-78 | Joint Tree Trimming |
| H | 1-10-79 | Division of Costs |
| I | 1-10-79 | Use of Flat Rate Billing Schedule for Pole and Guy Work |
| J | 1-10-79 | Procedure When Character of Circuits is Changed |

Page 1 of 2

00037

| I.O.P. | Committee Approval Date | Subject |
|---|---|---|
| K | 6- 6-79 | Monthly Net Billing |
| L | 1-10-79 | Attachment to Solely Owned Poles |
| M | 11-29-78 | Termination of Joint Ownership of a Pole |
| N | 3-21-79 | Placing of Telephone Cable on Street Side of Poles |

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

By _____W. J. P._____
 GENERAL MANAGER-OUTSIDE PLANT


BOSTON EDISON COMPANY

By _____M. R. Gavin_____

BOSTON EDISON COMPANY
APPROVED AS TO FORM

_____

Committee Approval
11-29-78

INTERCOMPANY OPERATING PROCEDURE

BOSTON EDISON COMPANY

AND

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

CUSTODY AND MAINTENANCE OF

JOINTLY OWNED POLES AND ANCHORS

1. Custodianship of jointly owned poles and anchors shall be as indicated in the attached list of municipalities showing the maintenance areas assigned to each party.

2. The custodian shall maintain jointly owned poles in its custody in safe and serviceable condition in accordance with the specifications mentioned in Article 4, of Agreement, and shall replace, reinforce or repair such of said poles as become defective. It is not the intention of this agreement to impose on the non-custodian any obligation as between the parties to inspect said poles, report on their condition or perform any other function of maintenance. While a failure by the non-custodian to notify the custodian as to the condition of any poles is not to be construed as a failure to perform its obligation hereunder, it is of course desirable for the non-custodian as to the condition to any poles not in a safe and serviceable condition if and when it learns of such condition.

3. All work done by either party on any jointly owned pole or by either party on its attachments thereon shall be performed in a manner which will not interfere with the service, wires, fixtures and appurtenances of the other party hereto.

4. Each party shall maintain all of its attachments on jointly owned poles in accordance with the specifications mentioned in Article 4, of Agreement, and shall keep such attachments in safe condition and in thorough repair.

5. Any existing joint ownership construction hereunder which does not conform to said specifications shall be brought into conformity therewith as hereafter agreed by the parties hereto; provided, however, that the owner of such construction shall hold the other party harmless from any loss, damage, or expense resulting from or due to the nonconformance of said construction with specifications mentioned in Article 4, of Agreement.

6. Whenever it is necessary to replace or relocate a jointly owned pole, the custodian shall, before making the change, give ten (10) days notice thereof in writing (except in case of urgency, when verbal notice may be given and subsequently confirmed in writing) to the other party, specifying in such notice the time of such proposed replacement or relocation, and such other party shall transfer its attachments to the new or relocated pole promptly.

I.O.I.-F
Committee Approval
11-29-78

7. <u>When replacing a jointly owned pole, the new pole shall be set in the same hole which the replaced pole occupied unless special conditions make it ncessary to set the new pole in a different location in which case new rights and permits will be required.</u>

| N.E. Telephone Co. Maintenance | Boston Edison Co. Maintenance |
|---|---|
| Arlington | Acton |
| Boston Proper | Ashland |
| Brookline | Bedford |
| Burlington | Brighton |
| Canton | Dedham |
| Carlisle | Hyde Park |
| Charlestown | Maynard |
| Chelsea | Medfield |
| Dorchester | Millis |
| Dover | Natick |
| East Boston | Newton North (Exc. Comm. Ave.) |
| Framingham | Somerville |
| Holliston | Stoneham |
| Hopkinton | Sudbury |
| Lexington | Walpole |
| Lincoln | Waltham |
| Medway | Wayland |
| Milton | Weston |
| Needham | West Roxbury |
| Newton South (Inc. Comm. Ave.) | Westwood |
| Norfolk | Winchester |
| North Bellingham | Woburn |
| Roxbury | |
| Sharon | |
| Sherborn | |
| South Boston | |
| Watertown | |

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

By _____
DIVISION STAFF MANAGER-O.P.

BOSTON EDISON COMPANY

By _____M. R. Gavin_____

00049

Page 2 of 2

NYNEX
900 Elm Street, Suite #1611, Manchester, NH 03101-2029
Tel 603 645 2126
Mobile 603 493 2323



February 24, 1995

Mr. Frank Hale
Boston Edison Company
200 Calvary Street
Waltham Ma. 02154

Frank;

Attached is a set of signed originals of our Intercompany Operating Procedures. I am sorry for the delay. I will be sending a copy to our operating Districts immediately.

Respectfully

Albert Mackey
Staff director

NYNEX Recycles

00063

## APPENDIX A

## INTERCOMPANY OPERATING PROCEDURES

Intercompany Operating Procedures listed below are approved for use by the Boston Edison Company and NYNEX. All other previously approved Intercompany Operating Procedures are canceled effective 2/1/95.

| IOP | DATE |
|---|---|
| A. JOINT USE | 2/1/95 |
| B. REMOVAL OF JOINTLY OWNED POLES | 2/1/95 |
| C. CUSTODY AND MAINTENANCE | ~~2/1/95~~ Rev. 8/1/96 |
| D. POLE RELOCATIONS | 2/1/95 |
| E. POLE ACCIDENT AND OTHER THIRD PARTY BILLING | 2/1/95 |
| F. PRIVATE PROPERTY POLES | 2/1/95 |
| G. POLE INSPECTION, TREATMENT AND REINFORCEMENT | 2/1/95 |
| H. GUYING AND ANCHORS | 2/1/95 |
| I. RIGHT OF WAY | 2/1/95 |
| J. TREE TRIMMING AND CLEARING | 2/1/95 |
| K. THIRD PARTY ATTACHMENTS | 2/1/95 |
| L. FLAT RATE BILLING | 2/1/95 |
| M. PREPARATION OF FORMS 1045 | 2/1/95 |
| N. MONTHLY BILLING PROCEDURE | 2/1/95 |
| O. PURCHASING BOSTON EDISON UNDERGROUND PLANS | 6/1/87 |
| P. PREPARATION OF JOINT OWNERSHIP- EXCHANGE OF NOTICE | 2/1/95 |
| Q. MAXIMUM UG RISERS ATTACHED TO A JOINT OWNED POLE | 2/1/95 |
| R. BONDING | 2/1/95 |
| S. JOINT CONSTRUCTION NOTICE | 2/1/95 |

_[signature]_
N.E.T. d/b/a NYNEX

_[signature]_
BOSTON EDISON COMPANY

IOP C
Effective date: August 1, 1996

## INTERCOMPANY OPERATING PROCEDURES
## C. CUSTODY AND MAINTENANCE

1. Custodianship of jointly owned poles and anchors shall be as indicated in the attached list of municipalities showing the maintenance areas assigned to each Company.

2. The custodian shall maintain jointly owned poles in its custody in safe and serviceable condition in accordance with appropriate codes, and shall replace, reinforce or repair these poles as become defective or are of insufficient size or strength for proposed immediate additional attachments. Upon written notice, it shall be the duty of the custodian to promptly replace any pole considered to be unsafe by the other Company.

3. Each Company shall maintain all of its attachments on jointly owned poles in accordance with appropriate codes and shall keep such attachments in safe condition and in thorough repair.

4. All work done by either Company on any jointly owned pole or by either Company on its attachments thereon shall be performed in a manner which will not interfere with the service, wires, fixtures, and appurtenances of the other Company.

5. The custodian is responsible for obtaining property damage case information required by both Companies and forwarding this information to the other Company.

6. When replacing a jointly owned pole carrying underground risers, the new pole shall be set in the same hole which the replaced pole occupied. When replacing a jointly owned pole carrying pole mounted equipment the new pole shall be set in the same hole the replaced pole occupied or set along side close enough to lash to the replaced pole and not interfere thereby with the pole mounted equipment. Either case will apply unless mutually agreed that special conditions make it necessary to set it in a different location. If a pole is set improperly making transfers for the other Company a construction hardship then the custodian may be required to reset the pole in an acceptable manner.

7. In Telephone custody areas, the Electric Company will place at telephone request and agreement, jointly owned poles that are 50 foot or longer in length, Telephone shall continue to be the custodian for record and shall do all necessary petitioning and acquiring of rights.

1

RECEIVED

OCT 24 1996

N.R.

00072

IOP C
Effective date: August 1, 1996

8. Either company may place or replace joint owned poles in either maintenance area where those poles are needed only at that time by that one company, i.e., upgrading a pole line, changing out a pole to add a transformer, etc. Such poles will be billed by the constructing company in the usual manner and, as soon as they are satisfactorily set, will be the responsibility of that area's custodian. The Exchange of Notice (605A) will be sent to the other co-owner as usual but adding the fact that the non-custodian proposes to set the poles. The custodian, who has the final decision, may choose to set the poles if the custodian can do so in the time frame required. The custodian will respond via the returned Exchange of Notice (605A) with the decision regarding who will set the poles. Poles for which there is a mutual need: i.e., new housing development, new service pole on private property, road widening job, etc., will remain the responsibility of the custodian. The intent of this IOP is to allow each co-owner to accomplish its work without being held up by the co-owner's work schedule, and for each co-owner to place the same number of poles as it would have under the previous method of strictly defined and mutually exclusive maintenance areas.

_____
N.E.T. & T d/b/a NYNEX

_____
BOSTON EDISON COMPANY

IOP C
Effective date: August 1, 1996

## *JOINT POLE CUSTODY*

| **NYNEX MAINTENANCE** | **BOSTON EDISON MAINTENANCE** |
|---|---|
| ARLINGTON | ACTON |
| BOSTON PROPER | ASHLAND |
| BROOKLINE | BEDFORD |
| BURLINGTON | BRIGHTON |
| CANTON | DEDHAM |
| CARLISLE | HYDE PARK |
| CHARLESTOWN | MAYNARD |
| CHELSEA | MEDFIELD |
| DORCHESTER | MILLIS |
| DOVER | NATICK |
| EAST BOSTON | NEWTON NORTH (EXC COMM AVE) |
| FRAMINGHAM | SOMERVILLE |
| HOLLISTON | STONEHAM |
| HOPKINTON | SUDBURY |
| LEXINGTON | WALPOLE |
| LINCOLN | WALTHAM |
| MEDWAY | WAYLAND |
| MILTON | WESTON |
| NEEDHAM | WEST ROXBURY |
| NEWTON SOUTH (INC. COMM AVE) | WESTWOOD |
| NORFOLK | WINCHESTER |
| NORTH BELLINGHAM | WOBURN |
| ROXBURY | |
| SHARON | |
| SHERBORN | |
| SOUTH BOSTON | |
| WATERTOWN | |

3

00074

2/1/95

INTERCOMPANY OPERATING PROCEDURES    IOP G

G. POLE INSPECTION, TREATMENT, AND REINFORCEMENT

1. The custodian shall be responsible for pole inspections on a regular, scheduled basis. The custodian shall inform the joint owner of the inspection schedule. As a general rule, each owner shall inspect 10% of in-service pole plant per year within their maintenance area.

2. Pole treatment will be used at the discretion of the custodial Company. The custodial Company shall be responsible for 100% of the pole treatment cost.

3. Pole reinforcement where applicable and jointly agreed upon will be arranged by the custodial Company. All costs will be equally shared, typically, 50% billing from a third party vendor to each Company.

4. POLE STEPS

    Both companies agree that poles shall not be stepped and that no pole steps shall be installed on any jointly owned pole.

_____
N.E.T. & T d/b/a NYNEX

_____
BOSTON EDISON COMPANY

00079