# EXHIBIT P

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                            SUPERIOR COURT
                                                         CIVIL ACTION NO. 03-0159

IAN J. BROWN, JAMES BROWN and BARBARA
BROWN

    Plaintiffs,

v.

VERIZON NEW ENGLAND, INC. . and
BOSTON EDISON COMPANY d/b/a
NSTAR ELECTRIC

    Defendants.

### PLAINTIFF IAN J. BROWN ANSWERS TO DEFENDANT VERIZON NEW ENGLAND, INC.'S FIRST SET OF INTERROGATORIES

INTERROGATORY NO. 1

    Identify yourself fully, stating your full name, date of birth, social security number, residential address, business address, occupation, and if married, the name of your spouse and the date of your marriage.

    ANSWER: Ian James Brown, March 22, 1977, 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, 223 Cotter Avenue, Neptune, NJ 07753, medically discharged from Air Force, not married.

INTERROGATORY NO. 2

    State the full name and last known address, giving street, number, city and state of every witness known to you or your attorneys who has any knowledge regarding the facts and circumstances surrounding the happening of the events alleged in Plaintiffs' Amended Complaint, including, but not limited to, eyewitnesses to such events and other persons having knowledge thereof.

    ANSWER: Other than plaintiff Ian Brown, there were no known eyewitnesses to the subject incident. It is believed that Officer Tracy Cook, Bedford Police Department, 2 Mudge Way, Bedford,

MA 01730 has some knowledge regarding the happening of the incident.

## INTERROGATORY NO. 3

If you, your agent, servants, employees or anyone acting on your behalf has ever spoken to any alleged witnesses named in Interrogatory No. 2, please state:

a. the names and addresses of all persons participating in the making of each such conversation or statement, including the names and addresses of all other persons present at the time that each such conversation or statement was made;

b. the date, time and place that each such conversation or statement was made; and

c. the substance of each such conversation or statement and a full description of any documentation of each such conversation or statement, including each and every recording, photograph, drawing and signed or unsigned document which reflects, represents or pertains to same.

ANSWER:

a. Officer Tracy Cook, Bedford Police Department, 2 Mudge Way, Bedford, MA 01730.

b. June 13, 2002.

c. Officer Tracy Cook stated as follows:
Upon her arrival on the scene a video camera in the cruiser was activated automatically when she put on the emergency lights. Her cruiser was first parked behind another vehicle, which was at the scene before her arrival. Another police officer moved her cruiser because it was in the way of emergency vehicles. When the film was checked the parked vehicle was too far from the camera for police to discern the registration number. The video was sent to a specialist who could not clarify it enough to read the plate number. Officer Cook did not recall anyone placing a blanket over Ian Brown. Officer Cook speculated that the motorcycle skidded on the dirt shoulder and had no idea whether the manhole cover was a contributing factor.

The above information was memorialized in the form of notes taken by an investigator retained by plaintiffs.

## INTERROGATORY NO. 4

If any reports, memoranda or other documents made by you relating to the accident were submitted to any government agency or individual, please identify each such document.

ANSWER: None.

## INTERROGATORY NO. 5

If you made any statements to anyone, including statements made in conversation, at the time of or after the accident, please give the date and substance of the statement and the name and address of the person(s) to whom the statement was made.

ANSWER: Objection. This request encompasses statements I have given to my attorney, and such statements are privileged. Without waiving that objection, I have told numerous people about my accident, both family and friends, and I cannot recall all their names and specifically what I told each one. I can recall telling Jennifer Gagne, 129 Independence Court, Bedford, MA 01731, my parents, and my sister Jill Edwards and my brother-in-law Douglas Edwards, 817 Conte, Brick, New Jersey 08724 about the incident; I cannot recall what I told each of them.

## INTERROGATORY NO. 6

Please describe how the accident occurred, including in your answer:

    a.    the cause of the accident;

    b.    the location of the accident, giving any and all landmarks which would identify said location;

    c.    what you saw and did in the order in which the events occurred;

    d.    the position of the pole no. 37 when you first and last observed it;

    e.    the last thing you remember before the accident; and

  f.  where you landed as a result of the accident.

ANSWER:

I was operating my motorcycle on Hartwell Road in Bedford, Massachusetts when I lost control. I believe that the loss of control was caused by the motorcycle hitting the edge of a depression in the roadway. My body left the motorcycle, and I was sliding head-first along a guardrail at the side of the road, with my back to the guardrail. Pole # 37 was positioned along the roadway, immediately adjacent to the guardrail, and on the roadway side of the guardrail. My head smashed directly into the pole.

  a.  The cause of the loss of control of the motorcycle was a depression in the roadway. The cause of my injuries is the negligent placement of a utility pole and/or negligently allowing a utility pole to remain on the roadway side of and immediately adjacent to a guardrail.

  b.  Hartwell Road, Bedford, MA, at pole number 37.

  c.  I was coming up a hill when the front tire of the motorcycle entered a depression in the area of a manhole. As the front tire was exiting the depression area, it tucked under and to the left, and I lost control of the motorcycle. The motorcycle fell onto its right side, and I was thrown from the vehicle. Instinctively, I turned my back toward the guardrail I was approaching. My body slid along the guardrail, and it guided me head-first directly into pole number 37.

  d.  Pole # 37 never changed position. It was on the roadway side of and adjacent to the guardrail.

  e.  The last thing I remember before the accident was instinctively turning my back toward the guardrail to lessen the impact. [I have performed 805 freefall parachute jumps and have mastered positioning my body in free space. I did

all that I could and all that I was trained to do in order to reduce the severity of impact.]

 f. I landed on the roadway.

## INTERROGATORY NO. 7

Please describe the vehicle you were driving at the time of the accident, including in your answer:

 a. the make of the vehicle;

 b. the model of the vehicle;

 c. the year in which the vehicle was manufactured;

 d. the date on which you became the owner of the vehicle; and

 e. any repairs the vehicle has had.

ANSWER:
 a. Kawasaki;

 b. ZX-12R;

 c. 2001;

 d. July 6, 2001;

 e. On July 6, 2001, the fender kit and blinker kit were installed. On July 13, 2001, I had an oil change and new filter put on. On September 24, 2001, I had a fuel tank, tail cover and seat cover and fuel tank cap installed. On November 5, 2001, there was a factory recall and the tire valve lock kit was installed.

## INTERROGATORY NO. 8

Please describe all prior accidents involving automotive vehicles to which you have been a party, including the date, nature, surrounding facts, type of vehicle, number of parties involved, and whether a legal action arose from the accident.

ANSWER: On June 20, 1997, while making a right turn merging with traffic in a residential neighborhood, I contacted another vehicle in the rear quarter panel on its passenger side with the front driver's side of the bumper on the vehicle which I was operating. It was a low speed collision, no one was injured and no legal action arose.

INTERROGATORY NO. 9

Please state all facts which support the allegations contained in Paragraph 6 of Plaintiff's Amended Complaint that, "Defendant Verizon was negligent, and its negligence included but was not limited to negligently placing or locating the pole in that: it was unreasonably close to Hartwell Road; b. it was located at the outside of a curve; c. it was located between Hartwell Road and a guardrail ("the guardrail") that was directly behind the pole; and/or; d. it was otherwise located in such a manner as to be unreasonably dangerous to the motoring public, including Plaintiff."

ANSWER: Discovery and investigation are continuing, and this interrogatory will be seasonably supplemented. At this stage of the litigation Plaintiff can state that visual observation reveals that Defendant's pole #37 was placed by Defendant adjacent to and on the roadway side of the subject guardrail and/or Defendant allowed its pole #37 to remain adjacent to and on the roadway side of the subject guardrail. Guardrails are designed to prevent vehicles that accidentally travel off the roadway from contacting objects on the side of the roadway. Instead, due to its position relative to the guardrail, Defendant knew or should have known that a vehicle (and/or someone ejected from such a vehicle) that left the roadway and contacted that guardrail would be guided directly into pole #37, a fixed object. Moreover, based on the laws of physics, its location on the outside of a curve increased the chances of a vehicle (and/or someone ejected from such a vehicle) contacting the pole.

INTERROGATORY NO. 10:

Please state all facts which support the allegations contained in Paragraph 7 of Plaintiffs Amended Complaint that, "At all times relevant to the Complaint, Defendant Verizon knew or should have known that the location of the pole created an unreasonably dangerous condition for the motoring public on said Hartwell Road."

ANSWER: Discovery and investigation are continuing, and this interrogatory will be seasonably supplemented. At this stage of the litigation, please see answer to the preceding interrogatory.

### INTERROGATORY NO. 11

Please describe what you were wearing at the time of the accident, including in your answer whether you wore any clothing, helmet, glasses or safety equipment, and the style and condition of your footwear.

ANSWER: At the time of the accident, I was wearing a Shoei Helmet which was brand new and custom fitted to my head. A Kevlar riding suit which included jacket and pants with reinforced padding manufactured by Joe Rocket. I was also wearing padded Kevlar and leather gloves which were reinforced with carbon fiber over the knuckles. All of the gear was brand new in perfect, serviceable, working condition designed specifically for motorcycle safety. Underneath the safety gear, I was wearing military issue battle dress uniform -- camouflage fatigues. I was wearing my issued combat boots on my feet.

### INTERROGATORY NO. 12

Please describe the weather and lighting conditions at the time and scene of the accident.

ANSWER: At the time of the accident, the skies were clear, the temperature was mildly warm and the accident occurred in broad daylight on a dry roadway.

### INTERROGATORY NO. 13

Please identify all foods, medications and/or beverages that you ingested during the eight hours prior to the accident.

ANSWER: Within the eight hours prior to my accident, the only food I consumed was one 12 oz. can of Mountain Dew, one box of Bird's Eye Bavarian style green beans, and reheated beef casserole. I took no medications prescribed or over the counter.

### INTERROGATORY NO. 14

Please describe any and all injuries or conditions you contend resulted from the accident, including your diagnosis and the nature and duration of each such injury or condition.

ANSWER: Upon initial impact with pole number 37, my helmet came down and broke both of my clavicles. My momentum continued and my body folded in front of me due to the abrupt stop that I encountered when meeting the pole head on. My T5 and T6 vertebrae were crushed and fragments from those two were sent into my spinal cord. My spinal cord was pinched due to the force of the compression causing a neurological spinal cord injury at the T2-T3 neurological level. Three of my ribs were broken, my left lung collapsed and was pierced by one of the broken ribs. The spinal cord injury left me paralyzed from the chest down and neurologically impaired both my bladder and bowels permanently. I suffered trauma to my brain as well.

## INTERROGATORY NO. 15

If you have received any treatment due to the injuries from which you claim you have suffered as a result of the accident, including but not limited to any medical, psychological, nursing and/or personal care or services please state:

   a. the name, address and employer of each treatment provider including, but not limited to any doctor, chiropractor, psychiatrist, psychologist, mental health professional, social worker, nurse, personal caregiver or counselor who treated or examined you;

   b. the nature of each such treatment, examination or services;

   c. the dates on which you received each such treatment, examination or services;

   d. the number of hours per day each such treatment, examination or services were provided;

   e. the name and address of each hospital, clinic, or other facility where each treatment, examination or service was administered;

   f. any medications prescribed or recommended;

   g. any treatment plan recommended; and

   h. the cost of each treatment, examination or service.

ANSWER: Please refer to my medical records and bills provided in Plaintiff's Responses to Defendant, Verzion's First Request for Production of Documents provided to defense counsel under separate cover.
I had treatment at the following facilities: Beth Israel Hospital, Kessler Institute for Rehab., Healy Chiropractic Center, Bronx VA Medical Center, St. Branamiss Medical Center and Bayada Nurses.

## INTERROGATORY NO. 16

Please describe all injuries, medical conditions, impairments and/or hospitalizations you have had within the five (5) years prior to the accident, including in your answer:

a. the nature of your injury, medical condition or impairment;

b. the name and address of all treatment providers for each such injury, medical condition or impairment, including but not limited to any doctor, chiropractor, psychiatrist, psychologist, mental health professional, social worker, or counselor who treated or examined you;

c. the nature of any treatment or examination for each such injury, medical condition or impairment;

d. the date of each such treatment or examination; and

e. the name and address of each hospital, clinic, or other facility where each such treatment or examination was administered.

ANSWER: None.

## INTERROGATORY NO. 17

If you claim that you have been prevented from carrying on your usual activities as a result of the accident, please identify all such activities and describe the way in which your participation in such activities has changed as a result of the accident, including in your answer whether any physician recommended any such change, and the dates of any absence from work or school.

ANSWER: I cannot walk. Some of the major activities that I can no longer do are rugby, volleyball, weightlifting, martial arts,

skydiving, scuba diving, flying, bicycling, roller blade, rock climbing. I know there are other things that I cannot do, but these are all that I can think of at this time. I have been unable to work as a result of this injury. My education has been affected by this injury since I was hospitalized for nearly a year. My schoolwork is continually affected due to the constant doctor's visits, chiropractic appointments, therapy and nursing care that I must received.

### INTERROGATORY NO. 18

Please give an itemized list of all loss and expenses in dollars and cents incurred by you or on your behalf to date as a result of the accident.

ANSWER: Plaintiff is in the process of gathering this information and will supplement upon receipt. So far, I have medical bills from Boston MedFlight in the amount of $4,660.00, Beth Israel Hospital in the amount of $267,058.32 and Bronx VAMC in the amount of $508.00. Healy Chiropractic in the amount of $3,275.00. Additional billing has been requested and this answer will be supplemented upon receipt. I have also incurred costs that include modifications to the house and car, assistant devices, maintenance on my wheel chair, co-payment on medications. I have also lost income due to forced retirement from the Air Force. My economic losses are anticipated to be the subject of expert testimony, and this answer will be supplemented seasonably.

### INTERROGATORY NO. 19

For each expert witness whom you expect to call at the trial of this action, and whom you have retained or specially employed in anticipation of litigation or in preparation for trial who is not expected to be called as a witness at the trial of this action, please state:

a. the name, business address, residential address, educational and employment history;

b. the subject matter on which each such expert witness is expected to testify or was retained or employed to consider; and

c. the substance of the facts and opinions to which each such expert is expected to testify or was retained or employed to consider.

ANSWER: Objection. This interrogatory exceeds the scope of expert discovery as set forth in Rule 26(b)(4). Without waiving this objection, Plaintiff states that he has not determined who, if anyone, will be called as an expert to testify at trial. This interrogatory answer will be seasonably supplemented, but only to the extent that it conforms with the scope of said Rule.

INTERROGATORY NO. 20

If, as a result of the events alleged in Plaintiffs' Amended Complaint, you lost any time from any occupation or employment which you may then have had, please state fully and in complete detail:

  a. what your occupation was at the time of the events alleged in Plaintiffs' Amended Complaint, including the full name and address of your employer the dates on which or between which you were incapacitated, setting forth the date on which you first returned to work after the events alleged in Plaintiffs' Amended Complaint;

  b. the average weekly income you received from your work at the time of the events alleged in Plaintiffs' Amended Complaint;

  c. the amount of financial loss you suffered as a result of your incapacity to work;

  d. the names and addresses of all of your employers during the five years prior to the events alleged in Plaintiffs' Amended Complaint, stating for each a full description of your duties, the dates of such employment, and your average weekly income when last employed by each such employer; and

  e. the names and addresses of all your employers subsequent to the events alleged in Plaintiffs' Amended Complaint, stating for each a full description of his duties, the dates of each such employment and your average weekly income when last employed by each such employer.

  ANSWER:

  a.    Developmental Engineer for the United States Air Force, Hanscom Air Force Base, Bedford, MA. I have not returned to work since the date of the accident, January 4, 2002.

  b.    My average income was $1,000.00 per week.

  c. My economic losses are anticipated to be the subject of expert testimony, and this answer will be supplemented seasonably.

  d. I was employed by the Air Force for 5 years prior to the accident.

  e. I have not worked since the accident.

## INTERROGATORY NO. 21

Please describe your educational background, including without limitation:

  a. the name and location of any and all educational and/or vocational institutions and/or programs you have attended;

  b. the dates of attendance;

  c. any degrees you received; and

  d. whether you claim you missed any time from school as a result of the events alleged in Plaintiffs' Amended Complaint.

ANSWER:

  a. – d.

I graduated high school in 1995 from Ocean Township High School in Ocean, NJ. I received a Bachelor of Science in Computer Science in 1999 from the United States Air Force Academy in Colorado Springs, CO. Currently, I am pursuing a software engineering Master's Degree from Harvard University in Boston, MA. However, I have had to take time off from school due to my injury. I was forced to withdraw from one of my classes due to medical appointments and was unable to attend school last semester due to my injury and therapy.

## INTERROGATORY NO. 22

If you allege that Verizon violated any federal, state or municipal statute, rule, standard, regulation, by-law or other law with respect to the events alleged in Plaintiffs' Amended Complaint, please identify fully

including title and citation and with respect to each such alleged violation, please state fully and in complete detail, how each such alleged violation either caused or contributed to your injuries or damages.

ANSWER: Discovery and investigation are continuing, and this interrogatory will be seasonably supplemented. Moreover, this is expected to be the subject of expert testimony, and this answer will be seasonably supplemented

Signed under penalties of perjury this      day of       , 2003.

_____ 30 Sep 03
Ian J. Brown

AS TO OBJECTIONS

_____
Scott E. Charnas, BBO# 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
617-557-4700

CERTIFICATE OF SERVICE
I hereby certify that a true copy of this document was served upon the attorney(s) of record for each party by mail/by hand.

_____
Dated: 10/30/03