UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
IAN J. BROWN, JAMES BROWN, and  )
BARBARA BROWN,                        )
                                      )
        Plaintiffs,                   )
                                      )        Civ. No. 04-11924-RGS
v.                                    )
                                      )
UNITED STATES OF AMERICA,        )
VERIZON NEW ENGLAND, INC., and )
BOSTON EDISON COMPANY d/b/a/    )
NSTAR ELECTRIC,                       )
                                      )
        Defendants .                  )
_____)


## UNITED STATES' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

Plaintiffs have brought suit regarding Ian Brown's motorcycle accident, January 4,

2002, on Hartwell Road in Bedford, Massachusetts.  Brown was riding his motorcycle

east on Hartwell Road, returning to work at Hanscom Air Force Base from his lunch

break at home, when he lost control of the motorcycle, and, he alleges, collided with a

guard rail parallel to the road and crashed head first into utility pole 37.  Complaint at

¶ 8-9.  See also, Brown v. United States et al, 410 F. Supp.2d 3, 4 (D. Mass. 2006).[1]

Plaintiffs allege that the United States is liable in negligence for his injuries because the

United States owned and controlled the property on which the guard rail is situated;

_____

[1] See Exhibit A to this memorandum for photographs of the accident site.

1

Complaint ¶ 32; "placed, caused to be placed or suffered the placement of the guard rail

on the land;" Complaint ¶ 33; and/or failed to remove or relocate the pole and/or the

guard rail. Id. ¶ 35. See also, Brown, 410 F. Supp.2d at 5. Plaintiffs cannot meet their

burden of proof regarding these allegations and summary judgment is warranted.

## I.  THE APPLICABLE LAW

### A.  The Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37

(1st Cir. 1995) (quoting Fed. R. Civ. P. 56). A "genuine" issue means that the evidence

relevant to the issue, viewed in the light most flattering to the party opposing the motion,

[is] sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of

either side." Nat'l Amusements, Inv. V. Town of Dedham, 43 F.3d 731, 735 (1st Cir.

1995). A "material fact" is one that has "the potential to alter the outcome of the suit

under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 90 F.2d 701, 703 (1st

Cir. 1993). Summary judgment is properly awarded against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). In such a situation, there can be "no genuine issue as to any

material fact," since a complete failure of proof concerning an essential element of the

2

nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).

## B. The Elements and Burden Applicable under the FTCA

The Federal Tort Claims Act provides a "limited waiver of sovereign immunity

which allows an injured party to sue the United States for damages for "personal injury or

death caused by the negligent or wrongful act or omission . . . under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b);

Santiago-Ramirez v. Secretary of the Department of Defense, 984 F.2d 16, 18 (1st Cir.

1993) (quoting 28 U.S.C. § 1346(b)). Where, as here, the plaintiff brings a claim "under

section 1346(b) of the FTCA, a court must apply the 'law of the place' where the

negligent act occurred." Soto v. United States, 11 F.2d 15, 17 (1st Cir. 1993); accord

Rosario v. United States, 824 F. Supp. 268, 276-277 (D. Mass. 1993) (substantive law of

the state wherein the injury occurred applies both to liability and damages).

Massachusetts tort law applies to the Plaintiff's claims.

In order to prove a prima facie case of negligence under Massachusetts law, the

Plaintiffs must prove four elements of common law negligence: a legal duty owed by

Defendant to Plaintiff, a breach of that duty, proximate or legal cause, and actual damage

or injury. Jorgensen v. Mass. Port Authority, 905 F.2d 515, 522 (1st Cir. 1990); see also

Bennett v. Eaglebrook Country Store, Inc., 408 Mass. 355, 358, 557 N.E. 2d 1166, 1168

(1990).  The Plaintiffs have the burden of establishing each essential element of their claim by a preponderance of the evidence. If the evidence is equally balanced as to any of the essential elements of the plaintiffs' claim, judgment is to go to the defendant.  See Borelli v. Top Value Enterprises, 356 Mass. 110, 113 (1964); Deagle v. Great Atlantic & Pacific Tea Co., 343 Mass. 263, 265 (1961).

## II.  PLAINTIFFS CANNOT ESTABLISH THAT THE UNITED STATES OWES THEM A DUTY

The Complaint alleges that the United States has a duty of care to Plaintiffs arising out of the United States' ownership and/or control of the guard rail that, it is alleged, Ian Brown hit after he lost control of his motorcycle, "[slid]ing headfirst along the guardrail, which guardrail acted as a conduit channeling said Plaintiff toward the pole and causing said Plaintiff's head to slam with great force into the pole."  Complaint ¶ 9.  However, Plaintiffs cannot establish that the United States had a duty of care to Plaintiffs in this regard because they cannot show that the United States owns or controls the guard rail. Moreover, Plaintiffs cannot establish that the United States holds title to the land on which the guard rail is located.  Even if the Plaintiffs were to establish that the United States holds title to the land – which they cannot – Massachusetts law provides that owners of land abutting a public way shall not be liable to road users who inadvertently travel a few feet from the road.  Lioni v. Marr, 320 Mass. 17, 19-20, 67 N.E.2d 766

(1946).  Finally, the statute of repose set forth by M.G.L. c.260 § 2B bars this action.[2]

## A.  Plaintiffs Cannot Establish that the United States Owned or Controlled the Guardrail

Plaintiffs cannot meet their burden of showing that the United States owed a duty to Plaintiffs, since they cannot even establish that the guard rail was owned or controlled by the United States.  Indeed, the evidence is to the contrary.  The Plaintiffs' inability to produce evidence as to ownership or control means that they cannot possibly prove an essential element of their claim.

The Raytheon Corp. leased from the United States Navy the parcel of land immediately south of the accident site, from 1967 to at least 1998.  Deposition of Joseph Broderick (Exhibit C to this memorandum) at 13-14.  Raytheon's property manager was Joseph Broderick, who worked for as property manager for 38 years, and whose responsibilities included upkeep of the property and capital maintenance, id. at 24.  He testified, "I do not recall every having made any proposal or done anything with guardrails or utility poles . . . ;" id. at 54-55; see also at 27 (no recollection of guardrail being erected at the location at any point in time).  Pursuant to its contract with the Navy,

_____

[2] Should this case proceed to trial, the United States will establish that the guard rail was not the proximate cause of Ian Brown's injuries.

The United States is providing a disability retirement income to Ian Brown, and is paying all his medical expenses and other handicap-related expenses, since the Air Force has determined that Brown's injuries arose out of his military service.  See Exhibit B (Declarations of Brian Carl Peters and Thomas Christopher Barrett).

Raytheon was required to obtain written Navy approval before undertaking capital

maintenance projects, even if the project was minor, and putting up a guardrail would fall

within capital maintenance and would have required Navy approval before it occurred.

Broderick also reviewed Raytheon records and found no mention of the guardrail (or the

pole), id. at 69, and the guardrail was not present on drawings of the site.  Id.  At 69-70.

Jerry D. Peterson, a civilian employee of the Navy at its facility south of Hartwell Road

behind Pole 37, formerly the Raytheon site, was designated as a rule 30(b)(6) witness on

behalf of the Navy.  He testified that he was responsible for searching for, gathering, and

reviewing the Navy records and Raytheon records, accompanied by Joseph Broderick.

Declaration of Jerry D. Peterson ¶ 1-2 (Exhibit D to this memorandum).  He found

absolutely no reference in the records to the guard rail at Pole 37 in either the Navy or

Raytheon records.  Moreover, he states that the Navy "has no knowledge of the purpose

for which the guard rail was erected, the identity of the persons who requested or

otherwise caused the guard rail to be erected or to be maintained or repaired, and it has no

knowledge of any communications" about the guard rail.  Id. ¶ 5.

    The Air Force also searched its property records.  Dennis Cronin, designated as the

Air Force rule 30(b)(6) witness, searched the real property records of the Air Force at

Hanscom base and found no record whatsoever of the guard rail, and no references or

mentions of any kind regarding the guard rail, including construction, installation,

maintenance, financing, or approvals.  Declaration of Dennis Cronin (Exhibit E to this

memorandum) ¶ 6.  Moreover, Cronin, a civilian employee of the Air Force since 1980,

with responsibility for oversight of real property and space management for the Air Force facilities at Hanscom Air Force Base, testified that the Air Force had no responsibility for the construction, location and maintenance of the guard rail.  Id. ¶ 6. The Air Force has no knowledge of the purpose for which the guard rail was erected, the identity of the persons who requested or otherwise caused the guard rail to be erected or to be maintained or repaired, and it has no knowledge of any communications regarding the guard rail.  Id.

Because the Plaintiffs cannot establish that the United States had a role in the construction, location, or maintenance of the guard rail, Plaintiffs cannot establish that the United States owed a duty to Ian Brown.[3]

## B.  Plaintiffs Cannot Establish that the United States Owns the Land

Jerry D. Peterson, the Navy 30(b)(6) witness, also testified based on his experience at Hanscom.  He stated that the Navy does not own Hartwell Road.  Peterson Decl. ¶ 7.  The road is used as a public road and the Navy did no maintenance, construction, planning, public safety, or law enforcement work with regard to the road. Id.

Dennis Cronin testified that the Air Force has never owned Hartwell Road and/or

---

[3] Moreover, in its "Roadside Design Guide," the American Association of Highway and Transportation Officials (AASHTO), an organization that sets standards for road design and safety, states in "Motorcycles and Barrier Design," 5.2.4: ". . . [N]o systematic approach toward this issue has been developed because of the random nature of motorcycle crashes and the questionable effectiveness of modifications to existing barriers.  Based on the experience of other countries and the lack of any cost-effective countermeasures of barrier designs, there appears to be little basis for developing guardrails designed for motorcyclists."  At 5-5 (Exhibit F to this memorandum.

its shoulders, and has never maintained Hartwell Road.  Cronin Decl. ¶ 2.   Based on his

27 years operating and maintaining the Air Force facilities at Hanscom, he testified that

no agency of the federal government owns or has owned or maintained Hartwell Road

and its shoulders.  Id. ¶ 8.   Likewise, Armand L.C. Ouellette, who was in charge of

maintenance of grounds and roads at Hanscom, testified that the Town of Bedford has

always maintained the property that the guard rail is on.  Deposition of Ouellette (Exhibit

G to this memorandum) at 28.  "We've never had the road, we've never maintained it,

and we've never done anything to it." Id.  at 32.  Nor to the property immediately

adjacent to either side of the road.  Id.  Nor did he ever do anything over his many years

of employment at Hanscom that would indicate that the United States considered the land

under the guardrail to be under its control.  Id. At 46.

An engineer for the Town of New Bedford for eighteen years, Adrienne St. John,

testified that the Town of New Bedford – and not the United States -- did the maintenance

and repair of Hartwell Road.  Deposition of Adrienne St. John (Exhibit H to this

memorandum) at 8, 58-59.

J. Dan Bremser, the government's title search expert reported that the Town of

Bedford took title to Hartwell Road in 1734-35, including the portion of Hartwell Road

where the accident occurred.  Declaration of Bremser (Exhibit I to this memorandum) ¶ 2.

He also found that Hartwell Road has ancient stone walls intermittently along its sides,

including at the site of the accident.  Id. ¶ 5.  The wall at the accident site is behind the

guard rail and Pole 37.   Bremser Decl. ¶ 5.  Stone walls were traditionally located at land

boundaries.  See Ryan v. Stavros, 348 Mass. 251, 265 (1964) (Walls and fences can be

indications as to property boundaries and can be instructive when interpreting land

descriptions).   Bremser concluded based on the presence of the stone walls today and on

historical maps of Hartwell Road, that the stone walls represent the boundaries of town-

owned property on which Hartwell Road lies and that the Town of Bedford owns the land

upon which the guard rail stands.

Id. ¶ 5.[4]

        Indeed, M.G.L.A. c. 86 § 2 provides as follows:

> If buildings or fences have been erected and continued for
> more than twenty years, fronting upon or against a highway,
> town way, private way, training field, burying place, landing
> place, street, lane, or alley, or other land appropriated for the
> general use or convenience of the inhabitants of the
> commonwealth, or of a county, city, town, or parish, and from
> the length of time or otherwise the boundaries thereof are not
> known and cannot be made certain by the records or by
> monuments, such buildings or fences shall be taken to be the
> true boundaries thereof.

Accordingly, not only does Bremser conclude that the stone walls indicate the boundary

of the Town of Bedford land, but the statute directs that these walls are to be regarded as

the boundaries in the event of uncertainty.

        Under these circumstances, Plaintiffs cannot establish a duty toward Ian Brown

---

[4] St. John testified that the Town of Bedford did not own Hartwell Road.  However, her
conclusion was unsupported, since it is based solely only on the fact that Hartwell Road is not on
the "Town of Bedford Accepted Street Register." St. John Dep. 55-56.   This Register is patently
incomplete and lists no roads taken before 1936 (and is only a partial list of roads taken after
1936).  Bremser Decl. ¶ 3.

based on the United States' ownership of the land.

**C.  Liability Does Not Lie against the United States Pursuant to the Lioni Doctrine**

The Lioni doctrine holds that an owner of land abutting a road does not owe a duty to roadway users who inadvertently stray from the road.   Lioni v. Marr, 320 Mass. 17, 19-20; 67 N.E.2d 766 (1946).  See also, Richardson v. Whittier, 265 Mass.  478, 479-80; 164 N.E. 384 (Mass. 1929).  This doctrine drives from the common law.  Lioni at 19-20. In Lioni, the plaintiff, a pedestrian on a public sidewalk, was injured when she caught her foot on the defendant's curbing and fell to the bottom of his cellar stairs.  The SJC upheld a directed verdict for the defendant, indicating that an abutting landowner did not have a duty of care with respect to passers-by straying out of the sidewalk and into his land.  Id. At 767.   In Shulman v. Dinty Moore's, Inc., 326 F.2d 953, 954 (1964), the First Circuit held for the defendant landowner when plaintiff claimed that the landowner induced him to enter onto dangerous land on belief that it was part of a public sidewalk.  The Court said,

> [I]n many jurisdictions, the occupier of land abutting a public way may incur liability on account of an . . . artificial condition existing on his property which creates an unreasonable risk to travellers on the public way . . . However, the law in Massachusetts is otherwise . . . and since it is clear that the plaintiff was not invited onto that portion of the premises containing [an artificial condition] . . . , there can be no liability. . . .

Accordingly, even in the unlikely event that this Court holds that Plaintiffs are able to prove that the United States owns the land upon which the guard rail is built, it must

grant summary judgment for the United States on the basis of the <u>Lioni</u> doctrine.

## C.  The Statute of Repose Precludes this Action

In the unlikely event that this Court determines that the Plaintiff can prove that the United States was responsible for erecting the guard rail, liability of the United States is precluded by a Massachusetts statute of repose.  Although there is no definite date regarding when the guard rail was erected, Mr. Ouellette, long-time superintendant of pavements and equipment at Hanscom, who was in charge of the maintenance of roads and grounds, testified that the guard rail was erected 15-16 years ago, at about 1990. Ouellette Dep. At 51.[5]   <u>See</u> <u>also</u> Exhibit A (photographs of guard rail).

Massachusetts has a statute of repose for improvements on real property, "Tort Actions arising from improvements to real property," M.G.L.A. c. 260 § 2B, which provides,

> Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property, other than that of a public agency . . .  Shall be commenced within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.
>
> Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction, or general

---

[5] Ouellette knows nothing regarding who erected the guard rail.  Ouellette Dep. at 41.

> administration of an improvement to real property of a public
> agency, as defined in said section thirty-nine A shall be
> commenced only within three years next after the cause of
> action accrues; provided, however, that in no event shall
> actions be commenced more than six years after the earlier of
> the dates of (1) official acceptance of the project by the public
> agency; (2) the opening of the real property to public use; (3)
> the acceptance by the contractor of a final estimate prepared
> by the public agency pursuant to chapter thirty, section thirty-
> nine G; or (4) substantial completion of the work and the
> taking possession for occupancy by the awarding authority.

This statute is designed to provide repose from liability for those engaged in design or

construction who might otherwise remain liable for acts long past.  Klein v. Catalano, 386

Mass. 701, 709-10 (1982).  Otherwise, those individuals engaged in design or

construction might be required to mount a defense when plans may have been discarded

and "persons involved in the construction project may be deceased or may not be

located."  Id. (quoting Howell v. Burk, 90 N.M. 688, 694 (1977).   The statute applies

whether or not the defendant is also the owner of the property.  See Sonin v.

Massachusetts Turnpike Auth., 61 Mass App. Ct. 287, review denied, 442 Mass. 1106

(2004) ("By its clear and express terms,  § 2B limits the period for bringing any claim

arising from negligent design without regard to whether the owner or another party has

committed the alleged negligence." at 290).   See Milligan v. Tibbetts Engineering Corp.,

391 Mass. 364 (1984) (stone wall and road construction within definition of improvement

to real property); McDonough v. Marr Scaffolding Co., 412 Mass. 636 (1992)

(installation of bleacher was improvement to real property).

     Plaintiffs bring this action under the FTCA, 28 U.S.C. § 1346(b), which, as noted

above, waives sovereign immunity and grants the federal district courts jurisdiction only under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  FDIC v. Meyers, 510 U.S. 471, 477 (1994).  This element of sovereign immunity is to be construed strictly in favor of the United States.  Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).

The Massachusetts statute of repose imposes a substantive limitation on liability under state law  and, accordingly, also precludes an FTCA suit against the United States in this case.  The cause of action provided by Massachusetts law for negligence in construction and design, including presumably, the siting of a structure, was destroyed by the statute of repose six years after construction was completed, and accordingly, does not fall within the "state law" requirement of the FTCA sovereign immunity exception.   See Simmons v. Sonyika, 421 F.3d 1199 (11th Cir. 2005); 394 F.3d 1335, 1339 (11th Cir. 2004).

### III.  CONCLUSION

For the foregoing reasons, the United States submits that Plaintiffs are unable to establish that the United States owes a duty of care to Plaintiffs, and also that this action is barred by statute, and requests that this Court grant summary judgment to the United States.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Anita Johnson
        Anita Johnson
        Assistant U.S. Attorney
        John Joseph Moakley Federal Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA  02210
        (617) 748-3282

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon Scott Charnas, counsel for Plaintiff, Joshua Lewin, counsel for Verizon, and Michael Callahan, counsel for Nstar, and all other attorneys of record by the electronic filing system, on this fourteenth day of March 2007.


/s/ Anita Johnson

14