UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>　　　Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT BOSTON EDISON COMPANY d/b/a/ NSTAR ELECTRIC'S CONCISE STATEMENT OF MATERIAL FACTS'**

Pursuant to Rule 56 of the Fed.R.Civ.P. and Local Rule 56.1, Plaintiffs Ian J. Brown, James Brown, and Barbara Brown hereby submit their Response to Defendant Boston Edison Company d/b/a NSTAR Electric's Concise Statement of Material Facts.

**I.　　DEFENDANT BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC'S UNDISPUTED MATERIAL FACTS**

1. Plaintiff Ian Brown ("Brown") has brought this action alleging that on January 4, 2002, he lost control of his motorcycle as he rode along Hartwell Road, Bedford, Massachusetts and then struck a guardrail and then a utility pole. (Complaint, ¶¶ 8,9, Ex. A). The utility pole was jointly owned by Boston Edison Company ("Boston Edison")

and Verizon New England, Inc. ("Verizon"). (Roche Affifavit ¶ 8, Ex. B; Defendant Boston Edison Company's Answers to Plaintiffs' First Set of Interrogatories, Response No. 2, Ex. C)

   **Plaintiffs' response**: Undisputed.

   2. Brown alleges that he suffered serious personal injuries as a result of the accident. (Complaint, ¶¶ 10, Ex. A)

   **Plaintiffs' response**: Undisputed.

   3. In the summer of 2001, Brown ("Brown") transferred to Hanscom Air Force Base ("Hanscom"), Bedford, Massachusetts; (Brown Transcript, p.19, Ex. D)

   **Plaintiffs' response**: Defendant Boston Edison has not accurately characterized Brown's testimony, which is that he arrived at Hanscom in late spring or early summer of 2001. (Brown Transcript, p.18, 19, Ex. D)

   4. In January 2002, Brown was a Second Lieutenant stationed at Hanscom in Bedford, Massachusetts; Brown Transcript, p. 19, Ex. D)

   **Plaintiffs' response**: Undisputed.

   5. In January 2002, Brown resided at Independence Court, Bedford, Massachusetts; Brown Transcript, p. 22, Ex. D)

   **Plaintiffs' response**: Undisputed.

   6. Independence Court is located off Hartwell Road, Bedford, Massachusetts a short distance from Hanscom; Brown Transcript, pp. 155-157, Ex. D)

   **Plaintiffs' response**: Undisputed.

   7. The accident which is the subject matter of this lawsuit occurred on January 4, 2002; (Brown Transcript, p. 152, Ex. D)

**Plaintiffs' response**: Undisputed.

8. On the morning of January 4, 2002, Brown drove his truck to work at Hanscom; (Brown Transcript, p. 156, Ex. D)

**Plaintiffs' response**: Undisputed.

9. On January 4, 2002, Brown returned home for lunch and decided to ride his motorcycle back to work after lunch; (Brown Transcript, p. 159, Ex., D)

**Plaintiffs' response**: Undisputed.

10. Brown was operating a new Kawasaki Ninja ZX-12R sport motorcycle at the time of the accident; (Brown Transcript, p. 188, Ex. D)

**Plaintiffs' response**: Undisputed that Brown was operating a Kawasaki Ninja ZX-12R sport motorcycle at the time of the accident. However, the bike was purchased July 6, 2001, almost five months before the accident, and so Plaintiffs dispute the characterization of the motorcycle as "new." *See infra* Plaintiffs' Additional Undisputed Material Facts ("PAUMF"), ¶ 17.

11. Brown testified that he lost control of his motorcycle when he drove over a sewer manhole located in the travel lane of Hartwell Road (Brown Transcript, p. 167, Ex. D)

**Plaintiffs' response**: Plaintiffs admit that plaintiff Brown lost control of his motorcycle in a travel lane of Hartwell Road. However, Boston Edison has mischaracterized the testimony of Brown. The manhole cover is within a depression in the roadway. *See infra* PAUMF, ¶ 8. At the page referenced by the defendant, p. 167, Brown testified that he lost control "after exiting the depression in the road," which is not the same as losing control when he drove over a sewer manhole.

12. Brown testified that the sewer manhole was located toward the center line of Hartwell Road; (Brown Transcript, p. 323, Ex. D)

**Plaintiffs' response**: Undisputed.

13. Brown testified that he observed the sewer manhole and attempted to slow down; (Brown Transcript, p. 167, Ex. D)

**Plaintiffs' response**: Defendant has mischaracterized Brown's testimony. The sewer manhole is located within a depression. *See infra* PAUMF, ¶ 8. At the page referenced by the defendant, p. 167, Brown testified that he slowed down when he saw the depression; he did not testify that he slowed down when he observed the sewer manhole.

14. Brown testified that after hitting the sewer manhole, his motorcycle began to topple to the right. (Brown Transcript, p. 177, Ex D)

**Plaintiffs' response**: Plaintiffs admit that after Brown lost control of the motorcycle, the motorcycle began to topple to the right. However, defendant has mischaracterized Brown's testimony. The sewer manhole is located within a depression; Brown lost control in the area of the depression. *See infra* PAUMF, ¶ 8. He did not testify at the referenced page 177 that his motorcycle began to topple after hitting the sewer manhole.

15. Brown testified that as the motorcycle began to fall to the right, he jumped off the motorcycle toward the guardrail; (Brown Transcript, p.179-180, Ex. D)

**Plaintiffs' response**: Plaintiffs admit that Brown pushed off the motorcycle with his feet as the motorcycle began to fall to the right. However, Defendant has mischaracterized Brown's testimony at the referenced pages 179-180; Brown did not

testify there that he "jumped" off the motorcycle. Brown pushed off the motorcycle. *See infra* PAUMF, ¶ 11.

16. Brown testified that he recalled turning his back to the guardrail while in the air; (Brown Transcript, p. 179, Ex. D)

**Plaintiffs' response**: Undisputed.

17. Brown testified that after losing control of the motorcycle, he chose the guardrail an as "aim point" to aim his body; (Brown Transcript, p. 334, Ex. D)

**Plaintiffs' response**: Undisputed.

18. Brown testified that he made a choice not to go down with the motorcycle and slide along the roadway. (Brown Transcript, p. 334, Ex. D)

**Plaintiffs' response**: Undisputed.

19. Brown testified that the first part of his body to hit the guardrail was his back; (Brown Transcript, p. 180, Ex. D)

**Plaintiffs' response**: Plaintiffs admit that the first part of his body that Brown remembers hitting the guardrail is his back. However, defendant has mischaracterized his testimony. Brown specifically stated at the referenced page 180, that he did not know what the first point of his body was to hit the guardrail, but that the first point he remembered hitting the guardrail was his back.

20. The sewer manhole cover that Brown alleges caused him to lose control of his motorcycle is located approximately 102 feet from utility pole 16/37 and 13 inches from the end of the pavement of Hartwell Road. (Burnstine Transcript, pp. 165-166, 248, Ex. E)

**Plaintiffs' response**: Plaintiffs admit that the sewer manhole is located approximately 102 feet from utility pole 16/37. However, the Plaintiffs dispute that the sewer manhole caused him to lose control of his motorcycle. *See infra* PAUMF, ¶ 8. Also, the defendant has mischaracterized the testimony of Mr. Burnstine at the referenced pages regarding the distance from the sewer manhole to the edge of the pavement. Mr. Burnstine testified at the referenced page 165-166 that utility pole 16/37 is 13 inches from the side of the road; he did not testify that the sewer manhole is 13 inches from the edge of the roadway. (Burnstine, pp. 165-166, Ex. E).

21. Brown testified that his head hit utility pole 16/37; (Brown Transcript, p. 185, Ex. D)

**Plaintiffs' response**: Undisputed.

22. Brown had passed over this section of Hartwell Road on many occasions prior to January 4, 2002; (Brown Transcript, p. 193, Ex. D)

**Plaintiffs' response**: Undisputed.

23. Brown testified that he usually attempted to avoid the sewer manhole cover when driving either his motorcycle or his truck along this section of Hartwell Road prior to January 4, 2002; (Brown Transcript, p194-195, Ex. D)

**Plaintiffs' response**: Undisputed.

24. Brown testified that he had observed the area of the sewer manhole and had made a habit of avoiding it prior to January 4, 2002; (Brown Transcript, p. 319, Ex. D)

**Plaintiffs' response**: Undisputed.

25. Brown testified that, prior to January 4, 2002, he was concerned that riding over the sewer manhole would cause an accident; (Brown Transcript, p.320, Ex. D)

**Plaintiffs' response**: Plaintiffs admit that Brown was concerned prior to January 4, 2002, that riding in the area of the sewer manhole may cause an accident. However, defendant has mischaracterized Brown's testimony in that he testified at the referenced page 320 that it was the depression that he was concerned may cause an accident. (Brown Transcript, pp. 319-320, Ex. D).

26. Brown testified that it was his understanding that the sewer manhole on Hartwell Road caused him to lose control of his motorcycle; (Brown Transcript, p. 390, Ex. D)

**Plaintiffs' response**: Undisputed, except that Brown testified at the referenced page 390 that it was the manhole and the road depression that caused him to lose control.

27. Brown testified that he would have hit the guardrail whether or not he jumped off his motorcycle; (Brown Transcript, p. 572, Ex. D)

**Plaintiffs' response**: Undisputed, except that Brown testified at the referenced page 572 that he "pushed" off the motorcycle; he did not testify that he "jumped" off it.

28. Brown testified that he had observed utility pole 16/37 prior to January 4, 2002; (Brown Transcript, p.320)

**Plaintiffs' response**: Undisputed.

29. Brown testified that he did not see utility pole 16/37 when he picked the guardrail as his "aim point"; (Brown Transcript, p.336, Ex. D)

**Plaintiffs' response**: Undisputed.

30. The utility pole at issue is jointly owned by Boston Edison and Verizon pursuant to a Joint Ownership Agreement between them. Pursuant to this Agreement, Boston Edison is responsible for the maintenance of the pole. Each of the attaching parties is

responsible for the care and maintenance of their own attachments; (Roche Affidavit, ¶8, Ex. B)

    **Plaintiffs' response**: Undisputed.

31. Utility pole 16/37 is one of many poles located along Hartwell Road, Bedford, Massachusetts. (Certified Copy of Town of Bedford's records, Ex. J)

    **Plaintiffs' response**: Undisputed.

32. In 1916, the Town of Bedford, Massachusetts granted Boston Edison's predecessor and the telephone company's predecessor the right to install a pole line along Hartwell Road. (Certified Copy of Town of Bedford's records, Ex. J)

    **Plaintiffs' response**: Undisputed.

33. In accordance with the Grant of Location issued by the Town of Bedford, Boston Edison installed pole 16/37 in 1916 and replaced pole 16/37 in 1929, 1954 and 1964 in the ordinary course of business. (Dion Transcript, p. 33-35, Ex. F; Roche Affidavit, ¶¶ 3,4, Ex. B; Certified Copy of Town of Bedford's records, Ex. J)

    **Plaintiffs' response**: Undisputed.

34. Boston Edison has no information and no records of utility pole16/37 ever having been involved in an accident or ever having been damaged; (Roche Affidavit, ¶6, Ex. B; Boston Edison's Answers to Plaintiff's Interrogatories, No. 20, Ex. C)

    **Plaintiffs' response**: Undisputed.

35. Utility pole 16/37 which is the subject of this lawsuit has been located at the spot where plaintiff's accident occurred since at least 1964; (Roche Affidavit, ¶4, Ex. B; Boston Edison's Responses to Request for Admissions, No. 3, Ex. G)

    **Plaintiffs' response**: Undisputed.

36. Boston Edison does not know who installed the guardrail where plaintiff's accident occurred or when it was installed; (Boston Edison's Answers to Plaintiff's Interrogatories, No. 4, Ex. C)

   **Plaintiffs' response**: Undisputed.

37. There are over 409,000 overhead electric poles that are either jointly or solely owned in the electric service territory; (Roche Affidavit, ¶7, Ex. B)

   **Plaintiffs' response**: Undisputed.

38. At the time of his accident on January 4, 2002, Brown's parents lived in New Jersey and provided Brown with no financial support. (James Brown Transcript, p. 83, Ex. H; Barbara Brown Transcript, p. 53, Ex. I)

   **Plaintiffs' response**: Undisputed.

39. Almost all of Brown's medical care and medical supplies have been paid for by the United States of America because of his status as a military veteran. (Brown Transcript, p.251, Ex D)

   **Plaintiffs' response**: Undisputed.

40. To the extent Brown has incurred any expenses beyond that paid by the United States of America, Brown has met those expenses on his own; (Brown Transcript, p. 252-255, Ex. D)

   **Plaintiffs' response**: Disputed. Brown's rent and telephone are paid by his parents, and his parents also paid for renovations on their home, where Brown lives, to make it handicap accessible. See infra PAUMF, ¶ 18.

41. Brown's parents have not paid for any of Brown's medical treatment since the accident and Brown is not financially dependent upon them for his medical care. (James

Brown Transcript, p. 106-107, 109, Ex. H; Barbara Brown Transcript, p. 61-63, Ex. I; Brown Transcript, pp. 252-255; Ex. D)

**Plaintiffs' response**: Undisputed.

42. Upon termination of inpatient treatment after the accident, Brown moved home with his parents. Brown receives a monthly tax-free stipend from the United States government of approximately $5,000. Brown's parents monthly mortgage is $1,000 per month. While the Brown's do not charge rent, Mr. Brown pays the gas and electric bills and purchases the food for the household. . (James Brown Transcript, p. 105-106, Ex. H; Barbara Brown Transcript, p. 61-63, Ex. I; Brown Transcript, p. 264, Ex. D)

**Plaintiffs' response**: Undisputed.

43. With the exception of occasional gifts from his parents, Brown purchases all of his own clothing and supplies and pays for his continuing education courses. (Brown Transcript, p. 264, Ex. D)

**Plaintiffs' response**: Undisputed.

## II.   PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS

1. Hartwell Road is a two-lane road that passes through a mixture of civilian residential and commercial buildings, with a speed limit of 25 miles per hour. Exhibit 1-*Deposition of Adrienne St. John* ("*St. John Dep.*"), pp. 43-51, 182.

2. When the Town of Bedford, Massachusetts granted Boston Edison's predecessor and the telephone company's predecessor the right to install a pole line along Hartwell Road, it directed that the utilities had the right to set the poles substantially at the points

indicated upon the plan that was filed with the grant of permission. <u>Defendant Boston Edison's Motion for Summary Judgment</u> ("<u>BEMSJ</u>"), Exhibit J at page numbered 73.

3. At the time of plaintiff's accident, pole 16/37 was located on the outside of a curve, and thirteen inches from the edge of the roadway. Exhibit 2 – *Deposition of Murray Burnstine* ("*Burnstine Dep.*") at p. 165-166.

4. In approximately 1990, a guardrail was erected behind pole 16/37. At the time of the occurrence, the pole was located between the guardrail and Hartwell Road, within six inches of the pole. Exhibit 3-*Deposition of Armand Oullette* ("*Oullette Depos.*"), p. 34, 51; Exhibit 4- *Defendant Boston Edison Company's Response to Plaintiff Ian J. Brown's Request for Admissions*, Nos. 7, 8.

5. Pole 16/37 was located near 180 Hartwell Road. Exhibit 5- *Deposition of Tracy Cook* ("*Cook Depos.*"), pp. 12-13, 30, 91-94 & ex.1.

6. During the approximately eight years preceding the day of the subject incident, January 4, 2002, there were at least twenty-eight motor vehicle accidents on Hartwell Road in the area of 180 Hartwell Road. Exhibit 6 - *Certified Copy of Town of Bedford Police Department records*.

7. On January 4, 2002, Plaintiff Ian Brown was riding his motorcycle on Hartwell Road back to his office at Hanscom Air Force Base when he lost control of the motorcycle. Exhibit 7- *Deposition of Ian Brown* ("*Brown Depos.*"), pp. 154, 163-164.

8. Plaintiff lost control of his motorcycle in the area of a depression in the roadway, after exiting the depression. The depression surrounded a manhole cover in the road. <u>Id</u>. at 167-168, 193.

9. In the area where Plaintiff lost control of his motorcycle, Hartwell Road curves to the left. Id. at p. 371.

10. Plaintiff was traveling at about 25 mph at the time of the accident. Id. at 167-168, 512-513.

11. Once Plaintiff lost control, the motorcycle proceeded towards the guardrail on the right side of the road, with him still on it. His right shoulder and hip made contact with the guardrail. Plaintiff, still on his motorcycle, was then traveling parallel to the guardrail. As the motorcycle started to fall over, Plaintiff pushed off the motorcycle and aimed his body for the guardrail. He came off the motorcycle head first, and slid along the guardrail, which directed him into pole 16/37. Exhibit 2- *Burnstine Depos.*, pp. 113-114, 120-121; Exhibit 7- *Brown Depos.*, pp. 178-180, 331-334, 377-379.

12. Without the presence of the guardrail, Plaintiff would not have hit utility pole 16/37. IBID.

13. As a result of striking pole 16/37, Plaintiff was rendered paraplegic. Exhibit 8 *Affidavit of Mariusz Ziejewski.*[1]

*14.* Pole 16/37 is located on the right side of Hartwell Road approximately 104 feet beyond the location where Brown lost control of the motorcycle. Exhibit 2-*Burnstine Dep.*, p. 248; Exhibit 7-*Brown Depos,* pp. 167-168, 193; Exhibit 5- *Cook Depos.*,& ex.1

15. The accident happened in the area of 180 Hartwell Road, Bedford, Massachusetts. Exhibit 5- *Cook Depos*, pp. 12-13, 30, 91-94 & ex.1.

16. The primary purpose of roadside barriers such as guardrails is to prevent vehicles from leaving the roadway and striking a fixed object that is considered more

---

[1] Although there will be an issue at trial as to the specific cause of Plaintiff Ian Brown's injuries, for purposes of this motion for summary judgment defendant has not disputed plaintiffs' claim that Brown's hitting pole 16/37 caused his injuries.

objectionable than the guardrail. This is accomplished by the guardrail's containing and redirecting errant vehicles away from roadside obstacles. Exhibit 9- *Certified Copy of Commonwealth of Massachusetts Highway Design Manual, Massachusetts Highway Department Metric Edition 1997*, Sections 1.1 and 9.3; Exhibit 2-*Burnstine Depos.*, pp. 170, 172-174.

17. Plaintiff purchased the motorcycle he was riding at the time of the occurrence on July 6, 2001. Exhibit 7- *Brown Depos.*, p. 297-298.

18. Plaintiff Ian Brown lives at home with his parents. His parents, plaintiffs Barbara Brown and James Brown, incurred approximately $13,000 in expenses in upgrading their home to accommodate their wheel chair bound son, including constructing handicap-accessible deck ramps, widening their driveway to accommodate a wheel chair alongside parked cars, and expanding a bathroom for wheel chair accessibility. In addition, plaintiff Ian Brown lives rent-free at his parents' home. He uses his parents' telephone but does not pay for it. Exhibit 10- *James Brown Deposition* ("*J. Brown Depos.*"), pp.66-67; Exhibit 11- *Barbara Brown Deposition* ("*B. Brown Depos.*"), pp. 20, 22-23, 63, 114; and Exhibit 7- *Brown Depos.*, pp. 7.

                Respectfully submitted,

                **The Plaintiffs,**
                **IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,**
                By their attorney,

                /s/
                _____
                Scott E. Charnas, BBO No. 081240
                Manheimer & Charnas, LLP
                210 Commercial Street
                Boston, MA 02109
                (617) 557-4700

Date:   April 18, 2007

## CERTIFICATE OF SERVICE

I, Scott E. Charnas, hereby certify that on the 18th day of April, 2007, I caused a copy of the foregoing to be served, by electronic filing upon Anita Johnson, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, Joshua Lewin, Esquire, Prince, Lobel, Glovsky & Tye, LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114, and Michael K. Callahan, Esquire, NSTAR Electric, Prudential Tower, 800 Boylston Street, Boston, MA 02199.

/s/
_____
Scott E. Charnas