UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>    Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC'S MOTION FOR SUMMARY JUDGMENT

Now come Plaintiffs, Ian J. Brown, James Brown, and Barbara Brown (collectively, "the Plaintiffs", and, pursuant to Fed.R.Civ.P. 56 and Local Rules (D. Mass) 7.1 and 56.1, file this memorandum in support of their opposition to the Motion for Summary Judgment that has been filed by Defendant Boston Edison Company d/b/a NSTAR Electric(hereinafter referred to as "Boston Edison").

### STATEMENT OF FACTS

Hartwell Road in Bedford, Massachusetts is a two-lane road with a speed limit of 25 miles per hour. Plaintiff' Additional Undisputed Material Facts ("PAUMF"), ¶ 1. It passes through a mixture of civilian residential and commercial buildings. IBID. In 1916, predecessors of Defendants Verizon New England, Inc. ("Verizon") and Boston Edison

were given permission by the Town of Bedford to erect and install utility poles along Hartwell Road. Defendant Boston Edison's Concise Statement of Material Facts ("BECSMF"), ¶ 32. The Town ordered the poles to be placed, "substantially at the points indicated upon the plan made by W.H. Cole, dated January 27, 1916 and to be filed with this order." PAUMF, ¶ 2. One of the poles placed pursuant to the Town's order was pole 16/37. BECSMF, ¶ 33. Pole 16/37 has been replaced several times over the years, the latest being 1964, but always in the same spot. BECSMF, ¶¶ 33, 35. At the time of the subject incident, pole 16/37 was jointly owned by defendant Boston Edison and defendant Verizon. BECSMF, ¶ 30. Defendant Boston Edison was responsible for maintaining the pole. IBID. At the time of plaintiff's accident, pole 16/37 was located on the outside of a curve, thirteen inches from the edge of the roadway. PAUMF, ¶ 3.

In approximately 1990, a guardrail was erected behind pole 16/37. PAUMF, ¶ 4. Pole 16/37, located between the guardrail and Hartwell Road, was six inches from the guardrail. PAUMF, ¶ 5. The pole was located near 180 Hartwell Road. PAUMF, ¶ 5.

The primary purpose of roadside barriers such as guardrails is to prevent vehicles from leaving the roadway and striking a fixed object that is considered more objectionable than the guardrail. This is accomplished by the guardrail's containing and redirecting errant vehicles away from roadside obstacles. PAUMF, ¶ 16.

During the approximately eight years preceding the day of the subject incident, January 4, 2002, there were at least twenty-eight motor vehicle accidents on Hartwell Road in the area of 180 Hartwell Road. PAUMF, ¶ 6.

On January 4, 2002, Plaintiff Ian Brown was riding his motorcycle on Hartwell Road back to his office at Hanscom Air Force Base when he lost control of the

motorcycle. PAUMF, ¶ 7. Plaintiff lost control of his motorcycle in the area of a depression in the roadway, after exiting the depression. The depression surrounded a manhole cover in the road. PAUMF, ¶ 8. The area where he lost control curves to the left. PAUMF, 9. He was traveling at about 25 mph at the time of the accident. PAUMF, ¶ 10.

Once Plaintiff lost control, the motorcycle proceeded towards the guardrail on the right side of the road, with him still on it. His right shoulder and hip made contact with the guardrail. Plaintiff, still on his motorcycle, was then traveling parallel to the guardrail. As the motorcycle started to fall over, Plaintiff pushed off the motorcycle and aimed his body for the guardrail. He came off the motorcycle head first, and slid along the guardrail, which directed him into pole 16/37. PAUMF, ¶ 11.

Pole 16/37 is located on the right side of the road approximately 104 feet beyond the location (i.e. depression in the roadway) where Plaintiff lost control. PAUMF, ¶ 14. The accident occurred in the area of 180 Hartwell Road. PAUMF, ¶ 15.

Plaintiff would not have hit pole 16/37 if the guardrail had not been present. PAUMF, ¶12. As a result of striking pole 16/37, Plaintiff was rendered paraplegic. PAUMF, ¶ 13.

Plaintiffs Barbara Brown and James Brown, Plaintiff Ian Brown's parents, support their son by allowing him to live in their house rent-free, by having spent approximately $13,000 to make their home wheel chair accessible for their son, and by letting him use the telephone without paying for it. ¶ 18.

## LEGAL ARGUMENT

### A.   Summary Judgment Standard

Summary judgment is disfavored in negligence proceedings. "[U]sually 'the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury." *Marquez v. Home Depot USA, Inc.,* (154 F.Supp.2d 152, 156 (D.Mass. 2001), quoting *Irwin v. Town of Ware,* 392 Mass. 745, 764, 467 N.E.2d 1292 (1984) (internal quotations and citations omitted) In fact, "[b]ecause 'application of the reasonable person standard is uniquely within the competence of the jury,' summary judgment is rarely granted in negligence actions." *Davis v. Protection One Alarm Monitoring, Inc.,* 456 F.Supp.2d 243, 249 (D.Mass. 2006), quoting *DeVaux v. American Home Assur. Co.,* 387 Mass. 814, 819, 444 N.E.2d 355 (1983).

Stated differently, "[b]ecause juries are uniquely qualified to apply the reasonable person standard and to decide questions of causation, a plaintiff usually is afforded the right to have his [negligence] claim tried before a jury." *O'Connor v. SmithKline Bio Science Laboratories, Inc.* 631 N.E.2d 1018, 1020 (Mass. App. 1994), citing *Johnson v. Summers,* 577 N.E.2d 301 ( Mass. 1991); *Foley v. Matulewicz,* 459 N.E.2d 1262 (Mass. App. 1984); *Noble v. Goodyear Tire & Rubber Co.,* 612 N.E.2d 250 (Mass App. 1993). See, also, *Moose v. Massachusetts Institute of Technology,* 683 N.E.2d 706, 710 -711 (Mass.App. 1997) ("The question whether the risk of injury was foreseeable is almost always one of fact.")

Moreover, "[i]n deciding a summary judgment motion, we must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor." *Sparks v. Fidelity Nat. Title Ins. Co.*, 294 F.3d 259, 265 (1st Cir. (Mass.) 2002), citing *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993).

### B. Boston Edison's negligence is, at a minimum, a question of fact that precludes summary judgment

As an initial matter, a defendant utility company may have a duty to a plaintiff motorist who collides with a utility pole on the side of the highway, if the collision was foreseeable. More specifically, the Supreme Judicial Court has made clear that, within the context of the duty of utility companies for motor vehicle accidents involving utility poles, a utility company that is responsible for maintaining a utility pole "must anticipate the environment in which its [utility pole] will be used, and it must design against the reasonably foreseeable risks attending the [utility pole's] use in that setting." *Bernier v. Boston Edison Co.*, 403 N.E.2d 391, 395 (Mass. 1980), quoting *Back v. Wickes Corp.*, 378 N.E.2d 964, 969 (Mass. 1978). See, also, *Marino v. NYNEX*, 1995 WL 809985, *3 (Mass.Super. 1995) (in the course of denying motion for summary judgment filed by defendant utility company, court held that utility could be liable for roadside accidents involving utility poles "where unique circumstances attendant to the placement of the pole render the collision in question something more than random"); *Nelson v. Duquesne Light Company*, 338 Pa. 37, 12 A.2d 299, 303 (1940) (erection and placement of utility pole in the area of a roadway amounts to negligence if "it was under the circumstances something which it was imprudent and unreasonable to have there"). See, also, *Afrarian v. Massachusetts Electric Company*, Civ. No. 99-1852, pp. 7, 9-10 (Suffolk Sup. Ct.

January 3, 2003) (Haggerty, J.) (appeal pending) (utility company may be liable in negligence for collision with utility pole, if the circumstances pertinent to the specific pole – such as the condition and topography of the road, the proximity of the pole to the traveled portion of the road, and the experience and accident history involving the pole – render it foreseeable that such a collision would occur).

Moreover, and significantly, the issue of foreseeability is an inherently fact-specific inquiry that typically renders summary judgment inappropriate. See, e.g., *Moose v. Massachusetts Institute of Technology*, 683 N.E.2d 706, 710 – 711 (Mass.App.Ct. 1997) ("The question whether the risk of injury was foreseeable is almost always one of fact."). Similarly, courts applying Massachusetts law repeatedly have affirmed that accidents involving utility poles may present issues of fact that should be resolved by a jury. See, e.g., *Bernier v. Boston Edison Co.*, 403 N.E.2d 391, 395 (Mass. 1980) (defendant utility company not entitled to judgment notwithstanding the jury verdict, because the jury rationally determined that utility company negligently designed and maintained utility pole that injured plaintiffs); *Marino v. NYNEX*, 1995 WL 809985, *3 (Mass.Super. 1995) (defendant utility company not entitled to summary judgment on claim that it negligently placed utility pole that caused plaintiff's injuries).

Given this clearly established duty to shield motorists from foreseeable collisions with utility poles, Boston Edison's contention that the Plaintiffs' claims of negligence present an issue of law that can be dismissed through summary judgment is demonstrably incorrect, because, as discussed in more detail below, the facts pertinent to this matter establish that (1) the dangerous conditions that caused Ian Brown's accident were both unique and foreseeable to Boston Edison and (2) Boston Edison was negligent in not

taking steps to eliminate these dangerous conditions. See *Bernier*, 403 N.E.2d 391, 400 (trial judge correctly instructed jury that defendant utility "had a duty 'to install or to maintain or use electric light poles in such a manner and of such a design or composition that they will not create an unreasonable risk of injury to people who are lawfully using the streets and the sidewalks.'").

> 1. **Plaintiff Ian Brown's collision with Pole 16/37 clearly was foreseeable, especially in light of the unique circumstances involving placement of the pole**

Boston Edison's assertion that, in order to recover against Boston Edison, Plaintiffs must prove that Boston Edison should have foreseen Ian Brown's accident exactly as it occurred, ignores the principle that "[i]t is only the risk which results in the harm that must be reasonably foreseeable, not the precise manner of the accident or the extent of the harm." *Moose*, 683 N.E.2d at 710. In fact, Plaintiffs need only establish that "unique circumstances attendant to the placement of the pole render[ed] the collision in question something more than random." *Marino v. NYNEX*, 1995 WL 809985, *3 (Mass.Super. 1995) (defendant utility company not entitled to summary judgment because question of fact exists as to whether collision with utility pole was foreseeable), citing *Caldwell v. Commonwealth*, 548 A.2d 1284, 1286 (Pa.Commlth. 1988); *Boylan v. Martindale*, 431 N.E.2d 62, 70-71 (Ill.App. 1982)

In this particular matter, the "unique circumstances" that render Ian Brown's accident "something more than random" include, without limitation, the close proximity of Pole 16/37 to a curved section of two-lane Hartwell Road that was the scene of 28 motor vehicle accidents in the eight years prior to the subject incident, the placement of Pole 16/37 on an outside curve and only thirteen inches from the edge of the roadway, the

unusual placement of Pole 16/37 between the road and the guardrail, and the placement of Pole 16/37 only six inches away from that guardrail that is designed to channel or deflect errant vehicles from leaving the roadway. Boston Edison stresses that Pole 16/37 was initially erected in 1916 and there is no record of it having been struck by a motorist prior to Ian Brown's accident, but that line of argument ignores the fact that the guardrail that channeled Mr. Brown into Pole 16/37 had been in place only since 1990.

In sum, the unique circumstances surrounding Pole 16/37 establish that a jury could reasonably find that Boston Edison should have foreseen that a motorist eventually would have an accident within the vicinity of Pole 16/37 and that the guardrail would channel the motorist into Pole 16/37 that was absurdly left on the road-side of the guardrail and six inches away from it. At a minimum, the Plaintiffs are entitled to submit this issue to a jury.

Further support for the proposition that the facts of this case justify denial of summary judgment is found in the principles enunciated in §368 of the Restatement (Second) of Torts, referenced in *Afrarian, supra*, which states:

Conditions Dangerous to Travelers on Adjacent Highway

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> > (a)   Are traveling on the highway, or
> > (b)   Forseeably deviate from it in the ordinary course of travel.

As Boston Edison concedes in its motion, "Section 368 is routinely extended to utility pole owners whose pole is set on land owned by a town or municipality." The facts set

8

forth above clearly establish that such an application of Section 368 is appropriate in this proceeding, since (1) Boston Edison's allowance of a clearly dangerous condition (i.e., a utility pole only thirteen inches from the roadway, on the outside of a curve, with a guardrail located six inches <u>behind</u> the pole and which would channel motorists into the pole) to exist for approximately twelve years, and (2) the prior accident history at the locus, 180 Hartwell Road, rendered it reasonably foreseeable that a vehicle and its occupant would deviate from the road at that location, hit the guardrail, and be channeled into the subject pole.

In addition to the guidance from Massachusetts courts noted above, the Plaintiffs' right to present their claims against Boston Edison to a jury is amply supported by case law throughout the nation. <u>See</u>, <u>e.g.</u>, *McMillan v. State Highway Com'n,* 426 Mich. 46, 61-62, 393 N.W.2d 332, 338 – 339 (Mich. 1986) (in case involving plaintiff who was injured when the car in which she was riding as a passenger was run off the road by a hit-and-run driver and struck a utility pole, Supreme Court of Michigan held that defendant utility company was not entitled to summary judgment because "we are persuaded that the plaintiff should not be precluded, as a matter of law, from presenting her case to the jury. The question whether a duty exists, and the question whether the cause (here, the placement of the poles) was so significant and important to be regarded as a proximate cause of the plaintiff's loss, depends in part on foreseeability-whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable"); *Mississippi Power & Light Co. v. Lumpkin,* 725 So.2d 721, 730 (Miss. 1998) (Supreme Court of Mississippi held that defendant utility company not entitled to summary judgment in claim brought by plaintiff

motorist who struck utility pole, because whether utility company should have foreseen danger in light of pole's location, the condition and curvature of the road, and the existence of a prior accident was a question of fact for jury to resolve); *George v. City of Los Angeles*, 11 Cal.2d 303, 312, 79 P2d. 723 (Cal. 1938) (defendant utility company not entitled to summary judgment on claim of negligence brought by plaintiff motorist who struck utility's poles, because plaintiff's claim presented a question of fact to be resolved by a jury); *Peninsular Telephone Co. v. Marks*, 144 Fla. 652, 657-658, 198 So. 330, 332 (Fla.1940) (issue of whether "defendant [utility company] should have reasonably anticipated that a pole erected and maintained by it at a point near a paved portion of the street at the beginning of a sharp left curve would be dangerous or unsafe for the traveling public in the use of said street or highway" was a question fact properly placed before a jury to resolve).

Finally, while Boston Edison notes that Pole 16/37 was placed in its current location pursuant to a license issued by the Town of Bedford, that particular fact is not relevant to the issue of Boston Edison's negligence. The Supreme Judicial Court repeatedly has declared "[i]t is settled that a license does not immunize the licensee from liability for negligence or nuisance which flows from the licensed activity." *Lummis v. Lilly*, 429 N.E.2d 1146, 1150 (Mass. 1982). See, also, *Hub Theatres, Inc. v. Massachusetts Port Authority*, 346 N.E.2d 371, 374 (Mass. 1976) (even if licensed by governmental authority, a business or activity is "subject always to the qualification that the business must be carried on without negligence or unnecessary disturbance of the rights of others"). Also, the license granted by the Town of Bedford allowed the utilities to place the pole in *"substantially"* the locations set out on a plan that accompanied the

license. (Emphasis added). Thus, defendant Boston Edison chose to set the pole, within the license requirements, precisely where it did. Based on changed circumstances (i.e. the guardrail installation) it could, and should, have moved the pole, and would still have been "substantially" in the location prescribed by the license.

### 2. The Plaintiffs' claims against Boston Edison are supported by considerations of public policy

Plaintiff Ian Brown suffered catastrophic, and life-long, injuries when he was channeled by a guardrail directly into Pole 16/37. The Plaintiffs are not alleging that every utility pole placed and/or maintained by Boston Edison alongside a roadway is negligently placed and/or maintained; rather, they are alleging that, under the unique circumstances outlined above, Boston Edison was negligent for not relocating Pole 16/37 within the terms of its license, once the guardrail was placed behind it and six inches away.

Boston Edison relies upon two decisions, neither of which was issued by a Massachusetts court or involves Massachusetts law, in support of its argument that the Plaintiffs' claims against Boston Edison should be barred by considerations of public policy. Neither of those cases involved facts even remotely similar to the facts at issue in this matter, such as a dangerously placed guardrail that channeled Ian Brown into Pole 16/37. Perhaps more significantly, neither of these decisions endorse outright immunity for utility companies on the basis of public policy considerations. See *Coates v. Southern Maryland Elec. Co-op., Inc.*, 354 Md. 499, 524, 731 A.2d 931, 944 (Md. 1999)("We do not wish, or intend, to establish a law that provides an absolute immunity for utility companies and gives them no incentive to use due care in the placement of their poles."); *Gouge v. Central Illinois Public Service Co.*, 144 Ill.2d 535, 544, 582 N.E.2d 108, 113,

163 Ill.Dec. 842, 847 (Ill. 1991) (utility companies may owe duty of care to motorists who collide with utility poles, if "it is reasonably foreseeable that the vehicles would leave the roadway in the ordinary course of travel and strike the utility poles.")

Moreover, Boston Edison's apparent endorsement of blanket immunity for its negligence, on the grounds that it is a utility company that provides a necessary commodity, ignores the Supreme Judicial Court's clear pronouncement that utility companies should, indeed, be held liable for the negligent placement and maintenance of their utility poles. See, e.g., *Bernier v. Boston Edison Co.*, 403 N.E.2d 391, 398 (Mass. 1980), quoting *Back v. Wickes Corp.*, 378 N.E.2d 964, 970 (Mass. 1978) ("jury could rationally find negligence [by defendant Boston Edison] of design and maintenance" of its utility pole, noting that "'[i]n balancing all the pertinent factors, the jury made a judgment as to the social acceptability of the design'" of the pole).

Finally, other jurisdictions clearly have repudiated the suggestion that utility companies should be immune from liability on public policy considerations. See, e.g., *Scheel v. Tremblay,* 226 Pa.Super. 45, 47, 312 A.2d 45, 46 (Pa.Super. 1973) ("It has long been the law in this and other jurisdictions that utility companies are liable for harm caused by the negligent placement and maintenance of utility poles."); *Mississippi Power & Light Co. v. Lumpkin,* 725 So.2d 721, 730 (Miss. 1998) ("Today we adopt a standard which requires those who place structures in rights-of-way pursuant to the statute to exercise reasonable care under the circumstances for the safety of those making common use of the right-of-way. It shall not be a bar to liability that contact with the structure occurs only after the driver, through misfortune or ordinary negligence, has left the main traveled portion of the right of way.")

C.  **The Massachusetts Statute of Repose, which is codified at M.G.L. c. 260, §2B, is not applicable to this matter and, consequently, does not bar the Plaintiffs' claims against Boston Edison.**

Despite Boston Edison's admitted duty to maintain the utility pole, Boston Edison asserts that the Massachusetts Statute of Repose, which is codified at M.G.L. c. 260, §2B and pertains to claims involving the "design, planning, construction, or general administration of an improvement to real property", somehow shields it from liability.

As addressed in more detail below, Boston Edison's reliance upon the Statute of Repose is wholly without merit, because, without limitation, (1) the Plaintiffs' claims do not involve any allegation of negligence in the "design, planning, construction or general administration of an improvement to real property" and therefore the statute is inapplicable, and (2) even if applicable generally, the utility pole does not, as a matter of law, constitute the type of "improvement to real property" that falls within the scope of the statute.

1.  **As the Plaintiffs do not allege that Boston Edison was negligent in the design, planning, construction, or general administration of Pole 16/37, the Statute of Repose is not applicable**

The Plaintiffs do not allege that Pole 16/37 was negligently designed, planned, constructed or administered in 1916; rather, they allege that the dangerous condition did not arise until the guardrail was erected in 1990, and that defendant Boston Edison negligently failed to correct this dangerous condition. Stated differently, the Plaintiffs' claims are based upon acts or omissions by Boston Edison that (1) did not and could not have occurred until more than seventy years after Pole 16/37 was erected, (2) are wholly unrelated to the processes under which the pole was originally sited, and (3) were ongoing at the time Ian Brown suffered his accident.

As explained by the Appeals Court in *Coca-Cola Bottling Company of Cape Cod v. Weston & Sampson Engineers, Inc.*, 695 N.E.2d 688, 694 (Mass. 1998), the Statute of Repose does not protect an entity that negligently fails to repair a defect in an improvement to real property "long after the last punch list was satisfied and all professionals [involved in the design and construction of the improvement] paid and released," because that entity was not engaged in the type of activity (e.g., construction, design, planning, or general administration of an improvement to real property) that is protected under the statute. The Appeals Court used the hypothetical illustration of a "plumber who negligently repairs a plugged soil line long after the last punch list was satisfied and all professionals paid and released" to explain the limitations of the Statute of Repose, by noting that such a plumber would not be protected under the statute. *Id.*

Similarly, in the instant matter, the erection of the guardrail is analogous to the development of a dangerous crack in Pole 16/37. If the allegation were that the crack developed as a result of design or construction deficiencies when the pole were erected in 1916, clearly the claim would be barred by the Statute of Repose. But if the claim were that the crack developed over time unrelated to original design or construction, but that Boston Edison was negligent in its maintenance once the crack appeared, clearly the statute would be inapplicable. Boston Edison could not reasonably argue that the Statute of Repose would absolve it of any liability to repair such a crack, and, similarly, it cannot reasonably rely upon the Statute of Repose to absolve it of liability for failing to remedy the dangerous, and ongoing, condition caused by erection of the guardrail alongside, and on the "wrong side", of the pole.

Moreover, Boston Edison cannot successfully argue that it is shielded from liability because it was involved in the "general administration" of Pole 16/37, because the *Coca-Cola* court has established that "general administration", within the context of the Statute of Repose, refers to "uninterrupted, post-construction professional activities which the defendant performed in an effort to remedy unsatisfactory conditions that were revealed postconstruction." *Id.*, at 693. This definition clearly does not encompass, or in any way limit, Boston Edison's continuing duty to remedy a dangerous condition – such as a pole that becomes cracked or a pole that is rendered unreasonably dangerous by the foolish placement of a guardrail six inches away and on the wrong side of the pole.

In sum, the Statute of Repose is not applicable to this proceeding, because the Plaintiffs' claims are not based upon Boston Edison's involvement in the design, planning, construction, or general administration of Pole 16/37. Indeed, the Plaintiffs do not even allege any negligence associated with the "design, planning, construction, or general administration" of Pole 16/37, as those terms are contemplated in the statute of Repose. Simply put, Boston Edison's reliance upon the Statute of Repose is a red herring designed to obscure the fact that Boston Edison negligently failed to remedy a dangerous condition that arose while Boston Edison was admittedly responsible for maintaining Pole 16/37. By contrast, the *Afrarian* court was faced with a claim involving the issue of the original placement of a pole, wherein the court specifically noted that, at the time the pole was originally sited and installed, the defendant's engineers visited the location site of the pole and "provided the necessary engineering for the installation of the pole", and, consequently, "[t]he act of engineering and installation of [the pole] is a protected act covered by G.L. c. 260, §2B"). Here, in the case at bar, the allegation is that, decades

after the original pole placement, defendant Boston Edison, with an ongoing maintenance responsibility for the pole, was negligent for not relocating the pole based on changed circumstances, i.e. the guardrail placement.

> **2. The utility pole that Plaintiff Ian Brown struck does not constitute "an improvement to real property", as that term is contemplated in the Statute of Repose**

As noted above, the Statute of Repose is not applicable to this litigation because the alleged negligence of Boston Edison does not involve "design, planning, construction, or general administration of an improvement to real property" as contemplated by the statute. However, even if this court concluded that it was generally applicable, the Statute of Repose still would not apply to this matter because the relevant utility pole does not, as a matter of law, constitute an "improvement to real property."

The Supreme Judicial Court, in *Milligan v. Tibbetts Engineering Corp.*, 461 N.E.2d 808, 811 (1984) endorsed applying the following Webster's Dictionary definition of "improvement" to an analysis of whether a purported improvement to real property falls within the Statute of Repose:

> a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

This definition of "improvement" makes clear that the utility pole at issue in this litigation is not, as a matter of law, an "improvement to real property" protected by the Statute of Repose. Defendant Boston Edison has adduced no evidence that (1) this particular utility pole enhanced the capital value of the property on which it was located, or (2) this particular utility pole makes the property on which it is located more useful or

valuable. Moreover, the pole is a type of "fungible" good that is not an "improvement" under applicable case law.

Indeed, there is no evidence presented by the defendant as to whether the subject utility pole is used to provide telephone, electric or cable service, directly or indirectly, for the owners of the land upon which it stands. Nor has there been evidence presented as to whether, in fact, the presence of the utility pole enhances, as opposed to diminishes, the value of the real property upon which it stands. In *Afrarian, supra*, the Superior Court concluded that the pole in that case was "...designed to enhance the value of the surrounding neighborhood by providing electrical services." But the inquiry, as set forth above in *Mulligan, supra*, should be whether the property itself is made more useful or valuable. In the case at bar, there has been no evidence presented on this point.

Boston Edison'e reliance upon *Montaup Electric Co. v. Ohio Brass Corp.*, 561 F.Supp. 740 (D.R.I. 1983) for the general proposition that the Statute of Repose applies to electrical lines is inapposite, because, in *Montaup,* the plaintiff was an electric company that alleged the ground wire brackets used in its transmission line were defective.  The court ruled that the statute of repose barred any claim by the electric company against the engineering firm that designed the transmission line, because the transmission line was an improvement that benefited the easements to real property owned by the electric company and used by the electric company to distribute electricity to its customers. *Montaup*, 561 F.Supp. at 748. Conversely, as stated above, Boston Edison has provided no evidence that Pole 16/37 provides a specific benefit (such as, for example, utility services) to the owner of the real property on which it is located, nor has

17

it provided any evidence that it enhances the value of the real property on which it is located.

Indeed, this litigation is more analagous to *Dighton v. Federal Pacific Electric Company*, 506 N.E.2d 509, 515 (1987), in which the Supreme Judicial Court held that an electrical circuit breaker that was incorporated into an apartment building during the construction process did not constitute an "improvement to real property" because the circuit breaker was a moveable good that was not specifically designed for installation into a particular dwelling. *Dighton*, 506 N.E.2d at 516. In reaching this conclusion, the *Dighton* court noted that an item that is mass-produced and not specifically designed for use on a particular piece of real property is, for purposes of the Statute of Repose, more appropriately characterized as a "fungible commodity" than as an improvement to real property covered under the statute. *Id*. See, also, *Snow*, 12 F.3d at 1160-1161 (an item does not constitute an improvement to real property, for purposes of the Statute of Repose, if the item is "fungible" and "appropriate for incorporation into a number of facilities"). Clearly, Pole 16/37 is a fungible item that was not specifically designed for its Hartwell Road location.

In sum, the utility pole at issue in this litigation, which (1) has not been shown to enhance (and may very well have diminished) the value of the real property on which it was located, (2) has not been shown to have provided a specific benefit to the real property on which it was located, and (3) was a fungible item not specifically designed for the real property on which it was located, cannot be characterized, as a matter of law, as an "improvement to real property" that brings the utility pole within the scope of the Statute of Repose.

> D.  There is a Genuine Issue of Material Fact Regarding Plaintiff Ian Brown's Financial Dependence on His Parents, and Therefore Their Right to a Loss of Consortium Claim

As defendant rightly claims, in order for a parent to prevail on a claim for loss of consortium under M.G.L. c. 231, §85X for an adult child, "that child must be, at the very least, financially dependent on his parents, either prior to or after the accident, or both." *Monahan v. Town of Methuen*, 408 Mass. 381, 390, 558 N.E.2d 951 (1990). However, as was stated in *Marino, supra,* the standard as to how financially dependent an adult child must be in order to warrant a loss of consortium claim by his or her parents is ambiguous. In the case at bar, plaintiff Ian Brown lives at home with his parents. His parents, plaintiffs Barbara Brown and James Brown, incurred approximately $13,000 in expenses in upgrading their home to accommodate their wheel-chair bound son, including constructing handicap-accessible deck ramps, widening their driveway to accommodate a wheel chair alongside cars, and expanding a bathroom for wheel chair accessibility. In addition, plaintiff Ian Brown lives rent-free at his parents' home.

Given the dearth of case law on this subject, and the ambiguity as to the standard for financial dependence, the issue of whether there is a viable claim for loss of consortium should go to the jury.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully assert that Boston

Edison's motion for summary judgment should be denied, in its entirety.

Respectfully submitted,

**The Plaintiffs,**
**IAN J. BROWN, JAMES**
**BROWN, and BARBARA BROWN,**
By their attorney,

/s/

Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700 (telephone)

Date:  April 18, 2007

## CERTIFICATE OF SERVICE

I, Scott E. Charnas, hereby certify that on the 18th day of April, 2007, I caused a copy of the foregoing to be served, by electronic filing upon Anita Johnson, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, Joshua Lewin, Esquire, Prince, Lobel, Glovsky & Tye, LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114, and Michael K. Callahan, Esquire, NSTAR Electric, Prudential Tower, 800 Boylston Street, Boston, MA 02199.

/s/

Scott E. Charnas