# EXHIBIT 4

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN and BARBARA BROWN,<br><br>      Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>VERIZON NEW ENGLAND, INC. and<br>BOSTON EDISON COMPANY d/b/a NSTAR<br>ELECTRIC<br><br>      Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## DEFENDANT BOSTON EDISON COMPANY'S RESPONSES TO PLAINTIFF IAN J. BROWN'S REQUEST FOR ADMISSIONS

Pursuant to Mass. R. Civ. P. 36, the Defendant identified as Boston Edison Company hereby submits their responses to Plaintiff's Request For Admissions.

### General Objections

1. The Defendant objects to any Request, or any portion of any Request, which seeks information protected by the attorney/client privilege and/or work product doctrine.

2. The Defendant objects to any Request, or any portion of any Request, which exceeds the scope of discovery allowed by the Massachusetts Rules of Civil Procedure.

3. The Defendant objects to any Request, or any portion of any Request, to the extent it seeks information not relevant to the subject matter of this litigation or not reasonably calculated to lead to the discovery of admissible evidence.

4. The following responses and objections are based upon information now known. The Defendant has not yet completed its discovery or preparation for trial in this action and, therefore, reserves its right to amend, modify, or supplement the objections or responses stated herein.

## RESPONSES

Request No. 1:

The pole, at the time of the occurrence, was located on property of the USA.

Response To Request No. 1:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 2:

The guardrail, at the time of the occurrence, was located on property of the USA.

Response To Request No. 2:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 3:

The pole and/or predecessor pole(s) had been located where the pole was at the time of the occurrence, since at least 1964.

Response to Request No. 3:
Admitted.

Request No. 4:

The pole and/or predecessor pole(s) had been located where the pole was at the time of the occurrence, since at least 1997.

Response To Request No. 4:
Admitted.

Request No. 5:

The guardrail had been located where it was at the time of the occurrence since at least 1986.

2

Response to Request No. 5:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 6:

The guardrail had been located where it was at the time of the occurrence since at least 1997.

Response to Request No. 6:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 7:

At the time of the occurrence, the pole was located between the guardrail and Hartwell Road.

Response to Request No. 7:
Admitted.

Request No. 8:

At the time of the occurrence, the guardrail was located within six inches of the pole.

Response to Request No. 8:
Admitted.

Request No. 9:

An employee or employees of Verizon had inspected the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

Response to Request No. 9:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

3

Request No. 10:

An employee or employees of NSTAR had inspected the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

Response to Request No. 10:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 11:

An employee or employees of Verizon had inspected Verizon's equipment or a portion of that equipment on the pole or predecessor pole(s) on at least one occasion between 1997 and the occurrence.

Response to Request No. 11:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 12:

Verizon was aware, prior to the occurrence, that the pole or predecessor pole(s) was located between the guardrail and Hartwell Road.

Response to Request No. 12:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 13:

NSTAR was aware, prior to the occurrence, that the pole or predecessor pole(s) was located between the guardrail and Hartwell Road.

Response To Request No. 13:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because Boston Edison is not aware of the date of the installation of the guardrail.

Request No. 14:

Verizon was aware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s)

Response To Request No. 14:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 15

NSTAR was aware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

Response to Request No. 15:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 16:

Verizon was unaware, prior to the occurrence, that the pole or any predecessor pole(s) was located between the guardrail and Hartwell Road.

Response to Request No. 16:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

5

Request No 17:

NSTAR was unaware, prior to the occurrence, that the pole or any predecessor pole(s) was located between the guardrail and Hartwell Road.

Response to Request No. 17:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 18:

Verizon was unaware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

Response to Request No. 18:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 19:

NSTAR was unaware, prior to the occurrence, that the guardrail was located within six inches of the pole or predecessor pole(s).

Response to Request No. 19:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 20:

The decision to place the guardrail at the location it was in at the time of the occurrence was made by the USA.

Response to Request No. 20:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 21:

The decision to place the pole where it was located at the time of the occurrence was made by Verizon.

Response to Request No. 21:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because, generally speaking, the municipality provides a Grant of Location for poles within its jurisdiction but Boston Edison has not been able to locate the records relating to the original Grant of Location dating back to 1929.

Request No. 22:

The decision to place the pole where it was located at the time of the occurrence was made by Verizon and NSTAR jointly.

Response to Request No. 22:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because, generally speaking, the municipality provides a Grant of Location for poles within its jurisdiction but Boston Edison has not been able to locate records relating to the original Grant of Location dating back to 1929.

Request No. 23:

The decision to place the pole where it was located at the time of occurrence was made by NSTAR.

Response to Request No. 23:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because, generally speaking, the municipality provides a Grant of Location for poles within its jurisdiction but Boston Edison has not been able to locate the records relating to the original Grant of Location

dating back to 1929.

Request No. 24:

Between at least 1997 and the time of the occurrence, Verizon has the right or authority to remove or cause to be removed, the pole or any predecessor pole from the location it was in at the time of the occurrence.

Response to Request No. 24:
Denied.

Request No. 25:

Between at least 1997 and the time of the occurrence, Verizon and NSTAR, jointly, had the right or authority to remove or cause to be removed, the pole or any predecessor pole from the location it was in at the time of the occurrence.

Response to Request No. 25:
Admitted.

Request No. 26

Between at least 1997 and the time of the occurrence, NSTAR had the right or authority to remove or cause to be removed, the pole or any predecessor pole(s) from the location it was in at the time of the occurrence.

Response to Request No. 26:
Denied.

Request No. 27:

Between at least 1997 and the time of the occurrence, the USA had the right or authority to order or otherwise cause the owner(s) of the pole or any predecessor pole(s) to remove it from the USA's property.

8

Response to Request No. 27:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 28:

Between at least 1997 and the time of the occurrence, the USA had the right or authority to order or otherwise cause the pole or any predecessor pole(s) to be moved to a location on its property other than where it was located at the time of the occurrence.

Response to Request No. 28:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 29:

Verizon recognized the hazard prior to the occurrence.

Response to Request No. 29:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 30:

NSTAR recognized the hazard prior to the occurrence.

Response to Request No. 30:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny that it was aware of the relative locations of the pole and the guardrail because Boston Edison is not aware of the date of installation of the guardrail.

9

Request No. 31:

Verizon did not recognize the hazard prior to the occurrence.

Response to Request No. 31:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 32:

NSTAR did not recognize the hazard prior to the occurrence.

Response to Request No. 32:

Boston Edison denies that the pole and/or its location constituted a "hazard". Further answering, Boston Edison objects to said request on the grounds that it requires Boston Edison to assume facts that are disputed.

Request No. 33:

Prior to the occurrence NSTAR did not believe it had any legal obligation to the monitoring public to fix or otherwise rectify the hazard by moving the pole.

Response to Request No. 33:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison further denies the assumption in the request that Boston Edison was aware of the existence of the guardrail and its relative location to the pole. Subject to and without waiver of those specific denials, Boston Edison admits that it did not believe that it had any legal obligation to the motoring public to move the pole.

Request No. 34:

Prior to the occurrence, Verizon did not believe it had any legal obligation to the monitoring public to fix or otherwise rectify the hazard by moving the pole.

Response to Request No. 34:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 35:

Prior to the occurrence, NSTAR took no action to fix or otherwise rectify the hazard.

Response to Request No. 35:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison further denies the assumption in the request that any action to fix or otherwise rectify the location of the pole was required. Subject to and without waiver of those specific denials, Boston Edison admits that it did not take any action to move the pole.

Request No. 36:

Prior to the occurrence, Verizon took no action to fix or otherwise rectify the hazard.

Response to Request No. 36:

Boston Edison denies that the pole and/or its location constituted a "hazard". Boston Edison further denies the assumption in the request that any action to fix or otherwise rectify the location of the pole was required. Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge.

Request No. 37:

NSTAR was not granted permission by the USA, prior to the occurrence, to place the pole or any predecessor pole(s) in the location the pole was in at the time of the occurrence.

Response to Request No. 37:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

11

Request No. 38:

Verizon was not granted permission by the USA, prior to the occurrence, to place the pole or any predecessor pole(s) in the location the pole was in at the time of the occurrence.

Response to Request No. 38:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge. Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request.

Request No. 39:

No owner of the section of land upon which the pole was located at the time of the occurrence, at any time prior to the occurrence, gave NSTAR permission to place the pole or any predecessor pole(s) at the location.

Response to Request No. 39:

Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because, generally speaking, the municipality provides a Grant of Location for poles within its jurisdiction but Boston Edison has not been able to locate the records relating to the original Grant of Location dating back to 1929.

Request No. 40:

No owner of the section of land upon which the pole was located at the time of the occurrence, at any time prior to the occurrence, gave Verizon permission to place the pole or any predecessor pole(s) at that location.

Response to Request No. 40:

Boston Edison objects to said request on the grounds that it seeks an admission with respect to

facts and/or information within the exclusive control of Verizon and about which Boston Edison has no knowledge. Boston Edison has made reasonable inquiry and the information known or readily obtainable by it is insufficient to enable Boston Edison to either admit or deny the request because, generally speaking, the municipality provides a Grant of Location for poles within its jurisdiction but Boston Edison has not been able to locate the records relating to original Grant of Location dating back to 1929.

Respectfully submitted,
Boston Edison Company,
By its attorney,

Michael K. Callahan
BBO #546660
NSTAR Electric & Gas Corporation
800 Boylston Street, 17th Floor
Boston, MA 02199
617-424-2102

Date: 4/27/06

13