UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>    Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

I.   **Standard for Summary Judgment**

Summary judgment is disfavored in negligence proceedings. "[U]sually 'the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury." *Marquez v. Home Depot USA, Inc.,* (154 F.Supp.2d 152, 156 (D.Mass. 2001), quoting *Irwin v. Town of Ware,* 392 Mass. 745, 764, 467 N.E.2d 1292 (1984) (internal quotations and citations omitted)  In fact, "[b]ecause 'application of the reasonable person standard is uniquely within the competence of the jury,' summary judgment is rarely granted in negligence actions." *Davis v. Protection One Alarm Monitoring, Inc.,*

456 F.Supp.2d 243, 249 (D.Mass. 2006), quoting *DeVaux v. American Home Assur. Co.,* 387 Mass. 814, 819, 444 N.E.2d 355 (1983).

Stated differently, "[b]ecause juries are uniquely qualified to apply the reasonable person standard and to decide questions of causation, a plaintiff usually is afforded the right to have his [negligence] claim tried before a jury." *O'Connor v. SmithKline Bio Science Laboratories, Inc.* 631 N.E.2d 1018, 1020 (Mass. App. 1994), citing *Johnson v. Summers,* 577 N.E.2d 301 ( Mass. 1991); *Foley v. Matulewicz,* 459 N.E.2d 1262 (Mass. App. 1984); *Noble v. Goodyear Tire & Rubber Co.,* 612 N.E.2d 250 (Mass App. 1993). See, also, *Moose v. Massachusetts Institute of Technology*, 683 N.E.2d 706, 710 -711 (Mass.App. 1997) ("The question whether the risk of injury was foreseeable is almost always one of fact.")

Moreover, "[i]n deciding a summary judgment motion, we must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor." *Sparks v. Fidelity Nat. Title Ins. Co.,* 294 F.3d 259, 265 (1st Cir. (Mass.) 2002), citing *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993).

## II.   Facts

Hartwell Road in Bedford, Massachusetts is a two-lane road with a speed limit of 25 miles per hour. Plaintiffs' Additional Undisputed Material Facts ("PAUMF"), ¶1. It passes through a mixture of civilian residential and commercial buildings. IBID. In 1916, predecessors of Defendants Verizon New England, Inc. ("Verizon") and Boston Edison Company , d/b/a NSTAR Electric ("Boston Edison") were given permission by the Town of Bedford to erect and install utility poles along Hartwell Road. PAUMF, ¶ 2.  The

Town ordered the poles to be placed, "substantially at the points indicated upon the plan made by W.H. Cole, dated January 27, 1916 and to be filed with this order." PAUMF, ¶ 2. One of the poles placed by Boston Edison was pole 16/37. PAUF, ¶ 22. Pole 16/37 has been replaced several times over the years, the latest being 1964. IBID.

At the time of plaintiff's accident, pole 16/37 was located on the outside of a curve, thirteen inches from the edge of the roadway. PAUMF, ¶ 3. The pole was installed near 180 Hartwell Road. PAUMF, ¶ 6.

In approximately 1990, a guardrail was erected behind pole 16/37. PAUMF, ¶ 4. The primary purpose of roadside barriers such as guardrails is to prevent vehicles from leaving the roadway and striking a fixed object that is considered more objectionable than the guardrail. This is accomplished by the guardrail's containing and redirecting errant vehicles away from roadside obstacles. PAUMF, ¶ 17.

During the approximately eight years preceding the day of the subject incident, January 4, 2002, there were at least twenty-eight motor vehicle accidents on Hartwell Road in the area of 180 Hartwell Road. PAUMF, ¶ 7.

On January 4, 2002, Plaintiff Ian Brown was riding his motorcycle on Hartwell Road back to his office at Hanscom Air Force Base when he lost control of the motorcycle. PAUMF, ¶ 8. Plaintiff lost control of his motorcycle in the area of a depression in the roadway, after exiting the depression. The depression surrounded a manhole cover in the road. PAUMF, ¶ 9. The area where he lost control curves to the left. PAUMF, 10.   He was traveling at about 25 mph at the time of the accident. PAUMF, ¶ 11.

Once Plaintiff lost control, the motorcycle proceeded towards the guardrail on the right side of the road, with him still on it. His right shoulder and hip made contact with the guardrail. Plaintiff, still on his motorcycle, was then traveling parallel to the guardrail. As the motorcycle started to fall over, Plaintiff pushed off the motorcycle and aimed his body for the guardrail. He came off the motorcycle head first, and slid along the guardrail, which directed him into pole 16/37. PAUMF, ¶ 12.

Pole 16/37 is located on the right side of the road approximately 104 feet beyond the location (i.e. depression in the roadway) where Plaintiff lost control. PAUMF, ¶ 15. The accident occurred in the area of 180 Hartwell Road. PAUMF, ¶ 16

Plaintiff would not have hit pole 16/37 if the guardrail had not been present. PAUMF, ¶13. As a result of striking pole 16/37, Plaintiff was rendered paraplegic. PAUMF, ¶ 14.

On the date of the subject incident, January 4, 2002, the land upon which pole 16/37 and the guardrail stood was owned by defendant United States of America ("USA"). PAUMF, ¶ 18-21.

Plaintiffs claim that the juxtaposition of the guardrail with the pole immediately adjacent to it and on the road side of the guardrail created an unreasonably dangerous condition to travelers on the roadway. More specifically, it created a condition whereby motorists who unintentionally traveled off the roadway would foreseeably be channeled by the guardrail directly into pole 16/37, a fixed object. Plaintiffs further claim that the Defendant USA, by virtue of its owning and/or controlling the land upon which the guardrail and pole were erected, owed a duty of reasonable care to travelers on the

highway such as Plaintiff Ian Brown, and that it breached that duty by allowing the aforesaid unreasonably dangerous condition to remain on its property.

In its Motion for Summary Judgment, Defendant USA argues that (1) it neither owned nor controlled the guardrail nor the land upon which the guardrail and pole were located, and therefore had no duty to Plaintiff Brown; (2) that even if it did own the land on which the guardrail and pole were erected, it owed no duty to Plaintiff Ian Brown; and (3) Plaintiffs' claims are barred by the Statute of Repose. For the reasons set forth below, Defendant USA's Motion should be denied.

### III.   Argument

#### A.   Defendant USA Owns the Land Upon Which Pole 16/37 and the Guardrail Were Erected

Plaintiffs readily concede that there is no evidence that Defendant USA ever owned, erected, or caused to be erected, the guardrail that is the subject of this case.

However, there is substantial evidence that the United States owned, and continues to own, the land upon which the guardrail and pole 16/37 were erected. Essentially, in 1952, the Commonwealth of Massachusetts, by virtue of a deed, conveyed fee ownership of a parcel of land to the United States of America. PAUMF, ¶ 19. This deed references Parcel B, which parcel includes the land upon which the guardrail and pole 16/37 stand. See Exhibit 12- *Serkey Affidavit*.

The deed, by its terms, contains the following language:

> "Excluding from above description, all public or private roads, rights of way and/or easements now existing withinthe said boundaries inclusive but not limited to South Road, Wood Street, Lincoln Road, abandoned Old Bedford Road, and relocated Old Bedford Road. However,

> <u>conveying herewith to the [United States of America], any and all rights of the Commonwealth therein.</u>" (Emphasis added)

<u>IBID.</u>

The first sentence of the above provision merely underscores the fact that no deed from the Commonwealth to the USA could abrogate easement rights previously taken by the Town. The second sentence of the provision makes clear, however, that defendant USA, as grantee, replaced the Commonwealth, as grantor, as the fee owner of the pertinent portion of Hartwell Road to the center line. <u>IBID</u>.

The Defendant USA argues that the Town of Bedford took a fee interest in the subject parcel in 1734-1735. See Exhibit I to Defendant USA's Motion for Summary Judgment, *Sworn Declaration of J. Dan Bremser*. Yet the handwritten layout and vote of the Town do not state whether the takings were fee interest takings or easement takings. See exhibits E and F to J. Daniel Bremser's letter report of January 16, 2007 which letter report and exhibits are referenced in and attached to, *Sworn Declaration of J. Dan Bremser,* Exhibit I to Defendant USA's Motion for Summary Judgment. A town taking, however, is presumed to be an easement taking and not a fee taking, because of a long standing judicial doctrine that a taking not create a greater interest or estate than is essential for public use. See *Smith v. Slocomb*, 75 Mass.(9 Gray) 36, at 37 (1857); *City of Boston v. Richardson*, 95 Mass. (13 Allen) 146, at 159 (1866); *Opinion of the Justices*, 208 Mass. 603, at 605, 94 N.E. 849 (1911). Therefore, the Town never acquired any fee interest in the subject land.

That the USA is fee owner of the area in question is further supported by plan documents prepared by the USA itself. More specifically, the USA's title expert, Mr.

Bremser, in his aforementioned letter report of January 16, 2007, references and incorporates Plan #12, which is a plan prepared by the USA in 1993 and recorded in Middlesex South Registry of Deeds as Plan Number 809 of 1993. This plan references the pertinent portion of Parcel B as follows: "Total U.S. Navy Jurisdiction: Area = 44.6334 Acs. (Including Hartwell Road)" (Emphasis added). There is no evidence that the fee ownership of the pertinent portion of Hartwell Road was thereafter conveyed by or taken from the USA or any party claiming thereunder (except for an intra-governmental permit and transfer from the Department of the Air Force to the Department of the Navy. PAUMF, ¶ 20.

The clearest evidence, however, that the land in question was and is owned by the United States government is provided by the United States' own witness. In regard to a 30(b)(6) notice of deposition, Mr. Arthur Hayes was designated by the United States to testify in this case as to, "3. The USA's right, title and interest in Hartwell Road in Bedford, Massachusetts as of January 4, 2002." PAUMF, ¶ 18. Mr. Hayes, a Navy cartographer and real estate specialist for 17 years, testified unequivocally that the Navy owns the land upon which the subject pole 16/37 stands. PAUMF, ¶ 18-21.

  **B.** **Defendant USA, as Owner of the Land upon which the Guardrail and Pole 16/37 Stood, Had a Duty to Plaintiff to Exercise Reasonable Care in the Use of its Land**

Massachusetts law clearly provides that "[a]n owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. This duty includes an obligation to "maintain …property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the

injury, and the burden of avoiding the risk..." *O'Sullivan v. Shaw*, 726 N.E.2d 951, 954 (Mass. 2000), quoting *Mounsey v. Ellard,* 297 N.E.2d 43 (Mass. 1973).

Within the context of this litigation, Plaintiff Ian Brown falls within the class of "persons lawfully on the premises" who are entitled to the protection of the common law duty of reasonable care imposed upon landowners. Although he entered upon Defendant USA's real property at the time of his accident, Plaintiff is not a trespasser under Massachusetts law. See *Edgarton v. H.P. Welch Company*, 321 Mass. 603, 74 N.E.2d 674, 679-681 (1947) ("unintended intrusion upon the land in possession of another does not constitute trespass"); *United Electric Light Company v. Deliso Construction Company, Inc.*, 315 Mass. 313, 52 N.E.2d 553, 556 (1943) ("trespass requires affirmative voluntary act upon the part of the wrongdoer, and in that respect differs from negligence"). While the Restatement (Second) of Torts, §165, recognizes that trespass can be based on negligent acts involving unreasonable risk of invading an owner's interest in his property, the landowner must also show that he was harmed. Here, Ian Brown cannot be said to be negligent as a matter of law (and the Defendant USA does not claim so in its motion), and Defendant USA has suffered no harm to its property (nor does Defendant claim so in its motion). Thus Defendant USA owed Brown a duty of due care.

Defendant USA argues, however, that case law in Massachusetts does not recognize a duty owed by an owner of land abutting a road to those who inadvertently stray from the road. Defendant directs the court to the case of *Lioni v. Marr*, 320 Mass. 17, 19-20, 67 N.E.2d 766, a 1946 case, for this proposition, as well as the case of *Shulman v. Dinty Moore's, Inc.*, 326 F.2d 953, 954, a 1964 First Circuit case.

Careful analysis of these cases, though, reveals that they stand on the antiquated and abandoned doctrine that the status of a plaintiff as an invitee or not an invitee is determinative of a landowner's duty owed to him or her. In *Lioni*, the defendant owned a building, at the rear of which was a flight of twelve steps descending to a cellar doorway. At the top of the steps, and contiguous to a sidewalk, was a curbing that was two and one-half inches above the level of the sidewalk. The plaintiff in that case was walking upon the sidewalk, caught her foot on the curbing, and fell down the cellar steps, sustaining injury. The court declined to recognize a duty of the landowner who created the condition, to travelers upon the highway who might accidentally be brought into contact therewith. The court then cited a line of cases in support of that proposition. The holding in all but one of these cases, however, involves a circumstance where the plaintiff, as in *Lioni* itself, was not an invitee.[1]

Similarly, the *Shulman* case turned on the issue of whether the plaintiff was an invitee. More specifically, *Shulman* involved a plaintiff pedestrian who was injured when he tripped over a step that protruded from the defendants' building into an alley the plaintiff was traversing. As a result of this trip over the protruding step, the plaintiff "fell through a doorway and across a platform inside the building and into an unguarded elevator well." *Shulman*, 326 F.2d. at 954.

At the time of the accident, the plaintiff was returning to the defendants' building to conduct a business transaction and, consequently, the court designated the plaintiff as a "business invitee." *Id.* The court further noted that, since the plaintiff was an invitee, the

---

[1] Although one case, *Mead v. Strauss*, 88 N.E. 889 (Mass. 1909), involved a plaintiff who was at the defendant's apartment building pursuant to the defendant's "implied invitation," the Court's designation of the plaintiff as an implied invitee was made in dicta and was not central to the holding of the case.

defendants would be "charged with the exercise of due care that the land should be reasonably safe for the use to which the invitation extends." *Id.*, at 955. The court next concluded that, with respect to the protruding step over which the plaintiff tripped, the defendants did not breach their duty of due care to plaintiff because (1) "the Massachusetts rule appears to be that obstructions on a sidewalk are permitted if they are reasonably obvious, normal, and serve some useful purpose" and (2) the protruding step was open and obvious to the plaintiff at the time of his accident. *Id.*

Most relevant to the case at bar, the *Shulman* court further held that, with respect to the injuries the plaintiff suffered when he fell into the elevator well, the defendants could not be liable to the plaintiff under the circumstances because he was not invited onto that portion of the premises where the elevator well was located. *Id.*, at 954. ("since it is clear that the plaintiff was not invited onto that portion of the premises containing the elevator well, there can be no liability to this plaintiff for the condition of the elevator shaft independent of some liability for the step.")

In any event, the continued validity of *Lioni* and *Shulman* has been called into significant doubt by the Supreme Judicial Court's subsequent holding, in *Mounsey v. Ellard*, 297 N.E.2d 43 (Mass. 1973), that "[i]t no longer makes any sense to predicate the landowner's duty solely on the status of the injured party as either a licensee or invitee," and "[t]he problem of allocating the costs and risks of human injury is far too complex to be decided solely by the status of the entrant, especially where the status question often prevents the jury from ever determining the fundamental questions whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Id.*, at 51. Most significantly, the *Mounsey* court further established:

> [W]e no longer follow the common law distinction between licensees and invitees and, instead, create a common law duty of reasonable care which the occupier owes to all lawful visitors. *This decision is in accord with the modern trend in the common law which the Supreme Court has characterized as moving toward 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'* Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 631, 79 S.Ct. 406, 410, 3 L.Ed. 550 (1959). We believe that the reasonable care standard will give the jury the flexibility they need to assess the burden of liability on the facts of each case and in accordance with community standards as to what constitutes acceptable behavior on the occupier's part. *Cases which adhere to a contrary rule are no longer followed.*

*Id.*, at 51-53 (emphasis added).

In sum, the *Mounsey* decision effectively overruled the so-called "*Lioni* doctrine" relied upon by Defendant USA in its motion, as well as the line of cases cited in *Lioni* that, *sub rosa*, were predicated upon the injured plaintiff's status as an entrant upon the defendant's land at the time of his injury. Consequently, Defendant USA should be held to the "'single duty of reasonable care in all the circumstances'" that "the occupier owes to all lawful visitors." *Mounsey*, 297 N.E.2d at 51-52, quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 631, 79 S.Ct. 406, 410, 3 L.Ed. 550 (1959).

Moreover, recent Massachusetts case law reflects an endorsement of Section 368 of the Restatement (Second), which imposes upon landowners a duty to exercise reasonable care in maintaining their premises free of "unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway...." See, e.g., *Afarian v. Massachusetts Electric Company*, Civ. No. 99-1852, pp. 7, 9-10 (Suffolk Sup. Ct. January 3, 2003) (Haggerty, J.) (appeal pending). This endorsement of Section 368 is consistent with the principle that the

existence of the duty of reasonable care is dependent upon the specific circumstances at issue and "the existing social values and customs and appropriate social policy." *O'Sullivan v. Shaw*, 726 N.E.2d 951, 954 (Mass. 2000). The current social values and customs, as exemplified in *Mounsey, supra*, as well as the social policy benefits of encouraging landowners to safely maintain their premises in light of the society's increasing use of roadways and motor vehicles, clearly indicates that the scope of antiquidated decisions such *Lioni* and *Shulman* does not extend to this proceeding. The Massachusetts common law duty of reasonable care is consistent with the Restatement (Second) of Torts, §368, which states as follows:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who:
>
> (a)   are traveling on the highway, or
> (b)   forseeably deviate from it in the ordinary course of travel.

Section 368 unambiguously imposes upon Defendant USA a duty of due care toward motorists such as Ian Brown.

In regard to the Defendant USA's breach of that duty, there are, at the least, genuine issues of material fact that should be resolved at trial. The specific circumstances at issue in this litigation justify a reasonable fact finder concluding that Defendant USA breached the duty of due care imposed under both Massachusetts common law and Section 368 of the Restatement (Second). More specifically, the Defendant allowed the guardrail and the pole to remain in the juxtaposition referenced above since at least 1990,

creating a clearly unreasonable danger to travelers on the highway who may deviate from the roadway. A guardrail is designed to deflect vehicles from the roadway by directing them along the guardrail. If the guardrail is so located in such a way that it directs motor vehicles, and/or its occupants, directly into a fixture such as a utility pole, a reasonable fact finder could certainly find that the aforementioned duty of due care has been breached. All this is in the context of a two-lane roadway that, at the location of the subject incident, was the scene of at least twenty-eight accidents in the eight years prior thereto. In any event, the issue of whether Defendant USA breached its duty of reasonable care is a question of fact that falls within the special province of the fact finder. See, e.g., *Wilson v. Copen*, 244 F.3d 178 (1st Cir. (Mass.) 2001); *Jupin v. Kask*, 849 N.E.2d 829, 835 (Mass. 2006), citing *Mullins v. Pine Manor College*, 449 N.E.2d 331 (Mass. 1983) (the issues of "whether a defendant exercised reasonable care, the extent of the damage caused, and whether the defendant's breach and the damage were causally related" generally fall within "the special province of the jury").

Similarly, the forseeability of Ian Brown's catastrophic deviation from Hartwell Road also is a question of fact that must be reserved for the finder of fact after a full trial on the merits. See, e.g., *Moose v. Massachusetts Institute of Technology*, 683 N.E.2d 706, 710 – 711 (Mass.App.Ct. 1997) ("The question whether the risk of injury was foreseeable is almost always one of fact.").

    C.    **The Massachusetts Statute of Repose, which is codified at M.G.L. c. 260, §2B, is not applicable to this matter and, consequently, does not bar the Plaintiffs' claims against Defendant USA.**

Defendant USA asserts that the Massachusetts Statute of Repose, which is codified at M.G.L. c. 260, §2B and pertains to claims involving the "design, planning,


construction, or general administration of an improvement to real property", somehow shields it from liability. As addressed in more detail below, Defendant USA's reliance upon the Statute of Repose is wholly without merit, as the Statute of Repose extends only to those entities who are involved in the "design, planning, construction or general administration of an improvement to real property".

More specifically, Defendant USA avers, in its Statement of Material Facts in support of its motion for summary judgment, that it "has no knowledge of the purpose for which for which the guard rail was erected, the identity of the persons who requested or otherwise caused the guard rail to be erected or to be maintained or repaired, and it has no knowledge of any communications about the guard rail. See Defendant USA's Statement of Material Facts, ¶¶3,4. Clearly, the Statute of Repose extends its protection only to those who are engaged in the activities (e.g., design, planning, construction or general administration) that are identified in the statute. See, e.g., *Klein v. Catalano*, 437 N.E.2d 514, 521 (Mass. 1982) (emphasis added) (the Statute of Repose "places a limit on the liability of those *involved in design and construction*"); *Coca-Cola Bottling Co. of Cape Cod v. Weston & Sampson Engineers, Inc.*, 695 N.E.2d 688, 694 (Mass. App. 1998)("[o]f course there are limits to" the scope of the Statute of Repose).

Moreover, *Sonin v. Massachusetts Turnpike Auth.*, 809 N.E.2d 1075 (2004), which Defendant USA cites for the proposition that landowners may be entitled to protection under the Statute of Repose, actually underscores the fact that the statute does not extend to Defendant USA in this particular matter. More specifically, *Sonin* clearly limits the applicability of the Statute of Repose to "an owner that *participates in the design of improvements to real property...*" *Sonin v. Massachusetts Turnpike Authority*,

809 N.E.2d 1075, 1078 (Mass.App. 2004) (emphasis added). Conversely, since Defendant USA explicitly denies that it participated in any of the activities protected under M.G.L. c. 260, §2, the Statute of Repose provides no protection to Defendant USA in this proceeding.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully assert that defendant United States of America's motion for summary judgment should be denied, in its entirety.

Respectfully submitted,

**The Plaintiffs,
IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,**
By their attorney,

/s/

_____
Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700 (telephone)

Date:   April 18, 2007

## CERTIFICATE OF SERVICE

I, Scott E. Charnas, hereby certify that on the 18th day of April, 2007, I caused a copy of the foregoing to be served, by electronic filing upon Anita Johnson, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, Joshua Lewin, Esquire, Prince, Lobel, Glovsky & Tye, LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114, and Michael K. Callahan, Esquire, NSTAR Electric, Prudential Tower, 800 Boylston Street, Boston, MA 02199.

/s/
_____
Scott E. Charnas