# EXHIBIT 11

# CONDENSED TRANSCRIPT

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NUMBER:  04-11924-RGS


IAN J. BROWN, JAMES BROWN AND BARBARA BROWN,
    Plaintiffs,

VS

UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC. and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,
    Defendants.

~~~~~~~~~~~~~~

    30(b)(6) DEPOSITION OF U.S. NAVY BY ARTHUR R. HAYES, III, taken on behalf of Verizon New England, Inc., pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Ayako Odanaka, Notary Public, Certified Shorthand Reporter and Registered Professional Reporter within and for the Commonwealth of Massachusetts, at the Offices of Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, Massachusetts, on April 28, 2005, at 11:14 a.m., as follows:



Jack Daniel
Court Reporting & Video Services

Technologies you can Use • Experience you can Trust
141 Portland Street, Suite 200, Boston, MA 02114
Phone: 617.557.0039 • Toll Free: 1.888.922.JACK  Fax: 617.557.0040
www.jackdanielreporting.com

Page 5

1  30(b)(6) DEPOSITION OF U.S. NAVY BY
2  ARTHUR R. HAYES, III
3  APRIL 28, 2005
4  PROCEEDINGS:
5  ARTHUR R. HAYES, III, the deponent,
6  having been satisfactorily identified and
7  duly sworn by the Notary Public, was
8  examined and testified as follows.
9  EXAMINATION
10  BY-MR.LEWIN:
11  Q.  Good morning, Mr. Hayes. My name
12  is Josh Lewin, as we met this morning.
13  Have you ever been deposed before?
14  A.  Ah, yes.
15  Q.  Okay. Just to review briefly, I'll
16  be asking you questions; you'll be
17  answering those questions. It's important
18  that you wait until I finish asking the
19  question so the court reporter can take
20  everything down.
21  A.  Okay.
22  Q.  If you need a break at any time,
23  just let me know, and we can stop.
24  MR. LEWIN: The usual

Page 6

1  stipulations?
2  MR. WILMOT: Usual
3  stipulations. Also I just want to state
4  for the record that Mr. Hayes is the
5  30(b)(6) designee on the behalf of the
6  Navy, but he is testifying solely as to
7  Number 3 on your Exhibit A to the
8  deposition notice.
9  MR. LEWIN: And along those
10  same lines, today's deposition is being
11  conducted pursuant to the court's order of
12  February 23rd, 2005.
13  As stated by Attorney Wilmot, we'll
14  be limited to topic Number 3 on the
15  deposition notice. Verizon reserves the
16  right to renotice the deposition of the
17  USA during the normal course of discovery
18  as to these topics or other topics germane
19  to the case at that time.
20  MR. CHARNAS: May we go off
21  the record for a moment?
22  MR. LEWIN: We can.
23  (Discussion off the record).
24  MR. WILMOT: For the record,

Page 7

1  we just want to state that Mr. Hayes, as
2  I said, he is testifying solely as to
3  Number 3 on Exhibit A of Verizon's
4  30(b)(6) deposition notice. He's not
5  testifying as to Numbers 4 and 5 because
6  the Navy has no information as to Numbers
7  4 and 5.
8  BY MR. LEWIN:
9  Q.  Okay. Mr. Hayes, could you state
10  your name for the record?
11  A.  Arthur --
12  (Interruption).
13  BY MR. LEWIN:
14  Q.  Okay. Could you state your name
15  for the record?
16  A.  Arthur R. Hayes.
17  Q.  And Mr. Hayes, who is your current
18  employer?
19  A.  Department of Defense, the
20  engineering field activity northeast
21  located in Philadelphia.
22  Q.  And how long have you been employed
23  there?
24  A.  Twenty-four years, 25 years.

Page 8

1  Q.  And does the Department of Defense
2  encompass both the Navy and the Air Force?
3  A.  Yes.
4  Q.  Could you briefly summarize your
5  job responsibilities?
6  A.  I work in the real estate
7  department as a cartographer/real estate
8  specialist handling all Navy acquisitions,
9  transfers, easements, permits for the area
10  AOR, they call it, area of responsibility
11  for the Navy in the New England 11 -- ten
12  state area now.
13  Q.  And is that just for the Navy?
14  A.  Just for the Navy, yes.
15  Q.  And do you know if there's someone
16  with the same responsibilities with respect
17  to Air Force property?
18  A.  Yes, I believe so.
19  Q.  Do you know who that person is?
20  A.  I think it would be the corp of
21  engineers.
22  (Reporter requested
23  clarification).
24  THE WITNESS: Corp -- corp

Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE   141 Portland Street . Boston, MA 02114   EXPERIENCE YOU CAN TRUST
617.557.0039   www.jackdanielreporting.com   FAX 617.557.0040
888.922.JACK

Page 9

1  of engineers
2     BY MR. LEWIN:
3  Q.  Do you know of a specific person
4  that has your -- the same job
5  responsibilities with respect to the Air
6  Force?
7  A.  No, no, I don't.
8  Q.  You're here in response to a
9  deposition notice in this case; is that
10 correct?
11 A.  Yes.
12 Q.  And have you had a chance to look
13 at that deposition notice?
14 A.  Yes. Briefly.
15    MR. LEWIN: Let me -- can I
16 mark this as Exhibit 1?
17    (Exhibit-1, Deposition
18 Notice, marked for identification).
19    BY MR. LEWIN:
20 Q.  Mr. Hayes, I'm showing you what's
21 been marked as Hayes Exhibit 1. Do you
22 recognize this document?
23 A.  (Witness viewing document). Yes.
24 Q.  Could I ask you to turn to the

Page 10

1  third page?
2  A.  (Witness complying).
3  Q.  Is it your understanding that
4  you're testifying as to topic Number 3 of
5  Exhibit A?
6  A.  (Witness viewing document). Yes.
7  That's right.
8  Q.  By the way, Mr. Hayes, you brought
9  a few documents with you today; is that
10 correct?
11 A.  Correct.
12    MR. LEWIN: Can we mark
13 those as two and three?
14    (Exhibit-2, Map; Exhibit-3,
15 Map, marked for identification).
16    BY MR. LEWIN:
17 Q.  Mr. Hayes, let's start with what's
18 just been marked as Hayes Exhibit Number
19 2. Could you briefly tell me what this
20 document is?
21 A.  This is a Navy's -- let me back up
22 a minute. This is an original print that
23 I made myself from the original mylar I
24 maintain in our office. And what it

Page 11

1  depicts is the portion that was
2  transferred to Navy from the Air Force
3  dated March 11, '77. The number of acres,
4  36.65, the jurisdiction, which is noted.
5     And then what I had done a few
6  years ago, we had the perimeter
7  resurveyed, and this isn't really
8  applicable, but Navy acquired this portion
9  of property, and that's why we had changed
10 the external boundary.
11    MR. CHARNAS: Excuse me,
12 sir, when you say "this," it doesn't show
13 up on the record when you point to
14 something, so you have to describe --
15    THE WITNESS: Oh, I'm sorry.
16 I was pointing to a property north of the
17 actual transferred property. It's a deed
18 area for a nine acre tract of land that
19 we, Navy, acquired from AF McGovern,
20 September 20th, 1954, which was added to
21 the transferred property from the Air
22 Force.
23    BY MR. LEWIN:
24 Q.  And, Mr. Hayes, you indicated that

Page 12

1  this is an original copy?
2  A.  Yes.
3  Q.  And you said it was made from?
4  A.  A mylar.
5  Q.  And what is the mylar?
6  A.  Well, a mylar is like a -- it's a
7  -- it's a transparent drawing that you add
8  and delete as to acquisitions, permits and
9  easements, and the Navy maintains this in
10 a map -- several map drawers, and it's
11 constantly updated.
12 Q.  Okay. And this is an original copy
13 of the mylar from one of those map
14 drawers?
15 A.  Yes, that's correct.
16 Q.  Okay. And Exhibit Number 3, could
17 you tell me what Exhibit Number 3 is?
18 A.  (Witness viewing document). Number
19 3 is a map of the Laurence Hanscom Field
20 real estate map that was sent to us from
21 the Air Force at the time of the transfer.
22 And this was in the file along with the
23 transfer documentation when Navy took
24 ownership of the property in question. It


Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE       141 Portland Street, Boston, MA 02114       EXPERIENCE YOU CAN TRUST
617.557.0039                   www.jackdanielreporting.com
                               888.922.JACK                                FAX 617.557.0040

### Page 13

1  just shows -- I'm sorry.
2  Q. And where is this document kept by
3  the Navy?
4  A. Also in the file.
5  Q. And this is a true and accurate
6  copy?
7  A. Yes.
8  Q. Okay. I'd like to step back a
9  little bit. I'd like to ask you what you
10 did to prepare today to testify as to
11 topic Number 3 in Exhibit 1?
12 A. Again, I reviewed the deposition
13 information, and I made a print of the
14 Navy's real estate summary map showing the
15 ownership of Naval Weapon Station, Bedford.
16 Q. Did you review any other documents
17 besides the two maps that you brought with
18 you today?
19 A. Yes, I think there was a town map
20 that we had showing the pole location.
21         (Reporter requested
22 clarification).
23         THE WITNESS: The utility
24 pole location.

### Page 14

1  A. And based on that, Town of Bedford,
2  Department of Public Works, they had the
3  pole locations located along Hanscom Road,
4  and I transferred that location to the
5  real estate summary map of Navy's.
6         MR. CHARNAS: When you said
7  Hanscom Road, did you mean Hartwell Road?
8         THE WITNESS: Hartwell Road,
9  I'm sorry.
10        MR. LEWIN: Could we mark
11 this as Exhibit 4, is it --
12        MR. CHARNAS: Yes.
13        MR. LEWIN: Four.
14        (Exhibit-4, Map, marked for
15 identification).
16        BY MR. LEWIN:
17 Q. You indicated, Mr. Hayes, that you
18 received this from the Town of Bedford; is
19 that correct?
20 A. Well, indirectly. I think that you
21 e-mailed --
22        MR. WILMOT: Go off the
23 record for a minute.
24        MR. LEWIN: Sure.

### Page 15

1         (Discussion off the record).
2         BY MR. LEWIN:
3  Q. Mr. Hayes, do you know where in the
4  Navy this document came from?
5  A. No, I don't.
6  Q. Okay. And what was the purpose of
7  reviewing this document?
8  A. The utility pole placement of pole
9  Number 37.
10 Q. And is that the sole information
11 you gleaned from this document --
12 A. Yes.
13 Q. -- in preparation for today?
14 A. Yes.
15 Q. Okay. Did you speak to anyone
16 before today's deposition to be able to
17 answer questions with respect to topic
18 Number 3?
19        MR. WILMOT: Objection. You
20 mean not attorney-client privilege?
21        MR. LEWIN: Yes.
22        BY MR. LEWIN:
23 Q. Who did you speak to in preparation
24 for today's deposition?

### Page 16

1  A. Damian.
2  Q. Did you contact anyone else in the
3  Navy concerning ownership of Hartwell Road?
4  A. No, I didn't.
5  Q. How about the Town of Bedford?
6  A. No.
7  Q. Okay. Did you take any other
8  actions besides looking at these maps in
9  preparation for the deposition today?
10 A. No.
11 Q. Okay. Have you been able to make
12 a determination as to the government's --
13 as to the Navy's interest in Hartwell
14 Road?
15 A. Yes.
16 Q. Okay. And again, can you tell me
17 what the basis of that determination is?
18 A. The transfer document at the time
19 the Air Force transferred the property to
20 the Navy.
21 Q. Uh-huh. Let me step back a second.
22 Can you tell me the process you went
23 through to locate these two maps?
24 A. Okay. The Exhibit 3, is it this

Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE    141 Portland Street - Boston, MA 02114    EXPERIENCE YOU CAN TRUST
                            www.jackdanielreporting.com
617.557.0039                888.922.JACK                              FAX 617.557.0040

Page 17

1  one?
2  Q. This is two and this is three.
3  A. All right. Exhibit 3 was in the
4  transfer document file that I maintain in
5  the cadastre records in my office. And
6  from that information and this map,
7  Exhibit 3, Exhibit 2 was generated,
8  showing -- now in that transfer document,
9  there's a legal description that comes
10 with it, with the bearings and dimensions,
11 going around the perimeter of the property
12 and listing that in addition to the
13 buildings within as to what was being
14 transferred from the Air Force to the
15 Navy.
16 Q. All right. Let me step back. Do
17 you keep files or maps by their location?
18 A. Yes.
19 Q. Okay. So do you have a file for
20 Hanscom Air Force base?
21 A. No.
22 Q. Okay. How were you able to locate
23 Exhibit Number 3 in preparation for
24 today's deposition?

Page 18

1  A. By looking up the transfer document
2  for Naval Weapon Station, Bedford.
3  Q. So do you have some sort of file
4  with respect to the naval weapons -- what
5  was the facility you stated?
6  A. It's on there, Naval Weapons
7  Industrial Reserve Plant.
8  Q. Okay.
9  A. NIROP, they -- the acronym.
10 Q. And do you have a file for property
11 owned by the Navy with respect to -- to
12 the NIROP?
13 A. In Bedford, yes.
14 Q. Okay. And is that how you located
15 Hayes Exhibit Number 2?
16 A. Correct.
17 Q. Okay. As well as Hayes Exhibit
18 Number 3?
19 A. Yes.
20 Q. And with respect to the NIROP
21 facility in Bedford, were there any other
22 maps?
23 A. No.
24 Q. How about other documents?

Page 19

1  A. No, other than the transfer
2  document, no.
3  Q. And when you say "transfer
4  document," are you referring to Hayes
5  Exhibit Number 2?
6  A. Well, the transfer document, it's
7  Navy's DD1354.
8  Q. Is that a form of some sort?
9  A. It's a form that the government has
10 when they transfer property from one
11 agency to another agency.
12 Q. Did you bring that form with you
13 today?
14 A. No, I didn't.
15 Q. Is all of the property that the
16 Navy owns in Bedford, was that property
17 transferred from the Air Force?
18 A. Not all of it. The nine acre
19 portion at the north end, the Navy
20 acquired.
21 Q. Aside from the nine-acre piece of
22 property that you just referenced, is all
23 of the remaining property that the Navy
24 owns, was that acquired from the Air

Page 20

1  Force?
2  A. Correct.
3  Q. So there would be no other deeds or
4  transferred documents from other
5  individuals to the Navy.
6  A. Correct.
7  Q. Can you show me -- or first, what
8  interest does the Navy have in property
9  over which Hartwell Road runs?
10 A. Well, the portion of Hartwell Road
11 that runs through the transferred property
12 Navy owns in fee, the underlying land of
13 the road.
14 Q. And if we could go to Exhibit
15 Number 2 -- Hayes Exhibit Number 2 first,
16 could you point on this map and also state
17 for the record where you're pointing to
18 the area of Hartwell Road which runs
19 through the property you've just
20 referenced?
21 A. Okay, beginning in the northeast
22 portion of the property, boundary
23 reference, course Number 9, Hartwell Road
24 enters the property running southwesterly


Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE   141 Portland Street, Boston, MA 02114   EXPERIENCE YOU CAN TRUST
617.557.0039   www.jackdanielreporting.com   FAX 617.557.0040
888.922.JACK

### Page 21

1  to a boundary reference course Number 18.
2  And that's the only portion of Hartwell
3  Road that the Navy owns in fee.
4  Q. Are you aware of whether Hartwell
5  Road is designated as a public way under
6  Massachusetts state law?
7  A. That I'm not sure of.
8  Q. You don't know?
9  A. No.
10 Q. Do you know whether there are any
11 restrictions on that piece of road as to
12 who may travel along Hartwell Road?
13 A. No, I don't know.
14 Q. Do you know whether the Navy
15 maintains that road?
16 A. No, I don't know. I don't have
17 those records.
18 Q. Do you know whether the Navy has
19 granted the Town of Bedford an easement
20 over the -- over Hartwell Road?
21 A. No, we haven't.
22 Q. You have not?
23 A. We have not.
24 Q. And what is the basis of your

### Page 22

1  statement that the Navy has not granted
2  the Town of Bedford an easement?
3  A. If Navy did, there would be noted
4  on the summary map. If I could reference
5  the utilities easements Navy needed up
6  here for whatever reason, so we went to
7  the property owner, in this case,
8  Massachusetts Port Authority, and acquired
9  an easement, utility easement.
10    If we had turned around to the Town
11 of Bedford and granted them a right-of-way
12 easement for that portion of Hartwell
13 Road, there would be a note with the date
14 and whether it was in perpetuity or
15 exactly what the transfer information was
16 or the easement grant. It would be noted.
17 Q. If the Air Force had granted an
18 easement over Hartwell Road before it
19 transferred this property to the Navy,
20 would that be indicated on this map?
21 A. No, no it wouldn't.
22 Q. If the Air Force had granted such
23 an easement would that be noted anywhere
24 in your files?

### Page 23

1  A. No, it wouldn't.
2  Q. Would it be noted on the form that
3  you referenced, the transfer form, from
4  the Air Force to the Navy?
5  A. No, it would not.
6  Q. So are you able to determine
7  whether the town has a right-of-way
8  easement over Hartwell Road at this time?
9  A. No, I'm not.
10 Q. You indicated that -- or what could
11 you -- I may have already asked this
12 question but --
13 A. Okay.
14 Q. What is the legal interest that the
15 government has in this portion of Hartwell
16 Road?
17 A. Ownership and fee in the underlying
18 road.
19 Q. And the basis of your statement
20 that the ownership interest is in fee,
21 what is the basis of your knowledge?
22 A. Just going back from when the Air
23 Force first acquired it back in -- take a
24 quick look, '52, February 25th, '52.

### Page 24

1  Q. And for the record, you're
2  referencing Hayes Exhibit Number 3.
3  A. Correct. Yes.
4  Q. Okay. And could you show me where
5  on Hayes Exhibit Number 3 you just --
6  A. In the tract register of
7  acquisition after July, 1940, military.
8  Table located on the map.
9  Q. And could you tell me the tract
10 register that you just referenced, what
11 information is conveyed in that tract
12 register?
13 A. The tract is A101. It shows the
14 landowner as the Commonwealth of
15 Massachusetts. It shows the acquisition
16 in fee over 42 acres of land. And it
17 shows in the remarks column, the date of
18 the deed, which shows February 25th, 1952.
19 Q. And does Hayes Exhibit Number 3, on
20 the tract register that you just
21 referenced is that referencing land that
22 was transferred in some interest to the
23 Air Force?
24 A. Acquired by the Air Force, yes.


Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE     141 Portland Street, Boston, MA 02114     EXPERIENCE YOU CAN TRUST
617.557.0039                 www.jackdanielreporting.com              FAX 617.557.0040
                             888.922.JACK

Page 25

1  Q. And Tract A101, which you just
2  referenced, does that encompass the same
3  land that we've been looking at in Hayes
4  Number 2?
5  A. With the exception of the trailer
6  park housing that was excluded from the
7  transfer to Navy.
8  Q. And is the trailer park housing
9  depicted in Hayes Exhibit Number 2?
10 A. It's not identified on the map, but
11 where it cuts it out on the westerly side.
12 Q. For the record, the deponent was
13 indicating --
14 A. Portion north of Hartwell.
15 Q. -- a portion north of Hartwell Road
16 cut out by a line that is depicted as 18,
17 19, 20, 21, 22, 23 and 24; is that
18 correct?
19 A. That's correct.
20 Q. So to your knowledge, does the Air
21 Force still own the property in that cut
22 out portion?
23 A. I really can't answer that. I
24 don't know.

Page 26

1  Q. Mr. Hayes, in Exhibit Number 2,
2  Hartwell Road appears to pass south of the
3  portion you've indicated was retained by
4  the Air Force when it transferred to the
5  Navy; is that correct?
6  A. (Witness viewing document). That's
7  correct.
8  Q. So to your knowledge, does the Navy
9  own that portion of Hartwell Road, which
10 is immediately south?
11 A. Yes.
12 Q. And south of the cut out portion
13 that the Air Force retained?
14 A. Yes, that's correct.
15 Q. Okay. Mr. Hayes, if the department
16 of Navy had subsequently transferred any
17 of the land which is designated as Tract
18 A101 in Exhibit Number 3, would you have a
19 record of that transfer?
20 A. No.
21 Q. And when I say subsequently, I say
22 subsequently to the date of Exhibit Number
23 3, which appears to be January 1952.
24 A. Yeah -- no, because this is an Air

Page 27

1  Force map.
2        MR. CALLAHAN: "This" being,
3  what exhibit are you referring to?
4        MR. CHARNAS: Exhibit 3.
5        THE WITNESS: Exhibit 3.
6  BY MR. LEWIN:
7  Q. Mr. Hayes, what is the date of
8  Exhibit Number 2?
9  A. (Witness viewing document).
10 9/9/74, 1974.
11 Q. There appear to be some date
12 references above that. What are those
13 date references to?
14 A. (Witness viewing document). Well,
15 they were amendments to -- well, amendment
16 Number 2, 36.65 acre transferred from Air
17 Force, that was dated June 7th, 1977, even
18 though that was the transfer in March of
19 '77. And through the legal description
20 and the transfer documentation, this map
21 was created. Then there were permits
22 added, which is identified as Amendment 3
23 in June 8th day, '79.
24     Perimeter of station was surveyed

Page 28

1  in 1980. This was correction Number 4.
2  And all courses and distances were revised
3  accordingly. That was dated October 9th,
4  1980.
5      And amendment or correction Number
6  5 -- and this is the survey I was telling
7  you about. We had the perimeter again
8  surveyed on September 18th, 1992 and
9  acreage was advised accordingly -- revised
10 accordingly.
11 Q. Could I ask you a question?
12 A. Yes.
13 Q. This came -- this map, you
14 indicated, came from a mylar sheet which
15 you keep in your office.
16 A. Yes.
17 Q. So if I'm understanding this
18 correctly, the mylar sheet was updated --
19 was originated on 9/9/74.
20 A. Correct.
21 Q. And then updated on each of these
22 dates.
23 A. Correct.
24 Q. Okay. And is it your practice to

Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE
617.557.0039

141 Portland Street, Boston, MA 02114
www.jackdanielreporting.com
888.922.JACK

EXPERIENCE YOU CAN TRUST
FAX 617.557.0040

Page 29

1 update the map whenever a transfer is
2 made?
3 A. Yes.
4 Q. So any transfer that was made to or
5 from the Navy with respect to land
6 depicted in this map occurring after
7 9/9/74, that transfer would be depicted on
8 this map; is that correct?
9 A. That's correct. Yes.
10 Q. Okay. So to your knowledge, this
11 map is the most up-to-date depiction of
12 land owned by the Navy which is depicted
13 on the map.
14 A. That's correct.
15 Q. Okay. Mr. Hayes, do you have any
16 knowledge about traffic on Hartwell Road?
17 A. No, I don't.
18 Q. Have you ever been on Hartwell
19 Road?
20 A. No, I haven't.
21      MR. LEWIN: I have no more
22 questions.
23      EXAMINATION
24      BY-MR.CHARNAS:

Page 30

1 Q. Mr. Hayes, I'm Scott Charnas. I
2 represent Ian Brown and his family. I
3 just have a few questions.
4 A. Okay.
5 Q. First of all, sir, are you a
6 civilian employee of the Department of
7 Defense?
8 A. Yes.
9 Q. How long have you worked for the
10 Department of Defense?
11 A. Twenty-five years.
12 Q. And have you, during that entire
13 time, worked for the Naval Division within
14 the Department of Defense?
15 A. Yes.
16 Q. And what is your title?
17 A. Realty specialist, cartographer.
18 Q. And how long have you held that
19 title, approximately?
20 A. Since 17 years.
21 Q. Now, sir, if I understand -- Well,
22 let me strike that.
23      At some point, did you make a
24 determination as to the appropriate and

Page 31

1 proper location of pole Number 37?
2 A. Only based on that map I had.
3 Q. That was my question. Your basis
4 of where pole Number 37 is, is -- that is
5 based on Exhibit 4; is that right?
6 A. Correct, the Town.
7 Q. That's the Town of Bedford
8 Department of Public Works drawing or map;
9 is that right?
10 A. Yes, that's right.
11 Q. And you don't know where that came
12 from.
13 A. No.
14 Q. Now, do you have an understanding
15 as to where on Exhibit 3 pole Number 37
16 is?
17 A. Well, based on that map, yeah, I
18 could approximate it.
19 Q. Let me ask you this.
20 A. Okay.
21 Q. Is it your understanding that pole
22 Number 30 -- Well, let me back up and
23 strike that.
24      On Exhibit 3, there is a shaded or

Page 32

1 mostly shaded area which is surrounded by
2 a green marker line; is that right?
3 A. (Witness viewing document). That's
4 correct.
5 Q. Did you put that green marker line
6 on Exhibit 3?
7 A. Yes, I did.
8 Q. And what did you intend to denote
9 by that green marker line?
10 A. The portion of property acquired by
11 the Air Force in '52, which was the 42
12 acres. Tract 101.
13 Q. Is it your understanding, sir, that
14 pole Number 37, that is, the location of
15 pole Number 37 is encompassed within that
16 green bordered area?
17 A. Yes.
18 Q. Can you point where you believe
19 that is? And I realize it's just
20 approximately.
21 A. Approximately right here
22 (indicating).
23 Q. You're pointing on to --
24 A. The northeasterly side of the

Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE        141 Portland Street, Boston, MA 02114        EXPERIENCE YOU CAN TRUST
                                www.jackdanielreporting.com
617.557.0039                    888.922.JACK                                FAX 617.557.0040

30(b)(6)   ARTHUR R. HAYES, III   04/28/05

9 (Pages 33 to 36)

### Page 33

1  tract.
2  Q. Okay. And the south side of
3  Hartwell Road; is that fair to say?
4  A. South side of Hartwell Road.
5  Q. So as far as the Navy is concerned,
6  speaking through you, the area where pole
7  Number 37 is located, or at least was
8  located on January 4th, 2002, that area
9  both on the north and south side of
10 Hartwell Road was owned by the Navy?
11 A. Yes.
12 Q. Now, sir, in regard to Exhibit 2,
13 you've told us several times that this
14 drawing or map came from a mylar in the
15 Navy's records; is that correct?
16 A. That's correct.
17 Q. Is it fair to say that you yourself
18 added something to this map in preparation
19 for this deposition?
20 A. Yes, I did.
21 Q. And tell us what this was, sir.
22 A. Approximate location of utility
23 pole Number 37.
24 Q. And again, this Exhibit 2

### Page 34

1  demonstrates that pole Number 37 was
2  located on land owned by the Navy.
3  A. Yes.
4  Q. And that's true as of January 2nd,
5  2002.
6  A. I don't think this is dated. I
7  can't really say that.
8  Q. When you say "this," you're
9  pointing to Exhibit 4?
10 A. Exhibit 4.
11 Q. Just bear with me a moment. I'm
12 just about finished.
13    And you've told us that the Navy
14 owns a section of Hartwell Road,
15 specifically the section that runs through
16 the gray area with the green border around
17 it, which is part of Exhibit 3; is that
18 right?
19 A. That's correct.
20 Q. And is it fair to say that the
21 Navy has owned that -- Strike that.
22    So the Navy or Air Force had owned
23 that land in January 4th of 2002.
24 A. Navy.

### Page 35

1  Q. Is it fair to say that -- Well,
2  strike that.
3     For how long has the Navy owned
4  that land, that is where the Hartwell Road
5  is within that green bordered area on
6  Exhibit 3?
7  A. Since March, 1977.
8  Q. And before March of 1977, is it
9  fair to say that the Air Force owned that
10 section of Hartwell Road?
11 A. That's correct.
12 Q. Is it fair to say that the Air
13 Force owned that section of Hartwell Road
14 since approximately 1952?
15 A. That's correct.
16    MR. CHARNAS: That's all I
17 have. Thank you, sir.
18    THE WITNESS: You're
19 welcome.
20    MR. CALLAHAN: Just have a
21 few questions.
22    EXAMINATION
23    BY-MR.CALLAHAN:
24 Q. Where is your office located?

### Page 36

1  A. Just south of Philadelphia airport
2  in Tinicum Township.
3  Q. Have you ever been to the Hanscom
4  Air Force Base?
5  A. No.
6  Q. When you need to interact with
7  people at Hanscom Air Force Base or people
8  -- Strike that. Let me back up.
9     Are there still Navy personnel
10 situated at the Hanscom Air Force base
11 location?
12 A. As far as I know.
13 Q. Do you have occasion to interact
14 with any of the people there in connection
15 with your duties as a realty specialist?
16 A. No.
17 Q. The document that you identified as
18 DD1354, the transfer document, is that
19 similar to what a lay person would
20 understand as kind of a transfer deed,
21 deed of transfer?
22 A. Yes. Yes, because it's
23 transferring the Air Force's right to that
24 portion of property, and they transferred

Jack Daniel
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE   141 Portland Street, Boston, MA 02114   EXPERIENCE YOU CAN TRUST
617.557.0039              www.jackdanielreporting.com
                          888.922.JACK                        FAX 617.557.0040

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11924-RGS

IAN J. BROWN, JAMES BROWN and )
BARBARA BROWN )
    Plaintiffs )
)
v. )
)
UNITED STATES OF AMERICA, )
VERIZON NEW ENGLAND, INC. and )
BOSTON EDISON COMPANY d/b/a )
NSTAR ELECTRIC )
    Defendants )

To:   All counsel of record.

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant and Cross-Claim Plaintiff, Verizon New England, Inc. will take the deposition upon oral examination of the United States of America (the "USA") by a person or persons to be designated by the USA pursuant to Fed. R. Civ. P. 30(b)(6).

The deposition will be held at the offices of Prince, Lobel, Glovsky & Tye LLP, 585 Commercial Street, Boston, MA 02110, on **April 14, 2005** at **9:30 a.m.** before a notary public or other official authorized by law to administer oaths from day to day until completed.

Please note that, pursuant to Fed. R. Civ. P. 30(b)(6), the USA is required to designate one or more persons who consent to testify on its behalf and to matters known

EXHIBIT Cronin 1 4/28/05 A.O.

EXHIBIT Hayes 1 4/28/05 A.C.

or reasonably available to the USA with respect to the matters set forth in Exhibit A.

You are invited to attend and cross-examine.

VERIZON NEW ENGLAND, INC.

By its attorneys,

William A. Worth, BBO #544086
Joshua A. Lewin, BBO# 658299
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Date: March 28, 2005

# EXHIBIT A

1. The ownership and control of the guardrail depicted in the photographs and Motor Vehicle Accident Police Report attached hereto as Exhibits 1 and 2 as of January 4, 2004.

2. The installation and maintenance of the guardrail depicted in the photographs and Motor Vehicle Accident Police Report attached hereto as Exhibits 1 and 2.

3. The USA's right, title, or interest in Hartwell Road in Bedford, Massachusetts as of January 4, 2004.

4. The USA's control and/or maintenance of Hartwell Road in Bedford, Massachusetts as of January 4, 2004.

5. Any patrols or public safety work performed by the USA on Hartwell Road in Bedford, Massachusetts on or before January 4, 2004.

6. The USA's right, title or interest in the location depicted as parcel A on the map attached hereto as Exhibit 3.

7. The USA's right, title or interest in the building located on parcel A at which the plaintiff, Lieutenant Ian Brown, worked in his capacity as an employee of the Electronic Systems Center.

8. The use of Hartwell Road by employees of the Electronic Systems Center to access the Electronic Systems Center's buildings located on parcel A on the map attached hereto as Exhibit 3 as of January 4, 2004.

9. The USA's right, title or interest as of January 4, 2004, in the land immediately adjacent to Hartwell Road upon which the guardrail depicted in the photographs and Motor Vehicle Accident Police Report attached hereto as Exhibits 1 and 2 was situated.

exhibits 2 and 3 to the Deposition of Arthur Hayes, III are too large to be scanned. They are on file and may be viewed at the Clerk's office