UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC., and BOSTON EDISON COMPANY d/b/a NSTAR ELECTRIC,<br>    Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S STATEMENT OF MATERIAL FACTS'**

Pursuant to Rule 56 of the Fed.R.Civ.P. and Local Rule 56.1, Plaintiffs Ian J. Brown, James Brown, and Barbara Brown hereby submit their Response to Defendant United States of America's Statement of Material Facts.

I. **DEFENDANT UNITED STATES OF AMERICA'S UNDISPUTED MATERIAL FACTS**

1. Plaintiffs have brought suit regarding Ian Brown's motorcycle accident, January 4, 2002, on Hartwell Road in Bedford, Massachusetts. Complaint ¶ 8. Brown was riding his motorcycle east on Hartwell Road, returning to work at Hanscom Air Force Base from his lunch break at home, when he lost control of the motorcycle, and, he

alleges, collided with a guardrail parallel to the road and crashed head first into a utility pole. Complaint at ¶ 8-9. See also, Brown v. United States et al, 410 F. Supp.2d 3,4 (D. Mass. 2006). Plaintiffs allege that the United States is liable for his injuries because the United States owned and controlled the property on which the guardrail is situated; Complaint ¶ 32; "placed, caused to be placed or suffered the placement of the guardrail on the land;" Complaint ¶; and/or failed to remove or relocate the pole and/or the guardrail. Id. ¶ 35. See also Brown, 410 F.Supp2d at 5.

**Plaintiffs' response: Undisputed.**

2.    The Raytheon Corp. leased from the United States Navy the parcel of land immediately south of the accident site, from 1967 to at least 1998. Deposition of Joseph Broderick (Exhibit C to the memorandum in support of summary judgment) at 13-14. Ratheon's property manager was Joseph Broderick, who worked for as property manager for 38 years, and whose responsibilities included upkeep of the property and capital maintenance, id. at 24. He does not recall every [sic] having made any proposal or done anything with guardrails or utility poles…Id. at 54-55; see also at 27 (no recollection of guardrail being erected at the location at any point in time. Pursuant to its contract with the Navy, Rayheon was required to obtain written Navy approval before undertaking capital maintenance projects, even if the project was minor, and putting up a guardrail would fall within capital maintenance and would have required Navy approval before it occurred. Broderick also reviewed Raytheon records and found no mention of the guardrail (or the pole), id. at 69, and the guardrail was not present on drawings of the site. Id. at 69-70.

**Plaintiffs' response:** Undisputed, for purposes of the motion for summary judgment only. [Although various of the pages cited by defendant United States of America ("USA") do not support the factual allegations for which they are cited].

3.  Jerry D. Peterson, a civilian employee of the Navy at its facility south of Hartwell Road behind Pole 37, formerly the Raytheon site, was designated as a rule 30 (b)(6) witness on behalf of the Navy. He testified that he was responsible for searching, gathering, and reviewing the Navy records and Raytheon records, accompanied by Joseph Broderick. Declaration of Jerry D. Peterson ¶ 1-2 (Exhibit D to the memorandum). He found absolutely no reference to the guard rail at Pole 37 in either the Navy or Raytheon records. Moreover, he states that the Navy "has no knowledge of the purpose for which the guardrail was erected, the identity of the persons who requested or otherwise caused the guardrail to be erected or to be maintained or repaired, and it has no knowledge of any communications" about the guardrail. Id. at ¶ 5.

**Plaintiffs' response:** Plaintiffs do not dispute that Mr. Peterson testified as set forth by defendant USA. However, plaintiffs dispute defendant USA's allegation that the United States does not own the land upon which the pole and guardrail are located. *See infra* Plaintiffs' Additional Undisputed Material Facts ("PAUMF"), ¶¶ 18-21.

4.  The Air Force has also searched its property records. Dennis Cronin, designated as Air Force rule 30(b)(6) witness, searched the real property records of the Air Force at Hanscom base and found no record whatsoever of the guardrail, and no references or mentions of any kind regarding the guardrail, including construction, installation, financing, or approvals. Declaration of Dennis Cronin (Exhibit E to the memorandum) ¶ 6. Moreover, Cronin, a civilian employee of the Air Force since 1980,

with responsibility for oversight of real property and space management for the Air Force facilities at Hanscom Air Force Base, testified that the Air Force had no responsibility for the construction, location and maintenance of the guard rail. Id. ¶ 6. The Air Force has no knowledge of the purpose for which the guard rail was erected, the identity of the persons who requested or otherwise caused the guard rail to be erected or to be maintained or repaired, and it has no knowledge of any communications regarding the guard rail.

**Plaintiffs' response:** Undisputed, except that Mr. Cronin's statement regarding the Air Force having "…no responsibility for the …location…of the guard rail", to the extent it implies the defendant USA's lack of such obligation as of the day of the subject incident, is a legal conclusion with which plaintiffs disagree, as set forth in detail in Plaintiffs' Memorandum in Support of Their Opposition to Defendant United States of America's Motion for Summary Judgment.

5. Jerry D. Peterson stated that the Navy does not own Hartwell Road. Peterson Decl. ¶ 7. The road is used as a public road and the Navy did no maintenance, construction, planning, public safety, or law enforcement work with regard to the road. Id.

**Plaintiffs' response:** Undisputed that Hartwell Road is used as a public road and that the Navy did no maintenance, construction, planning, public safety, or law enforcement work with regard to the road. However, plaintiffs dispute that the Navy does not own Hartwell Road. *See infra* PAUMF,¶ 18-21.

6. Dennis Cronin testified that the Air Force has never owned Hartwell Road and/or its shoulders, and has never maintained Hartwell Road. Cronin Decl. ¶ 2. Based on his 27 years operating and maintaining the Air Force facilities at Hanscom, he testified

that no agency of the federal government owns or has owned or maintained Hartwell Road and its shoulders. Id ¶ 8.

**Plaintiffs' response**: Undisputed that no federal agency maintains or has maintained Hartwell Road. However, plaintiffs dispute the contention that neither the Air Force nor any agency of the federal government owns or has owned Hartwell Road or its shoulders. *See infra* PAUMF,¶ 18-21. Moreover, Mr. Cronin's declaration does not set forth information that qualifies him to state any opinion regarding ownership of the property in question, as he has had, since 1980, "responsibility for oversight of real property and space management for the Air Force facilities at Hanscom…"; there is no reference in his declaration to his responsibility for or expertise in determining title to land. See defendant's Ex. E.

7.   Armand L.C. Oulette, who was in charge of maintenance of grounds and roads at Hanscom, testified that the Town of Bedford has always maintained the property that the guard rail is on. Deposition of Oullette (Exhibit G to the memorandum) at 28. "We've never had the road, we've never maintained it, and we've never done anything to it." Id. at 32. Nor to the property immediately adjacent to either side of the road. Id. Nor did he ever do anything over his many years of employment at Hanscom that would indicate that the United States considered the land under the guardrail to be under its control. Id. at 46.

**Plaintiffs' response**: Undisputed that the Town of Bedford has maintained the property on which the guardrail stands, and that Mr. Oullette has not maintained Hartwell Road or the property immediately adjacent thereto. However, Plaintiffs dispute the contention that the defendant USA does not own Hartwell Road or its shoulders,

including the land upon which the subject pole and guardrail stand. *See infra* <u>PAUMF</u>,¶ 18-21.

8. An engineer for the Town of Bedford for eighteen years, Adrienne St. Jean, testified that the Town of New [sic] Bedford – and not the United States –did the maintenance and repair of Hartwell Road. Deposition of Adrienne St. John (Exhibit H to the memorandum) at 8, 58-59.

**Plaintiffs' response**: Undisputed.

9. J. Dan Bremser, the government's title search expert, concluded that the Town of Bedford holds title to the land where the guard rail stands. Declaration of J, Dan Bremser ¶5. The Town owns Hartwell Road and its shoulders. The Town of Bedford took title to Hartwell Road in 1734-35, including the portion of Hartwell Road where the accident occurred. Declaration of Bremser (Exhibit I to the memorandum) ¶ 2. Hartwell Road has ancient stone walls intermittently along its sides, including at the site of the accident. <u>Id</u>. ¶ 5. The wall at the accident site is behind the guard rail and Pole 37. Bremser Decl. ¶5. Based on the presence of the stone walls today and on historical maps of Hartwell Road, the stone walls represent the boundaries of town-owned property on which Hartwell road lies. Moreover, the Town of Bedford recognized the stone walls as the boundaries when it took land for widening of Hartwell Road only from the stone wall outward; Bremser Decl. ¶5, and when it installed sewer lines without taking an easement for the lines from any other owner. ¶ 4.

The guard rail was erected 15-16 years ago, at about 1990. Oulette Deps. at 51. <u>See</u> <u>also</u> Exhibit A (photograph of guard rail).

**Plaintiffs' position**: Undisputed that the guardrail was erected in approximately 1990. However, Plaintiffs dispute Mr. Bremsers' conclusions regarding the title and ownership of the land upon which stand the subject pole and guardrail. Plaintiffs dispute that the Town of Bedford took title to said land in 1734-1735, and dispute that the aforementioned stone wall marks the boundaries of Town-owned land. Plaintiffs also dispute the implications of the Town of Bedford's not taking title to the subject land for purposes of widening the road and/or installing sewer lines. *See infra* PAUMF,¶ 18-21 for the basis of Plaintiffs' disputing these allegations.

## II.     PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS

1.     Hartwell Road is a two-lane road that passes through a mixture of civilian residential and commercial buildings, with a speed limit of 25 miles per hour. Exhibit 1- *Deposition of Adrienne St. John* ("*St. John Dep.*"), pp. 43-51, 182.

2.     In 1916, the Town of Bedford, Massachusetts granted Boston Edison's predecessor and the telephone company's predecessor the right to install a pole line along Hartwell Road, and directed that the utilities had the right to set the poles substantially at the points indicated upon the plan that was filed with the grant of permission. Exhibit 2- *Certified Copy of Town of Bedford's records.*

3.     At the time of plaintiff's accident, pole 16/37 was located on the outside of a curve, and thirteen inches from the edge of the roadway. Exhibit 3 – *Deposition of Murray Burnstine* ("*Burnstine Dep.*") at p.165-166.

4.     In approximately 1990, a guardrail was erected behind pole 16/37. Exhibit 4- *Deposition of Armand Oullette* ("*Oullette Depos.*"), p. 34, 51; Exhibit 5- *Federal*

*Defendant's Response to Plaintiffs' Request for Admission*, ("*Defendant's RA Responses*") No. 10 and 11.

5. At the time of the subject occurrence, the pole 16/37 was located between the guardrail and Hartwell Road. Exhibit 5- *Defendant's RA Responses*, No. 11.

6. Pole 16/37 was located near 180 Hartwell Road. Exhibit 6- *Deposition of Tracy Cook* ("*Cook Depos.*"), pp. 12-13, 30, 91-94 & ex.1.

7. During the approximately eight years preceding the day of the subject incident, January 4, 2002, there were at least twenty-eight motor vehicle accidents on Hartwell Road in the area of 180 Hartwell Road. Exhibit 7 - *Certified Copy of Town of Bedford Police Department records.*

8. On January 4, 2002, Plaintiff Ian Brown was riding his motorcycle on Hartwell Road back to his office at Hanscom Air Force Base when he lost control of the motorcycle. Exhibit 8- *Deposition of Ian Brown* ("*Brown Depos.*"), pp. 154, 163-164.

9. Plaintiff lost control of his motorcycle in the area of a depression in the roadway, after exiting the depression. The depression surrounded a manhole cover in the road. Id. at 167-168, 193.

10. In the area where Plaintiff lost control of his motorcycle, Hartwell Road curves to the left. Id. at p. 371.

11. Plaintiff was traveling at about 25 mph at the time of the accident. Id. At 167-168, 512-513.

12. Once Plaintiff lost control, the motorcycle proceeded towards the guardrail on the right side of the road, with him still on it. His right shoulder and hip made contact with the guardrail. Plaintiff, still on his motorcycle, was then traveling parallel to the

guardrail. As the motorcycle started to fall over, Plaintiff pushed off the motorcycle and aimed his body for the guardrail. He came off the motorcycle head first, and slid along the guardrail, which directed him into pole 16/37. Exhibit 3- *Burnstine Depos.*, pp. 113-114, 120-121; Exhibit 8- *Brown Depos.*, pp. 178-180, 331-334, 377-379.

13. Without the presence of the guardrail, Plaintiff would not have hit utility pole 16/37. IBID.

14. As a result of striking pole 16/37, Plaintiff was rendered paraplegic. Exhibit 9, *Affidavit of Mariusz Ziejewski*[1].

15. Pole 16/37 is located on the right side of Hartwell Road approximately 104 feet beyond the location where Brown lost control of the motorcycle. Exhibit 3- *Burnstine Dep.*, p. 248; Exhibit 8- *Brown Depos*, pp. 167-168, 193; Exhibit 6- *Cook Depos.*,& ex.1

16. The accident happened in the area of 180 Hartwell Road, Bedford, Massachusetts. Exhibit 6- *Cook Depos*, pp. 12-13, 30, 91-94 & ex.1.

17. The primary purpose of roadside barriers such as guardrails is to prevent vehicles from leaving the roadway and striking a fixed object that is considered more objectionable than the guardrail. This is accomplished by the guardrail's containing and redirecting errant vehicles away from roadside obstacles. Exhibit 10- *Certified Copy of Commonwealth of Massachusetts Highway Design Manual, Massachusetts Highway Department Metric Edition 1997*, Sections 1.1 and 9.3; Exhibit 3-*Burnstine Depos.*, pp. 170, 172-174.

---

[1] Although there will be an issue at trial as to the specific cause of Plaintiff Ian Brown's injuries, for purposes of this motion for summary judgment defendant has not disputed plaintiffs' claim that Brown's hitting pole 16/37 caused his injuries.

18.     Arthur Hayes, III has worked for the Naval Division of the United States Department of Defense since approximately 1980, and has held the title of Realty specialist, Cartographer since approximately 1988. On April 28, 2005, Mr. Hayes was designated by defendant USA to testify as its Fed.R.Civ. P. Rule 30(b)(6) witness regarding, "The USA's right, title, or interest in Hartwell Road in Bedford, Massachusetts as of January 4, 2004. See Exhibit 11-*Arthur Hayes, III Deposition* ("*Hayes Depos.*"), pp. 5-9, 30 & ex.1.

19.     On February 25, 1952, the United States Air Force by deed acquired a fee interest in 42 acres of land in Bedford, Massachusetts, including a portion of Hartwell Road, and including the land upon which pole 16/37 stands. The subject land is described as Parcel B in the deed. Exhibit 11- *Hayes Depos.*, pp. 12-15, 23-26, 30-32 & ex.3[2]; Exhibit 12- *Affidavit of Richard Serkey* ("*Serkey Affidavit*").

20.     On March 11, 1977, the United States Air Force transferred 36.65 acres of that 42 acres to the Navy, which the Navy then owned in fee. This area includes the land upon which pole 16/37 stood on January 4, 2002. Exhibit 11- *Hayes Depos*, p. 10-11, 16-21, 23-26, 30-35 & ex. 2, ex. 3; Exhibit 12- *Serkey Affidavit*.

21.     On January 4, 2002, defendant USA owned the land under and abutting the portion of Hartwell Road upon which stood pole 16/37 and the guardrail that is the subject of this case. Ibid.

---

[2] Plaintiffs only have a black and white copy of exhibit 3 to the Hayes deposition. The "mostly shaded area which is surrounded by a green marker line" referenced in *Hayes Depos.*, p. 31-32 refers to the shaded area in the center left of exhibit 3, directly under the words, "Massachusetts Port Authority."

22. Pole 16/37 was installed by Boston Edison in 1916 along the side of Hartwell Road in Bedford, Massachusetts, and has been replaced in 1929, 1954, and 1964. Exhibit 13- *Affidavit of Daniel Roche*.[3]

Respectfully submitted,

**The Plaintiffs,
IAN J. BROWN, JAMES BROWN, and BARBARA BROWN,**
By their attorney,

/s/
_____
Scott E. Charnas, BBO No. 081240
Manheimer & Charnas, LLP
210 Commercial Street
Boston, MA 02109
(617) 557-4700 (telephone)

Date: April 18, 2007

## CERTIFICATE OF SERVICE

I, Scott E. Charnas, hereby certify that on the 18th day of April, 2007, I caused a copy of the foregoing to be served, by electronic filing upon Anita Johnson, Esquire, Assistant United States Attorney, Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210, Joshua Lewin, Esquire, Prince, Lobel, Glovsky & Tye, LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114, and Michael K. Callahan, Esquire, NSTAR Electric, Prudential Tower, 800 Boylston Street, Boston, MA 02199.

/s/
_____
Scott E. Charnas

---

[3] This affidavit was submitted by defendant Boston Edison as its Exhibit B in support of its motion for summary judgment.