Leave to file granted on June 6, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11924-RGS

| | |
|---|---|
| IAN J. BROWN, JAMES BROWN and BARBARA BROWN,<br>       Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA, VERIZON NEW ENGLAND, INC. and BOSTON EDISON COMPANY d/b/a NSTAR Electric,<br>       Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF OF DEFENDANT BOSTON EDISON COMPANY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Defendant Boston Edison Company ("Boston Edison") hereby submits the within Reply Brief in support of its motion for summary judgment.

**ARGUMENT**

I. **PLAINTIFFS' HAVE NOT PRESENTED THIS COURT WITH SUFFICIENT FACTS TO CREATE A TRIABLE ISSUE OF FACT PRECLUDING SUMMARY JUDGMENT**

A. <u>Brown's Accident Was Not A Legally Foreseeable Event Under Massachusetts Law.</u>

Plaintiffs' argument that the record presented to this Court in connection with the motion for summary judgment creates a genuine issue of material fact requiring the case to be submitted to a jury is fatally flawed. While it is generally true that summary judgment motions are

disfavored in negligence actions, Massachusetts law is clear where the plaintiff has failed to establish the existence of a legal duty on the defendant's part summary judgment is not only appropriate, it is required.

The starting point in determining whether a duty of care exists is forseeability. Dziokonski v. Babineau, 375 Mass. 555, 567 (1978). Massachusetts courts have routinely used forseeability to define the limits of a duty of care. Whittaker v. Saraceno, 418 Mass. 196, 198 (1994) and cases cited therein. "Forseeability does play a large part in limiting the extent of liability. . . . Notions about what should be foreseen, in other words, are very much interwoven with our feelings about fair and just limits to legal responsibility." Id. at 198, quoting 4 F. Harper, F. James, Jr., & O. Gray, Torts § 20.5, at 136-37 (2d ed. 1986).    Questions of reasonable forseeability may properly be decided by the judge as questions of law. Westerback v. Harold F. LeClair Co., Inc., 25 Mass. App. Ct. 144, 146 (1987); Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass. App. Ct. 901, 902 (1987). All of the circumstances are examined when defining the scope of a duty of care based on the reasonable foreseeability of harm. Whitaker, 418 Mass. at 199.

In this case, it was not legally foreseeable that Brown would lose control of his motorcycle on a depression in the road, veer off the traveled portion of the roadway, hit a guardrail, slide along the guardrail, and ultimately strike Pole 16/37. A utility company such as Boston Edison *only* has a duty to a plaintiff motorist who leaves a traveled portion of a roadway and strikes a utility pole if the collision with the pole is foreseeable based upon the attendant facts and circumstances of the accident. See Afarian v. Massachusetts Electric Company, Cf. Whittaker, 418 Mass. at 198. In support of their opposition to Boston Edison's motion for summary judgment, Plaintiffs' make the blanket assertion that a "dangerous condition" existed

2

and attempt to bootstrap that assertion into a basis to survive Boston Edison's motion. Plaintiffs' summarily conclude that a "dangerous condition" existed yet a simple analysis of the "facts" offered in support of their claim quickly dispatches their argument.

Plaintiffs' rely upon four "facts" in support of their claim that a "dangerous condition" existed: (1) the close proximity of Pole 16/37 to a curved section of Hartwell Road; (2) vague, incompetent and ambiguous records of the Bedford Police Department that indicate 28 motor vehicle accidents in the area of 180 Hartwell Road; (3) the location of Pole 16/37 on the outside of a curve 13 inches from the edge of the pavement along Hartwell Road[1]; (4) the placement of Pole 16/37 between Hartwell Road and the guardrail. (Plaintiffs' Memorandum In Support of Their Opposition to Defendant Boston Edison Company d/b/a NSTAR Electric's Motion for Summary Judgment, p. 7-8) ("Plaintiffs' Memorandum").

The mere fact that a pole is located in close proximity to the edge of the traveled way does not create an unreasonable risk to others traveling with reasonable care. Boylan v. Martindale, 431 N.E. 2d 62 (Ill. App. 1982) (placement of utility pole 6-12 inches from roadway) Moreover, the mere fact that the pole is located on the outside of a curve is not enough for Boston Edison to incur liability. The Plaintiffs have not asserted that the topography or condition of the road caused a condition that made it more likely that a vehicle would veer off the road at this location. Compare Marino v. NYNEX, WL 809985 (Mass. Super. Ct.) (holding design of road pushes vehicles to left causing motorists to over steer in opposite direction)

Furthermore, the Plaintiffs, without qualification, state that they "do not allege that Pole 16/37 was negligently designed, planned, constructed or administered". (Plaintiffs' Memorandum, p. 13). The design, planning and construction of the utility pole necessarily

---

[1] It is not clear precisely how this "fact" differs from (1) above.

include a poles' placement on the edge of the roadway and its placement on the outside of a curve. Plaintiffs' acknowledgment in this regard is evidence that there was nothing inherently dangerous about the location of Pole 16/37. It is axiomatic that utility poles are routinely located along the sides of roads including on the outside of a curve.

Plaintiffs' reliance upon the Bedford Police Department log to support an inference that there may have been accidents at this location is without merit. Quite simply, there is no evidence to demonstrate that any accidents occurred at Pole 16/37 that would have placed Boston Edison on notice that the pole presented a dangerous condition. Indeed, the undisputed evidence is to the contrary. Pole 16/37 had been in its present location for decades without incident or any report of incident involving personal injury or damage. The Plaintiffs have produced no evidence showing any accidents involving the pole or guardrail putting Boston Edison on notice of an alleged hazardous condition. Schrader v. Great Plains Elec. Co-op., Inc., 19 Kan. App. 2d 276,(1994) (court refuses to hold utility company liable where guy wire had been in place for nearly 40 years without incident); Hurier v. Gumm, 1999 WL 996386, *9 (Ohio App. 12 Dist.) ("one accident in twenty years, which involved a drunk driver, cannot be said to put appellants on notice that the decorative walls were a hazard to the general traveling public").

Contrary to Plaintiffs' assertions, there is no competent evidence of prior similar accidents that would have placed Boston Edison on notice that the location of this pole presented a dangerous condition.[2] In an effort to demonstrate that the location of this pole presented a dangerous condition, Plaintiffs rely on Bedford Police Logs from 1994 to 2002. Plaintiffs suggest to this Court that between 1994 and 2002, twenty-eight separate motor vehicle accidents

---

[2] The Plaintiffs have the burden to demonstrate that Boston Edison should have been on notice that it was reasonably foreseeable that its pole presented a dangerous condition to traveling motorists. Plaintiffs have presented no such evidence.

4

were reported "in the vicinity of 180 Hartwell Road".[3]  See Counter-Statement, ¶6 and Exhibit 6 attached thereto. However, Exhibit 6 is nothing more than a compilation of alleged accidents that have occurred in the area of 180 Hartwell Road. There is no description of the nature of these accidents, how they occurred, the exact location of the accidents, what if any damage was incurred or injuries sustained. Nothing in these statistics indicates that there was a fatality, personal injury or that the pole was even involved in any of these incidents. Nor is there any evidence that any of this data was transmitted or otherwise communicated to Boston Edison. There is no evidence before this Court to demonstrate that over a period of time, similar incidents have occurred at this pole, which would put Boston Edison on notice that the location of this pole presented a dangerous condition. Simply put, Plaintiffs rely on isolated and unexplained entries in the Bedford Police Department Incident Log from 1994 through 2002. In short, these records do nothing more than demonstrate that accidents have occurred in this area. They do not demonstrate that Pole 16/37 was involved in any of these accidents and fail to establish a material factual issue that Boston Edison should have foreseen that Brown would strike Pole 16/37.

Finally, the record before this Court fails to establish even the proximity of "180 Hartwell Road" to Pole 16/37. Bedford Police Officer Tracy Cook, upon whom the Plaintiffs rely in support of their assertion that these 28 prior accidents occurred in the area of the Plaintiffs' accident, could not even identify where 180 Hartwell Road was located in relation to this

---

[3] Boston Edison suggests that Exhibit 6 fails to meet the requirements of Fed. R. Civ. P. 56(e) and should not even be considered by this Court when deciding this Motion for Summary Judgment. The Exhibit is not authenticated, it is unknown who compiled the statistics, how they are compiled, for what purpose they are compiled and how they are kept and maintained by the Bedford Police Department. In any event, Exhibit 6 provides no information that, if considered, would create a genuine issue of material fact.

accident. At her deposition, she testified that she did not put that information in the police report and that "I don't even know where 180 Hartwell is". Plaintiffs' Additional Undisputed Material Facts ("PAUMF") ¶6, Exhibit 5, p. 92.

The undisputed facts are that Pole 16/37 was originally installed in 1916 and that a new Pole 16/37 was installed in 1964. Pole 16/37 was already in place when the guardrail was erected in approximately 1990[4]. Both Plaintiffs and Boston Edison agree that the guardrail was erected by a party other than Boston Edison and that it was constructed on property owned by a party other than Boston Edison. Plaintiffs do not allege that Boston Edison is responsible for the installation or maintenance of the guardrail. The summary judgment record is void of any evidence that Boston Edison had notice of the guardrail's placement behind Pole 16/37. Even assuming that Boston Edison had notice of the guardrail's placement, Plaintiffs have presented no evidence showing Boston Edison deviated from statutory or regulatory standard of conduct with respect to the location of Pole 16/37. Plaintiffs have also failed to identify any statute, rule, or duty that required Boston Edison to take any action as a result of the placement of the guardrail.

Plaintiffs have argued that in view of the design of the roadway and guardrail, Pole 16/37 was in a location that increased the risk of collision. It is well settled that "one is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is . . .only remotely and slightly probable." Hebert v. Enos, 60 Mass. App. Ct. 817, 806 N.E. 2d 452, 456 (2004) (citing Falk v. Finkelman, 268 Mass. 524, 168 N.E. 2d 89, 90 (1929)) Boston Edison owed no duty to protect Plaintiff from his

---

[4] Plaintiffs rely upon the deposition testimony of Armand L.C. Oulette to establish that the guardrail was erected in approximately 1990. Mr. Oullette also testified that the guardrail was installed to protect the fence located behind the guardrail. Mr. Oullette also testified that he has never heard of anyone hitting the telephone pole. ("PAUMF" Exhibit 3, p. 34, 50).

6

accident because at the time it engineered and installed Pole 16/37 in 1916 and replaced it in 1964, Boston Edison could not have reasonably anticipated the alleged danger which Plaintiffs argue resulted from the placement of a guardrail behind the pole in approximately 1990. As matter of law, Boston Edison should not be charged with failing to anticipate and protect against this allegedly remote possibility. See Galbraith v. Levin, 323 Mass. 255, 81 N.E. 2d 560, 564 (1948) (defendant should not be liable for an accident caused by an intervening cause which it was not bound to anticipate and guard against). The circumstances that led to Ian Brown's injuries were simply beyond the realm of "what usually happens and what it likely to happen." See Hebert, 806 N.E. 2d at 455.

Nonetheless, Plaintiffs rely solely upon the testimony of Murray Burnstine in support of this contention. Yet, a close review of Mr. Burnstine's testimony reveals that he is unable to support the conclusion that placement of the pole rendered a dangerous condition. Mr. Burnstine has opined without any basis or foundation that Pole 16/37 was on the wrong side of the road. Mr. Burnstine bases his opinion on his "rule of common sense." Mr. Burnstine points to no standards, regulations, or codes in support of his opinion. In short, Mr. Burnstine's testimony contains nothing more than general conclusory statements regarding roadside design and does not create a genuine issue of fact to defeat summary judgment. See Schubert v. Nissan Motor Corporation, 148 F.3d 25 (1st Cir. 1998) (affirming summary judgment and exclusion of plaintiff's expert's affidavit (Murray Burnstine) on grounds that affidavit failed to comply with Rule 56(e) where it contained conclusory assertions about an ultimate legal issue and opinion was based upon "common sense"); Hayes v. Douglas Dynamics, Inc. 8 F.3d 88, 92(1st Cir. 1993) (where an expert presents "nothing but conclusions-no facts, no hint of an inferential process, no

7

discussion of hypotheses considered and rejected," such testimony will be insufficient to defeat a motion for summary judgment).

Plaintiffs' sole evidence presented to this Court concerning pole placement and Boston Edison's alleged duty in this regard are contained in excerpts from Plaintiffs' accident reconstruction expert Murray Burnstine's depositions transcript[5]. ("PAUMF", Exhibit 2). Mr. Burnstine is a mechanical engineer without any qualification to render an opinion concerning roadside utility placement. Mr. Burnstine has no training, education, or experience that qualifies him to render an opinion in the field of civil engineering. Mr. Burnstine has taken one surveying course in civil engineering. He has never taken any courses in "highway design", "roadside design" or "roadway design". He is not familiar with any law or regulation in Massachusetts that deals with roadside design. He is not familiar with any law or regulation that deals with placement of utility poles. He has never taken any courses with respect to utility pole placement or design. (See Burnstine Transcript pp. 44-45, 54-59 attached hereto as Exhibit "1") By his own admission, Mr. Burnstine rendered his opinion without conducting any analysis with respect to the placement of the pole. Mr. Burnstine testified that he reached his opinion through the application of "common sense" rather than the application of any reliable methodology whatsoever. See Schubert, 148 F.3d at 32 (affirming summary judgment which was granted on grounds that opinion of plaintiff's expert, Murray Burnstine, lacked an adequate foundation)

---

[5] In support of their Opposition, Plaintiffs attached Commonwealth of Massachusetts Highway Design Manual, Massachusetts Highway Department Metric Edition 1997. The Defendant objects to the admissibility of the Highway Design Manual. There has been no showing by affidavit or otherwise that the Highway Design Manual is applicable to the guardrail installed on Hartwell Road or that the Manual was in effect as of the date of the installation of the guardrail. Moreover, Plaintiffs' expert, Mr. Burnstine, did not identify the Highway Design Manual as a document he was familiar with relied or upon in rendering his opinion. Further, Plaintiffs never produced the Highway Design Manual prior to filing their Opposition.

The Burnstine deposition excerpts relied upon by Plaintiffs reveal nothing about the basis for his conclusory opinions that the "pole is on the wrong side of the road"; that the "Pole is too close to the pavement" and his opinion concerning the placement of guardrails in juxtaposition to a utility pole other than the fact that his opinions are based upon "common sense". . ("PAUMF", Exhibit 2, pp. 165-176)

Clearly, Plaintiffs' assertion that the placement of a guardrail behind a utility pole creates a dangerous condition is without any competent evidentiary support as required by Rule 56(e)[6]. The record evidence provides no support that the guardrail was on the "wrong side" of the pole. Plaintiffs have failed to provide any expert testimony establishing that the guardrail was improperly designed or the erection of the guardrail behind Pole 16/37 violates highway safety standards. Nor have the Plaintiffs produced any evidence whatsoever that the erection of the guardrail in 1990 would have required any action by a utility company including Boston Edison. The Plaintiffs have produced no evidence whatsoever on this issue. Thus, Plaintiffs cannot succeed on their claim that the placement of a guardrail behind pole 16/37 created a dangerous condition or, if a dangerous condition existed, Boston Edison should have recognized it and taken some action.

In sum, the totality of the circumstances surrounding this accident fully supports the conclusion that it was not legally foreseeable that Brown would hit Pole 16/37. Given, the undisputed facts and Plaintiffs' lack of evidence, to impose a duty of care to Boston Edison

---

[6] "Under Rule 56(e), affidavits supporting or opposing summary judgment must set forth facts that would be admissible in evidence. A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on . . . speculative evidence." See Schubert, 148 F.2d at 3 (quoting Casas Office Machs., Inc. v. Mita Copystar Am., 42 F 3d. 668, 681 (1st. Cir. 1994)

The Burnstine deposition excerpts relied upon by Plaintiffs reveal nothing about the basis for his conclusory opinions that the "pole is on the wrong side of the road"; that the "Pole is too close to the pavement" and his opinion concerning the placement of guardrails in juxtaposition to a utility pole other than the fact that his opinions are based upon "common sense". . ("PAUMF", Exhibit 2, pp. 165-176)

Clearly, Plaintiffs' assertion that the placement of a guardrail behind a utility pole creates a dangerous condition is without any competent evidentiary support as required by Rule 56(e)[6]. The record evidence provides no support that the guardrail was on the "wrong side" of the pole. Plaintiffs have failed to provide any expert testimony establishing that the guardrail was improperly designed or the erection of the guardrail behind Pole 16/37 violates highway safety standards. Nor have the Plaintiffs produced any evidence whatsoever that the erection of the guardrail in 1990 would have required any action by a utility company including Boston Edison. The Plaintiffs have produced no evidence whatsoever on this issue. Thus, Plaintiffs cannot succeed on their claim that the placement of a guardrail behind pole 16/37 created a dangerous condition or, if a dangerous condition existed, Boston Edison should have recognized it and taken some action.

In sum, the totality of the circumstances surrounding this accident fully supports the conclusion that it was not legally foreseeable that Brown would hit Pole 16/37. Given, the undisputed facts and Plaintiffs' lack of evidence, to impose a duty of care to Boston Edison

---

[6] "Under Rule 56(e), affidavits supporting or opposing summary judgment must set forth facts that would be admissible in evidence. A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on . . . speculative evidence." See Schubert, 148 F.2d at 3 (quoting Casas Office Machs., Inc. v. Mita Copystar Am., 42 F 3d. 668, 681 (1st. Cir. 1994)

would be to stretch the concept of foreseeability too far. Accordingly, Brown's accident was not a legally foreseeable event.

B.      Plaintiffs' Reliance on Marino v. NYNEX is Misplaced

Plaintiffs' reliance on Marino v. NYNEX, WL 809985 (Mass. Super. Ct.) in support of its argument that Brown's collision with Pole 16/37 was "something more than random" is misguided. The facts in the instant case are clearly distinguishable from the facts in Marino. Marino held that, under the circumstances of that case, (which are not present here), the plaintiff was able to survive a motion for summary judgment. In Marino, the plaintiff offered evidence by affidavits and deposition testimony demonstrating that (1) the "atypical engineering" of the roadway "tends to push vehicles off the road" causing drivers to over steer to the right particularly when the roadway was wet and slippery as it was the night of the collision in Marino; (2) the pole at issue in that matter had been involved in "at least half a dozen" prior collisions, and (3) NYNEX had been aware of these collisions but had failed or refused to move the pole. Based on the evidence presented by the plaintiff, the court found that that the circumstances were such that the collision with the utility pole was "something more than random." Significantly, the evidence relied upon by the Marino court to establish a duty is noticeably missing in this case. To conclude that it was legally foreseeable that Brown would lose control of his motorcycle on a depression in the road, veer off the roadway, hit a guardrail, slide along the guardrail, and ultimately strike Pole 16/37 would be to substantially extend the reasonable scope of forseeability beyond the limits as set forth in Massachusetts law.

Plaintiffs have cited several cases in their Memorandum supporting their right to present their claims against Boston Edison to a jury. Plaintiffs' reliance on these cases is also misplaced. In McMillan v. Michigan State Highway Commission, 426 Mich. 46 (1986), the Michigan

Supreme Court reversed the grant of summary judgment in favor of a utility, holding that there was no overriding policy that would insulate a defendant in <u>all</u> cases in which a utility pole was placed outside the traveled portion of the highway. However, unlike Pole 16/37, the utility pole in <u>McMillan</u> was located in the median, only three feet away from the traveled portion of the road. The <u>McMillan</u> court instructed the trial court to consider evidence pertaining to the location of the pole, its proximity to the roadway, the configuration of the roadway, whether the utility company had notice of previous accidents at that location, and whether as an alternative, a less dangerous location for the pole existed. <u>Id.</u> at 64. The court did not foreclose the possibility that summary judgment would be appropriate if consideration of these factors did not reveal genuine issues of material fact for a jury. <u>See</u> <u>Northern Indiana Public Service Co. v. Sell</u>, 597 N.E.2d 329, 333 (1992). Other cases relied upon by Plaintiffs are also not applicable. The plaintiffs in <u>George v. City of Los Angeles</u>, 11 Cal. 2d. 303 (Cal. 1938) and <u>Peninsular Tel. Co. v. Marks</u> (1940) 144 Fla 652 (Fla. 1990) alleged that the utility companies were negligent in their placement of their poles. In both cases, the plaintiffs alleged that the design of the roadway was in a dangerous and defective condition to cause automobiles to be thrown from their intended course of travel. This case is distinguishable from <u>George</u> and <u>Peninsular Tel. Co.</u> because Plaintiffs do not allege that Boston Edison was negligent in their placement of pole 16/37. Nor do the Plaintiffs present any facts that the curvature of Hartwell Road tends to cause motorist to leave the road. Instead, Plaintiffs allege that a third party a created a dangerous condition on side of the road and that Boston Edison had a duty to remedy the alleged hazardous condition.

Plaintiffs have failed to present competent and legally sufficient facts to this Court to establish a genuine issue of material fact to preclude the entry of summary judgment in Boston Edison's favor.

II.  **The Massachusetts Statute of Repose, G.L. c. 260, §2B is Applicable and Bars Plaintiffs' Claim of Negligence.**

In order to overcome the bar of the Statute of Repose, Plaintiffs now assert that they do not allege that Pole 16/37 was negligently designed, planned, constructed, or administered. This newly developed argument should come as a surprise to the Court given the first half of Plaintiffs' Opposition is premised on Boston Edison's alleged negligent placement of Pole 16/37 on Hartwell Road. Yet, in opposition of Boston Edison's Statute of Repose argument, Plaintiffs now claim that there was no design or construction problem with Pole 16/37.

A.  Plaintiffs Cause of Action Was Extinguished After The Passage of Six Years From the Installation of the Guardrail.

Plaintiffs' unqualifiedly state that "[they] do not allege that Pole 16/37 was negligently designed, planned, constructed or administered." (Plaintiff's Memorandum, p. 13) Plaintiffs maintain that the "juxtaposition of the guardrail with the pole" created an unreasonably dangerous condition. (Opposition to United States of America's Motion for Summary Judgment, pg. 4). The guardrail was installed in approximately 1990. Under the Statute of Repose, Plaintiffs' action against the party who designed and installed the guardrail expired in 1996. The condition that allegedly rendered Pole 16/37 dangerous is related to the design and original construction of the guardrail. Since the dangerous condition was created by the unification of Pole 16/37 and the guardrail, Plaintiffs' cause of action was extinguished after the passage of six years from the installation of the guardrail.

B.  Plaintiffs Improperly Attempt To Impute An Element of Foreseeability Into The Statute of Repose.

The purpose of a Statute of Repose, unlike the statute of limitations, is to completely eliminate a cause of action against certain persons after a certain period. James Ferrera & Sons,

12

Inc. v. Samuels, 21 Mass.App.Ct. 170, 173(1985). The Statute of Repose begins to run on the date which the act or omission which forms the basis of the cause of action. Nissan Motor Corp. v. Commissioner of Rev., 407 Mass. 153, 158(1990).    Here, the basis of Plaintiffs' cause of action is not that either Pole 16/37 or the guardrail, in of itself, is a hazard. Instead, the basis of Plaintiffs' cause of their action is the 1990 installation of the guardrail and the resulting roadside condition. Therefore, the Statute of Repose bars any claims arising out of the roadside condition involving Pole 16/37 and the guardrail after 1996.

Plaintiffs have improperly tried to impute into the Statute of Repose an element of foreseeability which is entirely without support. Plaintiffs cannot reactivate their cause of action by separating Pole 16/37 from the guardrail. Pole 16/37, alone, was not the cause of Brown's injuries. According to Plaintiffs, it was the guardrail that created a hazardous condition that channeled motorists who traveled off the roadway into a fixed item, Pole 16/37. (Opposition to United States of America's Motion for Summary Judgment, pg. 4). The placement of the guardrail for which it is undisputed that Boston Edison had no responsibility and no role in whatsoever cannot trigger a new cause of action for negligence which either didn't exist or had expired.   Plaintiffs cannot escape the application of the Statute of Repose by framing their claim as either a breach of a duty to warn or a failure to maintain. Plaintiffs claim for breach of duty ran in 1996 when the Statute of Repose eliminated their cause of action for the hazardous condition that channeled Brown into a fixed object.

Plaintiffs erroneously rely on Coca-Cola Bottling Company of Cape Cod v. Weston & Sampson Engineers, Inc., 45 Mass. App. 120 (1998) to overcome the bar presented by Statue of Repose. The Coca-Cola Bottling Company of Cape Cod decision addresses the date on which the statute of repose begins to run if the improvement has already been opened to use. The court

13

distinguished "general administration" for purpose of the Statute of Repose. The court found that post-construction activity qualifies as "general administration" and falls within the protection of the Statute of Repose. Id. at 126. The court acknowledged that there are limits to what may be "general administration" and provided the example of a plumber who negligently repairs a plugged soil line long after construction ceased. However, it concluded that the defendants were entitled to protection under the Statue of Repose because their activities of repair post-construction problems fell under the umbrella of "general administration." 45 Mass. App. Ct at 128.

The plumber analogy used by the court in Coca-Cola Bottling Company's is not applicable in the present case. The plaintiff in the plumber analogy may maintain an action against the plumber for his malpractice in repairing the soil line because the plumber's error or omission occurred in the repair of the improvement after it is completed. Unlike, the soil line, Pole 16/37, itself, is free from any defects and did not require any repair. Indeed, Plaintiffs assert no claim whatsoever as to an alleged defect on the pole itself. The defective condition described by Plaintiffs, is not Pole 16/37, but the guardrail that was erected behind Pole 16/37. Boston Edison had no duty to maintain the guardrail.

B.     The Installation of Pole 16/37 Constitutes an Improvement to Real Property

Plaintiffs are correct in turning to Webster's Dictionary to define improvement. Black's Law Dictionary similarly defines improvement as:

> A valuable addition made to property…amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to building, but may also include any permanent structure or their development, such as a street, sidewalks, sewers, *utilities*…

BLACK'S LAW DICTIONARY 757 (6TH ED. 1990), emphasis supplied.

As explained by the Supreme Judicial Court, "the use of a broad definition such as Webster's is apt to give full scope to the remedial purposes of §2B when divining whether the allegedly tortuous act is also within the statute." Dighton v. Fed. Pac. Elec. Co., 399 Mass. 687, 697 (1987). See also Montaup Elec. Co. v. Ohio Brass Corp., 561 F. Supp. 740, 748 (D.R.I. 1983) (applying Massachusetts law).

Boston Edison's installment of Pole 608 is an improvement as defined by the statute because it was a permanent fixture designed to enhance the value of the surrounding neighborhood by providing electrical services. Plaintiffs have advanced several arguments why the construction of Pole 16/37 should not be considered an improvement to real property: (i) the construction of Pole 16/37 did not enhance the capital value of the property on which it is located; (ii) Pole 16/37 does not provide a specific benefit to the real property on which it is located; and (iii) Pole 16/37 was a fungible item not specifically designed the for the real property on which it is located. None of these arguments has any merit.

In Hickman v. Carven, 366 Md. 362 (2001), the Maryland Court of Appeals held that an "item" is "an improvement if it is an integral component of a project that itself would qualify as an improvement," citing *inter alia,* Lederman v. Cragun's Pine Beach Resort, 247 F.3d 812 (8th Cir.2001), and Two Denver Highlands Ltd. P'ship v. Dillingham Constr., 932 P.2d 827 (Colo.App.1996).

Plaintiffs' conclusory statement that Pole 16/37 has not enhanced the value of real property is without basis or foundation. Pole 16/37 is an integral provision of the electrical distribution system in the area. The electrical transmission lines running from Pole 16/37 are pictured in Exhibit A of United States' Motion for Summary Judgement. Further, the Grant of Location issued by the Town of Bedford references the wires attached to Pole 16/37 that provide

15

electric service to the owners on land on which it stands. Constructing Pole 16/37 allowed electrical service bestowing value and usefulness upon the adjacent properties. Without Pole 16/37, there would be no electrical service.

Dighton v. Federal Pacific Electric Company, 399 Mass. 687 (1987), provides no support for Plaintiffs' assertion that Pole 16/37 is a "fungible item." In Dighton, the defendant was merely the supplier and manufacturer of a circuit breaker located on the premise where a fire occurred. The court excluded the defendant from coverage of the Statute of Repose because the defendant did not render any "particularized services with respect to the design or construction of the building which burned." Id. at 696.

On the other hand, an actor such as a manufacturer or supplier may be protected if that actor becomes more than a "mere" supplier by engaging in protected activities. M.D. Knowlton Company v. AFCO Industries, 54 Mass. App. Ct. 796, 801 (2002). See *McDonough*, 591 N.E.2d at 1082 (manufacturer who designed bleacher units specifically for the rink in which they were installed by another is more than mere supplier and entitled to benefit of statute). Thus, application of the statute is necessarily dependent on the nature of the party's activities. Dighton v. Federal Pac. Elec. Co., *supra.*

Plaintiffs' assertion that the Statute of Repose provides no protection for Boston Edison because Pole 16/37 is a fungible item not specifically designed by Boston Edison for its Hartwell Road location is an extraordinary argument. Plaintiffs dedicated the first 12 pages of its Memorandum arguing that Boston Edison is liable for Brown's injury because it should have modified the design and placement of Pole 16/37 after the erection of the guardrail. Contrary to the lengthy argument contained in their Memorandum and in a desperate attempt to avoid summary judgment, Plaintiffs remarkably now argue that Boston Edison renders no

particularized services when supplying and installing its utility poles. Unlike the facts in Dighton, Plaintiffs brought the instant lawsuit against Boston Edison because Boston Edison is more than a mere materialman or supplier of utility poles. Indeed, Plaintiffs' Complaint asserts that Boston Edison was negligent in placing a "[Pole 16/37] in a position… and negligently allowing the pole to remain in a position that was unreasonably close to Hartwell Road, was located at the outside of a curve… [and] was otherwise located in such a manner as to be unreasonable dangerous to the motoring public." (Complaint, ¶ 21, Boston Edison's Motion, Ex. A). In essence, the basis of Plaintiffs' claims against Boston Edison is that Boston Edison was negligent in its engineering and installation of Pole 16/37.

Boston Edison installed Pole 16/37 for the specific project of providing electricity to the properties adjacent to Hartwell Road. Pole 16/37 was placed in accordance to the specifications of an engineer. Accordingly, Boston Edison's individual expertise and services in connection with the engineering and installation of Pole 16/37 qualifies as protected acts under the Statute of Repose.

                Respectfully submitted,
                BOSTON EDISON COMPANY,
                By its attorneys,

                /s/ Michael K. Callahan
                /s/ Marissa A. Goldberg
                Michael K. Callahan
                BBO #546660
                Marissa A. Goldberg
                BBO #654506
                NSTAR Electric & Gas Corporation
                800 Boylston Street, 17th Floor
                Boston, MA 02199
                617-424-2102
                617-424-2114